| | |
|---|---|
| 1 | CYMBIDIUM RESTORATION TRUST, |
| 2 | Counter-Defendant. |
| 3 | AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION TRUST SERIES 2015A+; and AHP SERVICING, LLC, |
| | Third-Party Plaintiff, |
| | v. |
| | OAK HARBOR CAPITAL, LLC; ATLANTICA, LLC; LAND HOME FINANCIAL SERVICES, INC.; WWR MANAGEMENT, LLC; SOUTH WATUPPA, LP; MAGERICK, LLC; and WEINSTEIN & RILEY, PS, |
| | Third-Party Defendants. |

## 1. INTRODUCTION

This is a commercial lawsuit about the right to a group of residential mortgage loans. Third-Party Plaintiffs American Homeowner Preservation Trust Series AHP Servicing, American Homeowner Preservation Trust Series 2015A+, AHP Capital Management, LLC, and AHP Servicing, LLC ("AHP Entities") move for two Temporary Restraining Orders (TROs). The first TRO motion would enjoin Third-Party Defendant Land Home Financial Services, Inc. from continuing as a "servicer" of the loans and transferring the loans in question to a different servicer. Dkt. No. 27. The second TRO motion seeks an immediate accounting of money

ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER - 2

collected by Cymbidium on the mortgage loans and enjoining Third-Party Defendants Oak Harbor Capital, LLC, and Atlantica, LLC from transferring the mortgage loans elsewhere. Dkt. No. 29.

The Court has read the papers submitted in support of and opposition to the motions, and being otherwise informed, finds oral argument unnecessary. As explained further below, AHP Entities have failed to show that they are likely to prevail on the merits of their claims or suffer irreparable harm absent preliminary relief. Accordingly, the Court DENIES both pending TRO motions. Dkt. Nos. 27, 29.

## 2. BACKGROUND

Effective October 7, 2022, Cymbidium and AHP Entities entered a Mortgage Loan Sale Agreement with Repurchase Obligation ("Contract"). Dkt. No. 1-2 ¶ 9. Under the Contract, "AHP [Entities] sold and conveyed and assigned to Cymbidium a designated group of mostly non-performing residential loans and the mortgage or other lien interests securing those loans." *Id.* Cymbidium alleges that, among other things, it was "entitled to receive any payments or other recoveries with respect to those loans …; [and] that if the transaction is deemed to be a loan, Cymbidium had a security interest in each of the loans…." *Id.* The Contract also required AHP Entities to "repurchase certain of the conveyed loans at a pre-determined price on or prior to January 7, 2023." *Id.* ¶ 10.

The parties later entered into a First Amendment to Mortgage Loan Sale Agreement with Repurchase Obligations ("Amendment"), amending the Contract. The Amendment removed AHP Entities' repurchase obligation and conveyed additional designated loans to Cymbidium. *Id.* ¶ 11. Cymbidium also agreed to

"collect or realize a recovery on the loans, with the recoveries first going to all amounts AHP [Entities] owed Cymbidium…." *Id*. "Upon payment of those amounts in full, any then-remaining loans or other assets, including any excess cash recovered by Cymbidium, were to be assigned and transferred back to the AHP [Entities]." *Id*.

On November 17, 2023, Cymbidium sued AHP Entities in King County Superior Court alleging they breached the Contract and Amendment and converted funds and other assets belonging to Cymbidium. *See* Dkt. No. 1-2. AHP Entities deny Cymbidium's claims. *See* Dkt. No. 5. They characterize the money exchanged between the parties as a "loan" in exchange for certain rights over the residential mortgage loans. Dkt. No. 27 at 3. AHP Entities argue that they satisfied the loan in full, and that Oak Harbor and Land Home—Cymbidium's servicers for the underlying mortgages—lacked authority to "execute documents and effectuate other transactions," including authority to "manage a foreclosure" on assets. *Id*. at 4–5.

AHP Entities have since sued Oak Harbor and Land Home, alleging they "failed to properly service the Mortgage Loans; failed to account for money handled on loans owned by AHP Entities; failed to follow reasonable and lawful instructions from AHP Entities; and failed to act with reasonable skill, care, and diligence, all to the [AHP Entities'] detriment." Dkt. No. 27 at 7; Dkt. No. 12.

In addition, AHP Entities allege "Oak Harbor, at the direction and/or for the benefit of it and Cymbidium," has continued to transfer the mortgage loans at issue to their affiliates for "no or less than market-value consideration in violation" of their agreement. Dkt. No. 29 at 3.

ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER - 4

# 3.  DISCUSSION

## 3.1   Legal standard.

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a preliminary injunction also governs TROs—to obtain a TRO, the moving party must demonstrate "[(1)]'that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest.'" *Id.* at 20. The moving party must satisfy all factors before an injunction will be issued. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"Likelihood of success on the merits is 'the most important' factor," *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) (quoting *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018)), but "*Winter* tells us that plaintiffs may not obtain [preliminary relief] unless they can show that irreparable harm is likely to result in the absence of the injunction." *Cottrell*, 632 F.3d at 1135.

## 3.2   AHP Entities have not shown that they are likely to succeed on the merits.

The parties point at one another, claiming the other side breached the Contract and Amendment and converted funds. Cymbidium argues it will prevail on its claims against AHP Entities, while AHP Entities argue, of course, that they will win their counter- and third-party claims. As Cymbidium correctly observes, however, the Contract should be "the beginning and end of the analysis," Dkt. No.

33 at 6, but neither party provided the Court with a copy of the contract documents.[1] To be sure, the parties have provided the Court with helpful insights into their relative positions, but to decide the pending TRO motions, the Court must determine whether there is sufficient evidence showing that AHP Entities are likely to succeed on the merits of their claims.

The Court cannot make this determination without reviewing the Contract and Amendment, and thus it expresses no views on AHP Entities' "loan" theory of the case save to say that the record before the Court fails to show a likelihood of success on AHP Entities' contractual and other claims. It follows then that the Court need not consider the other *Winter* factors. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Likelihood of success on the merits 'is the most important' *Winter* factor; if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors." (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015))). But even if AHP Entities *had made* the requisite showing on the merits, they still fail to demonstrate a likelihood of irreparable injury absent preliminary relief.

---

[1] AHP Entities moved to file the Contract and Amendment under seal. Dkt. No. 31. The Court denied the motion, however, because the meet and confer requirement had not been satisfied and it was not clear whether a redacted filing would adequately protect sensitive information. Dkt. No. 36. To date, AHP Entities have neither provided the Court with copies of the contracts nor filed another motion to seal. *See* Dkt. generally.

ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER - 6

**3.3      AHP Entities have not shown a likelihood of irreparable harm in the absence of a TRO.**

AHP Entities' statement of the harms they will face if the TROs aren't issued is sparse. In their first TRO motion, AHP Entities describe the harms thusly: "The longer Land Home unlawfully retains possession of the Mortgage Loans, the more those Mortgage Loans will be neglected from a lack of 'servicing', resulting in diminution of value, lost proceeds, and adverse judgments." Dkt. No. 27 at 11. In their second TRO motion, AHP Entities claim the following harms: "The irreparable harm likely to be suffered if an accounting is not immediately undertaken is the need to engage in costly discovery, including the retention of experts to give their interpretation of the data when a neutral third-party could just as thoroughly and more cost-effectively provide the same, unbiased analysis." Dkt. No. 29 at 13. In sum, AHP Entities claim that they will face varying forms of economic injury if the Court does not act now.

It is well established, however, that breach of contract claims resulting in economic injury are rarely considered irreparable. *See, e.g.*, *Brandr Grp., LLC v. Elec. Arts Inc.*, No. 23-CV-02994-HSG, 2023 WL 4297571, at *3 (N.D. Cal. June 30, 2023) (preliminary relief is "rarely issued for breach of contract claims"); *Telephia Inc. v. Cuppy*, No. C 04-03508 SI, 2005 WL 588441, at *3 (N.D. Cal. Mar. 11, 2005) ("[A] claim for breach of contract can be compensated by money damages, and [ordinarily] does not warrant the issuance of a preliminary injunction."). As the Ninth Circuit has observed:

> The temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (*quoting Sampson v. Murray*, 415 U.S. 61, 90 (1974)) (cleaned up).

AHP Entities' economic losses would plainly be recoverable if they ultimately prevailed on the merits of their breach of contract claim, and they have put forth no argument or evidence showing that money damages would be an inadequate remedy. *In re Est. of Ferdinand Marcos, Hum. Rts. Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994).

Likewise, AHP Entities' suggestion that they will lose "assets to judgments," presumably against the underlying properties, will not suffice to show irreparable harm. Dkt. No. 27 at 11. The property at issue is not a home or primary residence housing AHP Entities, the loss of which would count as irreparable harm. *See Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) (holding potential eviction from low-income housing constituted irreparable harm). The property is not unique either. *See Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988) (potential loss of "unique" property through foreclosure constituted irreparable harm). Rather, this case involves several hundred residential properties and their attendant home mortgage loans, which merely represent a cash flow to investors. *See* Dkt. Nos. 27 at 3; 33 at 2. They are a type of asset class and any loss AHP Entities suffered in

ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER - 8

relation to them would be purely monetary, calculable, and ultimately compensable by damages.

Finally, any financial accounting sought by AHP Entities is best obtained through discovery, not a TRO. *See T&S Brass & Bronze Works, Inc. v. Slanina*, No. CV 6:16-03687-MGL, 2017 WL 927948, at *2 (D.S.C. Mar. 9, 2017) ("[T]he proper remedy is a motion to compel, not [a] TRO."); *Crosby v. PetroMed, Inc.*, No. CV09-5055-EFS, 2009 WL 2914515, at *3 (E.D. Wash. Sept. 4, 2009) (declining to issue a preliminary injunction to provide Plaintiff with information that "Defendants will be required to disclose later in litigation"). AHP Entities argue that without a TRO, they will be forced to engage in costly discovery, but "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (internal citation omitted). Additionally, even if increasing the cost of discovery were a harm, it is at most a monetary harm. "[M]onetary harm does not constitute irreparable harm." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009).

Given that AHP Entities have failed to show a likelihood of irreparable harm, the Court need not analyze the remaining *Winter* factors.

## 4. CONCLUSION

Accordingly, the Court DENIES both AHP Entities' motions for a temporary restraining order. Dkt. Nos. 27, 29.

Dated this 28th day of February, 2024.

                                        Jamal N. Whitehead
                                        United States District Judge