UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYMBIDIUM RESTORATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING, US BANK TRUST NA, AHP CAPITAL MANAGEMNET LLC, AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+, US BANK TRUST NATIONAL ASSOCIATION, AHP SERVICING LLC, JORGE NEWBERY, AHP CAPITAL MANAGMENT LLC, AHP S,<br><br>Defendants. | CASE NO. 2:24-cv-00025-JNW<br><br>ORDER DENYING CYMBIDIUM'S MOTION TO APPOINT SPECIAL MASTER |

## 1.  INTRODUCTION

Before the Court is Plaintiff Cymbidium's Motion to Appoint Special Master, Dkt. No. 50. After considering the briefing, the record, and the law, the Court is fully informed. For the reasons below, the Court DENIES Cymbidium's request. In short, the Court finds that appointing a special master to handle the issues that

**ORDER** DENYING CYMBIDIUM'S MOTION TO APPOINT SPECIAL MASTER - 1

Cymbidium proposes would be an unconstitutional delegation of judicial decision-making authority and would violate Rule 53.

## 2. BACKGROUND

In October 2022, Cymbidium purchased a group of mostly non-performing mortgage loans and the security interests backing them from the "AHP Defendants."[1] The parties completed the purchase through a contract called the Mortgage Loan Sale Agreement with Repurchase Obligation ("Contract"). Dkt. No. 1-2 ¶ 9. Along with effecting the sale, Cymbidium alleges that the Contract required the AHP Defendants to repurchase certain loans at a pre-determined price in January 2023. *Id.*

The AHP Defendants did not repurchase the loans, which led the parties to negotiate an Amendment to the Contract ("Amendment"). Under the Amendment, the AHP Defendants gave Cymbidium additional loans to foreclose on. Cymbidium agreed to "collect or realize a recovery on the loans, with the recoveries first going to all amounts [the] AHP [Defendants] owed Cymbidium" for its failure to repurchase loans in January 2023. *Id.* ¶ 11. Cymbidium agreed that it would only collect on these additional loans until it recovered the amount that the AHP Defendants owed Cymbidium. *Id.* Once Cymbidium hit that amount, "any then-remaining loans or other assets, including any excess cash recovered by Cymbidium, were to be assigned and transferred back to the AHP [Defendants]." *Id.*

---

[1] The AHP Defendants are American Homeowner Preservation Trust Series AHP Servicing; AHP Capital Management LLC; AHP Series 2015A+; and AHP Servicing LLC.

**ORDER** DENYING CYMBIDIUM'S MOTION TO APPOINT SPECIAL MASTER - 2

Cymbidium sued the AHP Defendants for breach of contract and conversion, alleging that they violated the terms of the Contract and Amendment. *See* Dkt. 1-2. Broadly, Cymbidium claims that the AHP Defendants had already collected on many of the mortgage loans before they sold those loans to Cymbidium. Cymbidium alleges:

> Over 200 of the loans purportedly sold to Cymbidium on October 7, 2022, were no longer outstanding as of that date. The AHP Sellers had previously collected, compromised, or obtained some other recovery regarding those loans such that they no longer were outstanding. Put simply, the AHP Sellers sold and assigned to Cymbidium over 200 loans that no longer existed.

*Id.* ¶ 14(a).

Cymbidium also alleges that the AHP Defendants are currently collecting on mortgage loans that they sold to Cymbidium. Similarly, Cymbidium claims that "[t]he AHP Trusts have sold and are actively selling the same loans Cymbidium purchased to third parties." Dkt. No. 50 at 2. And Cymbidium maintains that the AHP Defendants have failed to give Cymbidium the documents that Cymbidium needs to collect on the mortgage loans that it purchased from the AHP Defendants. *Id.*

The AHP Defendants deny Cymbidium's claims—they contend that they have met their contractual obligations and no longer owe Cymbidium payment under the Contract. Thus, they argue, Cymbidium must stop collecting on the mortgage loans that they transferred to Cymbidium and transfer those loans back. But because Cymbidium is still collecting on those mortgage loans and has not transferred them

**ORDER** DENYING CYMBIDIUM'S MOTION TO APPOINT SPECIAL MASTER - 3

back, the AHP Defendants allege that *Cymbidium* has breached the Contract and converted secured debt belonging to the AHP Defendants.

In sum, the case hinges on ownership of the mortgage loans. Each side contends that it owns the mortgage loans at issue and claims that the other side is actively converting them by collecting on them or selling them to non-parties.

Cymbidium filed this Motion, requesting that the Court appoint a special master to do the following:

> (i) decide, at the request of either side, whether a specific property or loan should or should not be sold, transferred, or released (collectively "sale or transfer");
>
> (ii) order a party to promptly provide properly signed/notarized documents necessary to effect a sale or transfer;
>
> (iii) sign such documents if any party refuses to do so; and
>
> (iv) ensure that proceeds from a sale or transfer are either deposited in the Court's registry or a private escrow account controlled by the Special Master.

Dt. No. 50-1 at 2.

## 3.  DISCUSSION

Federal Rule of Civil Procedure 53 governs special masters.[2] "Rule 53 contemplates that the master will assist the court with specific tasks and exercise

---

[2] The Court uses the term "master" because that is the language of the Rule. Recently, however, the American Bar Association recommended to the Judicial Conference of the United States that Rule 53 be amended to substitute the term "court-appointed neutral" for "court-appointed master" because "master" is a "very poor term," given its connotations, and an in-apt description of the actual role. Letter from Mary Smith, President, Am. Bar Assoc., to H. Thomas Byron III, Sec. Comm. on Rule Prac. & Procedure, Admin. Office of the United States Courts (Feb. 12, 2024) (available at https://www.uscourts.gov/sites/default/files/24-cv-a_suggestion_from_aba_-_rule_53.pdf). This Court would welcome the change.

**ORDER** DENYING CYMBIDIUM'S MOTION TO APPOINT SPECIAL MASTER - 4

necessary power" to do so. *Burlington N. R.R. Co. v. Washington Dep't of Rev.*, 934 F.2d 1064, 1071 (9th Cir. 1991). Appointing a special master "shall be the exception and not the rule" and, "save in matters of account and of difficult computation of damages, . . . shall be made only upon a showing that some exceptional condition requires it." *Id.* (quoting Fed. R. Civ. P. 53(b)). The Supreme Court has limited what counts as "exceptional conditions" under Rule 53. For instance, it has held "that the unusual complexity of an action, the length of time a trial would require, and congestion of a court's calendar [are] *not* exceptional conditions." *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 570 (N.D. Cal. 2009) (citing *La Buy v. Howes Leather Co.*, 352 U.S. 249, 258–59 (1957)); *see also Stauble v. Warrob, Inc.*, 977 F.2d 690, 695 (1st Cir. 1992) (citing *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 818 (2d Cir.1986) (that the judge did not "understand anything about . . . patent or trademark" law and was "not about to educate [him]self" was insufficient reason to justify appointment of a master to hear and determine the entire case)).

Courts must apply Rule 53 narrowly to avoid improperly abdicating their Article III judicial decision-making authority to special masters. *Burlington N. R.R. Co.*, 934 F.2d at 1071 ("[W]e strictly apply Rule 53(b) . . ."). A special master may not "displace the court." *Id.* at 1072 (quoting *La Buy*, 352 U.S. at 256). To be sure, the Constitution "prohibits [courts] from allowing the nonconsensual reference of a fundamental issue of liability to an adjudicator who does not possess the attributes that Article III demands." *Stauble*, 977 F.2d at 695. "Determining bottom-line legal questions is the responsibility of the court itself." *Id.*

**ORDER** DENYING CYMBIDIUM'S MOTION TO APPOINT SPECIAL MASTER - 5

To be sure, Article III "does not require that a district judge find *every* fact and determine *every* issue of law involved in a case." *Stauble* 977 F.2d at 695. For instance, special masters may oversee pretrial discovery by ensuring compliance with the Court's discovery orders. *Id.* (citing *Crowell v. Benson*, 285 U.S. 22, 51 (1932)). And as Rule 53 states, special masters may—in some cases—perform investigations and hold hearings to help "resolve difficult computations of damages" or to perform accountings. Fed. R. Civ. P. 53(a)(1)(B). But as the First Circuit has aptly explained, an important distinction exists between these collateral issues and fundamental liability issues: "The former comprise table setting and table clearing, while the latter comprise the meal itself." *Stauble* 977 F.2d at 695. And "where a district judge does not hear and determine the main course, *i.e.*, the meat-and-potatoes issues of liability, there is an 'abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation.'" *Id.* (quoting *La Buy*, 352 U.S. at 256).

Granting Cymbidium's request for a special master over the AHP Defendants' objections would violate Rule 53 and Article III of the Constitution, as Cymbidium would have the Court refer "meat-and-potatoes" contractual liability issues to a special master. Indeed, Cymbidium wants a special master to decide which party is allowed to sell, transfer, or release various mortgage loans. To make such a decision, the special master would be forced to interpret the terms of the Contract and Amendment, then decide which party owns the mortgage loans. But this is a contract dispute in which ownership of the mortgage loans is the

fundamental issue. Accordingly, the Court cannot delegate its judicial decision-making power on this issue.

In the same vein, Cymbidium wants a special master with the power to "order a party to promptly provide properly signed/ notarized documents necessary to effect a sale or transfer." Dkt. No. 50-1 at 2. This would allow the special master to force the AHP Defendants to give Cymbidium documents that Cymbidium asserts it is entitled to under the Contract and Amendment. But the AHP Defendants dispute Cymbidium's assertion, claiming that they own these documents under the terms of the Contract and Amendment. Again, to resolve this dispute, a special master would have to interpret the terms of the Contract and Amendment with respect to the property at issue here. And again, the Court cannot allow a special master to take on that judicial decision-making responsibility under Rule 53 or Article III.

To the extent that the AHP Defendants have not complied with another court's injunction or discovery orders, the solution is a motion for contempt before the issuing court, not appointing a special master in this case. Similarly, if action is needed to "bring down the temperature in this litigation," this Court is prepared to address any case-related disputes.

## 4. CONCLUSION

In short, the Court agrees with the AHP Defendants that Cymbidium wants a special master to enforce the contract at issue in this case "according to Cymbidium's interpretation." Dkt. No. 53 at 12. The Court declines to do so and finds that appointing a special master to handle the proposed issues—which involve

interpreting and enforcing the contracts at issue in this breach-of-contract case—would violate Article III of the U.S. Constitution and Rule 53.

Accordingly, the Court DENIES Cymbidium's Motion to Appoint Special Master, Dkt. No. 50.

Dated this 31st day of July, 2024.

Jamal N. Whitehead
United States District Judge