HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYMBIDIUM RESTORATION TRUST,<br><br>              Plaintiff,<br><br>       v.<br><br>AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING; ITS TRUSTEE, U.S. BANK TRUST N.A.; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+; ITS TRUSTEE, U.S. BANK TRUST NATIONAL ASSOCIATION; AHP SERVICING, LLC; AND JORGE NEWBERY,<br><br>              Defendants. | Case No.  2:24-cv-0025-KKE<br><br>JOINT SUBMISSION ON DEFENDANTS' MOTIONS IN LIMINE<br><br>ORAL ARGUMENT REQUESTED |
| AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING.; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+; and; AHP SERVICING, LLC,<br><br>              Counter-Plaintiffs,<br><br>       v.<br><br>CYMBIDIUM RESTORATION TRUST,<br><br>              Counter-Defendant. | |

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page i

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

**TABLE OF CONTENTS**

INTRODUCTORY STATEMENT…..……………………………………………………….1

   A.  Defendants' Introductory Statement..……………………………………………….1

   B.  Plaintiff's Introductory Statement…...…………………………….…………..…….3

MOTION IN LIMINE #1
Exclude Undisclosed / Late-Disclosed "Damages"……………………..…………..…..4

   A.  Defendants' Argument..………………………………………………….…………..4

   B.  Plaintiff's Argument…………....……………………………………………...…..11

MOTION IN LIMINE #2

Exclude Testimony or Argument Relying on the December 2024 or Earlier
Spreadsheets as Affirmative Proof of Cymbidium's Alleged Damages Due
to Lack of Authentication, Foundation, and Inadmissible Hearsay……………………22

   A.  Defendants' Argument…………….…....…………………………………………..22

   B.  Plaintiff's Argument…………….…....……………………………………….…..24

MOTION IN LIMINE #3

Exclude Lucas Frank as a Witness Under Rule 26.………….………..………………..26

   A.  Defendants' Argument…………….…...………………………………………..…26

   B.  Plaintiff's Argument…………….…....……………………………………….…..29

MOTION IN LIMINE #4

To the Extent Any Evidence of Damages from Spreadsheets is Allowed, Exclude
Evidence or Argument Suggesting Cymbidium Possessed a Post-April 7, 2023
Contractual Right to Compel Repurchase, Impose Credits, or Unilaterally Convert
Alleged Loan Defects Into Damages.……………………………………………………31

   A.  Defendants' Argument…………….…...…..………………………………………31

   B.  Plaintiff's Argument…………….…....……………………………………….…..33

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

MOTION IN LIMINE #5

To the Extent Any Evidence of Damages from Spreadsheets is Allowed,
Exclude Evidence of Affiliate and Related-Party Costs Barred
by the First Amendment................................................................................35

    A. Defendants' Argument.........................................................................35

    B. Plaintiff's Argument............................................................................36

MOTION IN LIMINE #6

Exclude Expert Testimony or Argument When No Expert Was Disclosed..............37

    A. Defendants' Argument.........................................................................37

    B. Plaintiff's Argument............................................................................40

MOTION IN LIMINE #7

Exclude Evidence and Argument Premised on Alleged Injury
to Loans or Proceeds Owned by a Non-Party....................................................41

    A. Defendants' Argument.........................................................................41

    B. Plaintiff's Argument............................................................................43

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Pursuant to the Court's scheduling order, Defendants respectfully submit the following motions in limine in connection with the January 20, 2026, trial date. Plaintiff's responses are incorporated under each enumerated motion.

## INTRODUCTORY STATEMENTS

### A. Defendants' Introductory Statement

Defendants' motions are intended to prevent Cymbidium from transforming a five-day bench trial into an open-ended accounting exercise driven by late-produced, ever-changing spreadsheets and testimony from witnesses who cannot competently authenticate the calculations. The motions seek to ensure that trial proceeds on admissible, timely disclosed evidence, rather than forcing Defendants - and the Court - to reconstruct a shifting damages model in real time.

From the outset, this case has presented a finite reconciliation question governed by Rule 26: what proceeds were received, what credits or offsets apply, and what—if anything—is owed under the contracts. That question turns on information entirely within Cymbidium's possession and control. Yet Cymbidium never stabilized its damages computation. Instead, it cycled through materially different spreadsheets, asserted amounts that changed by orders of magnitude, and relied on methodologies that were never fixed long enough to be meaningfully tested in discovery.

Cymbidium's Rule 26 disclosures began with an all-inclusive figure of approximately $2.6 million. Discovery then closed months ago on a different set of numbers that Cymbidium now disavows. Trial is now being pursued on a newly

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

disclosed spreadsheet—served January 6, 2026—asserting approximately $24.6 million, nearly an 850 percent increase. That is not incremental updating or harmless supplementation; it is classic trial by ambush, and it is precisely the form of prejudice the disclosure rules exist to prevent.

The problem is compounded by Cymbidium's proposed proof. It seeks to rely on spreadsheets that lack competent authentication and foundation and to elicit damages, accounting, and causation opinions through lay witnesses despite having disclosed no experts. Bench trial or not, allowing that approach would transform the Court's role from adjudicator to forensic accountant.

To the extent Cymbidium contends that its damages were a "moving target" due to post-closing events, that contention (however baseless) does not excuse the failure to timely supplement or seek relief from the Court. The Rules require notice and orderly process—not last-minute substitution of witnesses and the damages record after months of repeated representations that discovery was complete and the case was trial-ready.

These motions do not ask the Court to decide the merits in limine. They ask only for the evidentiary guardrails necessary to conduct a fair, orderly, and manageable bench trial.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 2

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

## B. Plaintiff's Introductory Statement

Plaintiff submits these responses on a compressed schedule, 72 hours from when the motions were first received by Defendants, addressing motions that, in some cases, are improper disguised dispositive motions that go to core substantive issues in this case. Defendants' Motions in Limine seek not to exclude improper evidence, but to exclude the consequences of Defendants' own conduct. Defendants ask the Court to freeze the evidentiary record at an artificial point in time and to bar testimony that explains how Defendants' ongoing breaches and continuing conversion of property continued throughout this litigation and directly impacted the amount plaintiff is owed under the contract.

This is a bench trial. The Court can readily assess relevance, credibility, and weight during trial and in the context of the all of the evidence rather than dealing with admissibility in the abstract and on a categorical basis. The evidence for which Defendants now seek wholesale exclusion is not new or undisclosed; it is derived from Defendants' own transactions, and their continuing failure to deliver loan documents they were contractually obligated to provide, and defendants on going retention of proceeds from loan sales they continued to make. As those breaches of the contract continued, so did the financial consequences regarding the amount owed under the parties' contract.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Defendants' motions also improperly attempt to resolve disputed merits issues through evidentiary rulings. Those issues are properly decided after hearing the evidence, not by excluding it. The motions should be denied.

## MOTION IN LIMINE #1

### Exclude Undisclosed / Late-Disclosed "Damages"

#### A. DEFENDANTS' ARGUMENT:

This case has always presented a finite accounting question—one Cymbidium has known it needed to address since it filed suit more than two years ago. Cymbidium's claims turn on a reconciliation of loan proceeds, offsets, credits, and alleged contractual entitlements under the Mortgage Loan Sale Agreement with Repurchase Obligation ("**MLSARO**") and its First Amendment ("**Amendment**"). That accounting was entirely within Cymbidium's possession and control from the outset of this litigation. Yet despite that reality, Cymbidium failed throughout discovery to disclose any computation of damages, any settled methodology, or any final accounting reflecting the amount it claims AHP owes. Instead, Cymbidium pursued a moving-target damages theory—culminating in the production of radically reformatted and facially inexplicable spreadsheets two weeks before trial—precisely the type of prejudice Rules 26 and 37 are designed to prevent.

Rule 26(a) requires a party to disclose "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. Proc. 26(a)(1)(A)(iii). That

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 4

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

obligation is ongoing: a party must supplement "in a timely manner" when its disclosures are incomplete or incorrect. *Id.* at (e)(1)(A). Cymbidium did neither.

For the entire discovery period, Cymbidium failed to disclose any damages computation at all. In its Initial Disclosures dated April 4, 2024, Cymbidium did not provide a computation, methodology, or supporting data. It merely stated, as provided below, that it "believes" AHP owed "approximately $2.6 million." (inclusive of all interest, fees, taxes, expenses, and costs).

C. **Computation of Damages.**

The plaintiff believes the defendants jointly and severally owe approximately $2.6 million, which includes but is not limited to principal, interest, bank fees, management fees, advanced expenses, including but not limited to closing fees, legal fees, insurance fees, taxes, HOA fees, loss mitigation costs, and other categories of expenses, and "put-backs" or recourse loans.

That omission was never cured.

Although Cymbidium produced an internal spreadsheet in December 2024 — more than a year ago — it never disclosed that spreadsheet or any other document as its operative damages computation under Rule 26(a). That December 2024 spreadsheet reflected alleged amounts owed of **$12,174,819.06**, nearly a fivefold increase from the approximately $2.6 million figure referenced in Cymbidium's April 2024 Initial Disclosures. Yet Cymbidium did not supplement its disclosures to identify that figure, explain the methodology to reach it, or represent that it reflected a finalized — or even provisional — damages computation.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 5

Far from identifying a stable damages methodology or a consistent range of damages before discovery closed, Cymbidium's own witnesses confirmed that its damages remained unsettled and in flux well after discovery closed.

On December 8, 2025—one full year after the December 2024 spreadsheet was provided—Cymbidium's principal witness, William Weinstein, testified that damages were still being reconciled and continued to change as additional issues were identified. When asked to quantify damages, he could offer only a sweeping estimate—testifying that AHP allegedly owed "somewhere between $15 million and $20 million"—untethered to any disclosed analysis, accounting, or methodology.[1]

Q: How much does AHP owe currently, based on your best understanding?

A: I don't know anything. You can check with [Sonal] Gupta. But it's probably between 15 and 20 million.

Weinstein Dep. Trans., 133:5-8.

Two days later, Sonal Gupta, the CFO of Cymbidium and other Weinstein-related entities, confirmed that even she lacked a settled understanding of Cymbidium's damages. She testified that the figures were provisional, subject to ongoing adjustment, and dependent on whichever version of internal Excel version happened to be current. Most notably, Gupta testified that Cymbidium had only just

---

[1] That estimated range, as of mid-December 2025, reflected a 477% to 679% increase over the all-inclusive damages figure Cymbidium disclosed in its April 2024 Initial Disclosures, illustrating the moving-target nature of Cymbidium's damages theory.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

begun updating the December 2024 spreadsheet the prior week—despite the fact that discovery had closed months earlier.

> "[L]ast week is when we started updating it … I don't think so—we kind of, you know—we made an effort to update that file once it was shared in December 2024."

Gupta Dep. Trans. 26:9-18.

In other words, as of December 2025, Cymbidium still had not finalized the spreadsheet on which its entire damages case purportedly rests, and, according to Gupta, no work had been done to update the December 2024 spreadsheet for a full year. Gupta acknowledged that she did not know the total amount Cymbidium was claiming under the MLSARO and its Amendment.

Notably, it was only after AHP circulated this motion in limine in substantively similar form on January 5, 2026 that Cymbidium produced purported damages spreadsheets—identified as proposed Exhibits 185 and 186—on January 6, 2026, two weeks before trial. The eleventh-hour production does not cure the Rule 26 violation. It compounds it. In a case involving a known and controllable accounting, such late disclosure converts what should have been a transparent reconciliation into trial by ambush.

At initial review, the January 6, 2026 spreadsheets differ materially from prior versions. Their formatting and presentation are entirely different from the December 2024 spreadsheet and earlier iterations used in discovery. The data is reorganized into new tabs, charts, and summaries that were never disclosed, explained, or tested in

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

deposition. AHP deposed Weinstein and Gupta using the prior spreadsheet versions—however incomplete—and had them walk through those materials. The newly produced spreadsheets render that testimony obsolete and deprive AHP of any meaningful ability to understand, analyze, or challenge Cymbidium's asserted damages before trial.

The magnitude of the shift underscores the prejudice. Cymbidium's alleged damages have ballooned from approximately **$2.6 million** in the April 2024 Initial Disclosures, to **$12,174,819.06** in the December 2024 spreadsheet, to **$24,648,553.97** in the January 6, 2026 spreadsheets—nearly a tenfold increase over the original figure. At the same time, and without explanation, the spreadsheets reflect *decreased* reported payments between the December 2024 and January 2026 versions. Even the figures attributed to so-called "atrocities" have materially shifted from month to month between the two versions.



JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869



This moving target is precisely the type of unfair surprise Rule 26 and Rule 37 are designed to prevent.

Cymbidium's trial proffer confirms—rather than cures—the violation. Cymbidium identifies Gupta as a witness who will testify regarding the "preparation and analysis of the most up to date reconciliation spreadsheet and all prior version, the figures reflected in those spreadsheets, amounts owed under the MLSA, and defendants' failure to remit recoveries or payments required under the same." Dkt. 231 at 5. That proffer reflects an intent to present a damages case based on spreadsheets that were never timely disclosed, never stabilized, and never subjected to discovery.

Compounding the prejudice, Cymbidium disclosed no expert witness under Rule 26(a)(2). Yet its proffer makes clear that it intends to elicit testimony from Gupta concerning damages calculations, reconciliation analysis, and amounts allegedly

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

owed—testimony that depends on specialized accounting knowledge and methodology and therefore constitutes expert testimony governed by Rule 702. Because Cymbidium disclosed no expert opinions, reports, or methodologies, such testimony must be excluded under Rule 37(c)(1).

Rule 37(c)(1) provides that when a party fails to comply with Rule 26(a) or (e), exclusion is automatic unless the failure was substantially justified or harmless.  Neither exception applies here. Courts in this District routinely exclude late-disclosed damages calculations offered on the eve of trial. *See Wong v. Seattle Sch. Dist. No. 1*, No. C16-1774 RAJ, 2018 WL 4630385, at *5 (W.D. Wash. Sept. 27, 2018) ("[e]ven if it was not 'feasible' to provide an exact calculation of all future damages [early in the case], it was not an appropriate response to wait until the eve of trial to inform Defendant it was facing $5 million in exposure"); *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611 JLR, 2014 WL 4848229, at *9 (W.D. Wash. Sept. 29, 2014) (excluding from trial untimely supplemental damages calculation); *Reed Constr., Inc. v. James River Ins. Co., No.* C11-960 MJP, 2012 WL 13024803, at *2 (W.D. Wash. Apr. 6, 2012) (excluding evidence of damages where no computation was provided in the initial disclosures).

This is not a case involving amorphous damages such as emotional distress. Cymbidium's claimed damages are financial, spreadsheet-driven, and derived from its own accounting records—records it has ostensibly maintained for years. *See* Dkt. 213. Allowing Cymbidium to present a newly produced, radically reformatted spreadsheet asserting a drastically increased damages figure—without any timely disclosure of

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

methodology — would unfairly prejudice AHP by depriving it of the ability to conduct targeted discovery or meaningfully prepare for trial. Courts routinely find such prejudice sufficient to warrant exclusion. *See Klamut v. Nibecker*, 2017 WL 1196725, at \*3 (N.D. Cal. Mar. 31, 2017); *MKB Constructors*, 2014 WL 4848229, at \*7.[2]

Accordingly, AHP respectfully requests that the Court exclude:

1. Any testimony or evidence concerning Cymbidium's alleged damages based on reconciliation spreadsheets or calculations not timely disclosed under Rule 26(a) and (e), including Cymbidium's proposed Exhibits 185 and 186; and

2. Any testimony by Sonal Gupta or any other witness purporting to quantify or compute damages based on those undisclosed or untimely materials.

At minimum, the Court should preclude Cymbidium from presenting any damages theory beyond what was expressly and timely disclosed in its Rule 26 disclosures (subject to Motion in Limine #2-5 below).

## B. **PLAINTIFF'S ARGUMENT:**

Defendants' Motion rests on the incorrect premise that Cymbidium unveiled a new damages theory on the eve of trial. It did not. The updated reconciliation spreadsheet, Plaintiff's Exhibit 185, (i) corrects a double-counting error in the prior reconciliation, and (ii) captures the incremental financial consequences regarding what is owed under the contract due to Defendants' conduct since the prior December 2024

---

[2] Importantly, Defendants were not required to move to compel before seeking exclusion. Rule 26 requires damages disclosures "without awaiting a discovery request," and the Rule 37(c)(1) sanction is automatic absent justification or harmlessness. *See Silver State Broad., LLC v. Bergner*, 705 Fed. Appx. 640, 641 (9th Cir. 2017).

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

reconciliation was produced.  There are no new damages categories. There is no new damages methodology or damages theory. The same categories and methodology disclosed in painstaking detail more than a year ago, in December 2024, are being claimed. The only thing "new" is that (i) a double counting error was corrected, (ii) during 2025, defendants continued to sell loans and took other actions that rendered loans unsaleable; and (iii) the math involved applying the contractually specified 16% Applicable Pricing Rate that increases the total.

Defendants are correct that the reconciliation is a "moving target." But the reason it is a moving target is because of Defendants' further contract breaches that have continued throughout this litigation. As Defendants sold loans during the past year, kept proceeds, failed to deliver  mortgage loan documents, and intentionally clouded title so  plaintiff could not monetize the loans it had purchased,  the amount defendants owed under the MLSA increased. The updated spreadsheets reflect those developments.

Defendants' claim of unfair surprise is further undermined by the specific changes reflected in the updated reconciliation.

First, the update corrected a double-counting error that operated in Defendants' favor.  For 48 loans, Defendants had been given credit once as part of the $10 million Keydally transaction and then again, a second time, when those loans were sold to others. That error alone accounts for $2.7 million of the difference and more than that when the Applicable Pricing Rate and management fee are added. The correction

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

regarding the double counting error is not dependent on new information. Defendants were provided, long before trial, with loan-level detail identifying each individual loan included in the Keydally transaction and each individual loan for which sale credits were subsequently given, including descriptions by loan number. If Defendants reviewed the reconciliation carefully—as they contend, they did—the double-counting error was apparent from the face of the data. Plaintiff later identified that there had been a double counting and removed it. Correcting a double counting error that had mistakenly reduced the prior amounts owed in Defendants' favor does not prejudice and does not support exclusion.

Second, the increase in the "atrocity" bucket with respect to the Keydally transaction loan pool likewise reflects subsequently identified consequences of Defendants' conduct, not a new damages theory. The 2024 reconciliation identified 89 loans in the Keydally pool, totaling approximately $3.46 million, that Defendants had sold or otherwise rendered unsaleable. As additional third-party disputes, title failures, and documentation deficiencies surfaced—often because Cymbidium could not provide needed documentation due to Defendants' failures—the number of affected loans increased. The updated reconciliation now reflects 234 loans totaling approximately $7.5 million. The methodology did not change; the universe of impacted loans expanded as additional defects and disputes became known.

In both instances, Defendants were already in possession of the underlying loan-level data. The updates simply reflect (i) the correction of a double counting error, and

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 13

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

(ii) the evolving factual record resulting from Defendants' ongoing breaches and conversions of loans and proceeds. Neither supports exclusion under Rule 26 or Rule 37.

None of the underlying information reflected in the 2025 reconciliation is "new news" to Defendants. The reconciliation is based entirely on Defendants' sales of loans, their failure to remit proceeds from those sales, their failure to deliver required loan documents, steps they took to cloud title rendering loans and REO properties unsaleable, and correcting the double counting. There is no unfair surprise or undue prejudice when defendants have always known what loans they sold and kept proceeds, what loans they refused to deliver loan documents for, and the loans and REO properties for which they clouded title. It is plaintiff that had to, over time, and during the course of this case first learn about those events and summarize the financial impact of them on the amount owed under the contract. Defendants are now seeking to reward themselves for a pattern of deception, conversion, and covert sale and disposition of assets sold to the Plaintiff by limiting the discovery of those bad acts as accounted for in the organic and growing damage calculation.

Nor are the computations or methodologies new. The formulas used in the reconciliation have remained unchanged from prior reconciliations provided to Defendants. What has changed are the inputs—which have been updated due to Defendants' continuing actions during the litigation.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 14

In addition, a large portion of the difference between the prior December 2024 reconciliation and the 2025 update is straightforward math attributable to the 16% Applicable Pricing Rate (the "APR"). As explained to Defendants in June 2025, credits were applied based on the month in which a loan portfolio was believed to have occurred. When subsequent information revealed that credits should be reversed because of the double counting, or because loans had been sold by AHP or were unsaleable, the reversal of the credit reversal had to be done in the same month that the initial credit had been applied. Once a credit was removed, the 16% Applicable Pricing Rate applied to the remaining balance.[3]

As reflected in Column H below, the adjustments increased by approximately $5 million. That increase resulted in the APR component rising from approximately $4.5 million to approximately $9.7 million. These "changes" are straightforward math. They are the arithmetic consequence of (i) correcting the double counting error, and (ii) the loans plaintiff purchased that, during 2025, plaintiff learned were not saleable and application of the APR to those amounts—not a change in methodology.

While defendants knew their ongoing conduct would require these adjustments, plaintiff did not know, in December 2024, that additional loans and REOs it had purchased had been sold by AHP to others or rendered unsaleable. Loans that Cymbidium believed were monetizable in December 2024 became unsaleable, as

---

[3] More detail regarding credit reversals, and the reasons for those reversals, is included in Plaintiff's Trial Brief.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

potential transactions were blocked due to, among other things, defendants intentionally clouding the title. The 2025 update captures the financial consequences of those later-discovered facts on the amounts now owed under the contract.

See Reconciliation from December 2024:

| # | Date | Pending debt | Improvement cost | Payment | Atrocity List - adjustment | Number of Days | Interest | Mgmt fees | Outstanding repurchase price |
|---|------|-------------|------------------|---------|---------------------------|----------------|----------|-----------|------------------------------|
| 1 | 10/7/2022 | 25,000,000.00 | - | 5,250,000 | | - | - | | 19,750,000.00 |
| 2 | 10/31/2022 | 19,750,000.00 | - | - | (1,416,047.94) | 24 | 207,780.82 | | 21,373,828.76 |
| 3 | 11/30/2022 | 21,373,828.76 | 30,600.00 | - | | 30 | 281,080.49 | | 21,685,509.25 |
| 4 | 12/31/2022 | 21,685,509.25 | 69,899.10 | - | | 31 | 294,685.28 | | 22,050,093.63 |
| 5 | 1/31/2023 | 22,050,093.63 | 618.08 | 3,200,000.00 | (1,032,391.34) | 31 | 299,639.63 | | 20,182,742.67 |
| 6 | 2/28/2023 | 20,182,742.67 | 2,000.00 | 300,000.00 | | 28 | 247,722.43 | | 20,132,465.11 |
| 7 | 3/31/2023 | 20,132,465.11 | 14,439.62 | 125,000.00 | | 31 | 273,580.90 | 14,596.07 | 20,310,081.69 |
| 8 | 4/30/2023 | 20,310,081.69 | 42,287.02 | 1,594,029.05 | (13,225.18) | 30 | 267,091.49 | 27,384.37 | 19,066,040.69 |
| 9 | 5/31/2023 | 19,066,040.69 | 95,103.12 | 560,812.59 | | 31 | 259,089.21 | 28,030.78 | 18,887,451.22 |
| 10 | 6/30/2023 | 18,887,451.22 | 107,938.86 | 12,599,089.57 | (4,417,033.42) | 30 | 248,382.92 | 15,910.69 | 11,077,627.54 |
| 11 | 7/31/2023 | 11,077,627.54 | 145,327.62 | 1,062,319.96 | | 31 | 150,534.34 | 15,325.51 | 10,326,495.04 |
| 12 | 8/31/2023 | 10,326,495.04 | 262,150.13 | 1,303,575.18 | (197,650.73) | 31 | 140,327.17 | 14,302.75 | 9,637,350.63 |
| 13 | 9/30/2023 | 9,637,350.63 | 236,715.90 | 1,908,617.07 | (991,139.87) | 30 | 126,737.76 | 13,065.06 | 9,096,392.15 |
| 14 | 10/31/2023 | 9,096,392.15 | 181,485.97 | 506,212.15 | (400,000.00) | 31 | 123,611.25 | 13,815.58 | 9,309,092.80 |
| 15 | 11/30/2023 | 9,309,092.80 | 124,096.90 | 46,252.13 | | 30 | 122,420.95 | 13,677.84 | 9,523,036.36 |
| 16 | 12/31/2023 | 9,523,036.36 | 179,908.25 | 76,080.44 | | 31 | 129,408.93 | 14,500.76 | 9,770,773.87 |
| 17 | 1/31/2024 | 9,770,773.87 | 117,075.20 | 92,030.96 | | 31 | 132,775.45 | 14,756.88 | 9,943,350.44 |
| 18 | 2/29/2024 | 9,943,350.44 | 122,996.91 | 1,385,338.12 | (29,754.00) | 29 | 126,403.14 | 12,287.29 | 8,849,453.66 |
| 19 | 3/31/2024 | 8,849,453.66 | 89,251.26 | 803,702.93 | (457,000.00) | 31 | 120,255.59 | 12,949.04 | 8,725,206.62 |
| 20 | 4/30/2024 | 8,725,206.62 | 66,513.09 | 28,710.66 | (77.85) | 30 | 114,742.44 | 12,769.48 | 8,890,598.83 |
| 21 | 5/31/2024 | 8,890,598.83 | 235,018.30 | 136,930.69 | | 31 | 120,814.71 | 13,539.46 | 9,123,040.61 |
| 22 | 6/30/2024 | 9,123,040.61 | 90,281.95 | 163,964.99 | (65,000.00) | 30 | 119,974.23 | 13,282.26 | 9,247,614.06 |
| 23 | 7/31/2024 | 9,247,614.06 | 87,292.94 | 219,334.25 | (186,282.15) | 31 | 125,666.21 | 14,012.14 | 9,441,533.25 |
| 24 | 8/31/2024 | 9,441,533.25 | 150,146.60 | 238,075.32 | | 31 | 128,301.38 | 14,092.97 | 9,495,998.88 |
| 25 | 9/30/2024 | 9,495,998.88 | 194,552.25 | 76,769.16 | | 30 | 124,878.89 | 14,007.66 | 9,752,668.52 |
| 26 | 10/31/2024 | 9,752,668.52 | 89,393.24 | 121,504.90 | (41,888.82) | 31 | 132,529.41 | 14,706.92 | 9,909,682.01 |
| 27 | 11/30/2024 | 9,909,682.01 | 2,332.24 | 22,113.04 | | 30 | 130,319.11 | 14,412.65 | 10,034,632.96 |
| 28 | 12/5/2024 | 10,034,632.96 | 2,000.00 | - | | 5 | 21,993.72 | 2,411.31 | 10,061,037.99 |
| | | Total | 2,739,424.55 | 31,820,463.16 | (9,247,491.30) | | 4,570,747.83 | 323,837.48 | |

| | Other items # | | |
|---|---------------|---|---|
| Insurance - Nov'24 | (not included above yet) | | 53,781.07 |
| | $ | | |
| 3 | AHP $2M deposit due on Keydally SCL purchase | | 2,000,000.00 |
| 4 | Activist Legal 5K*12 months | $ | 60,000.00 |
| | Amount outstanding | $ | 12,174,819.06 |

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 16

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

See 2025 Reconciliation:

| # | Date | Pending debt | Improvement cost | Payment | Atrocity List – adjustment | Number of Days | Interest | Mgmt fees | Outstanding repurchase price |
|---|------|-------------|------------------|---------|----------------------------|----------------|----------|-----------|------------------------------|
| | | | | | | | - | | |
| 1 | 10/7/2022 | 25,000,000.00 | - | 5,250,000 | | - | | | 19,750,000.00 |
| 2 | 10/31/2022 | 19,750,000.00 | - | - | (2,392,486.21) | 24 | 207,780.82 | | 22,350,267.04 |
| 3 | 11/30/2022 | 22,350,267.04 | 30,600.00 | - | | 30 | 293,921.32 | | 22,674,788.36 |
| 4 | 12/31/2022 | 22,674,788.36 | 69,899.10 | - | | 31 | 308,128.63 | | 23,052,816.09 |
| 5 | 1/31/2023 | 23,052,816.09 | 618.08 | 3,200,000.00 | (1,490,039.89) | 31 | 313,265.67 | | 21,656,739.72 |
| 6 | 2/28/2023 | 21,656,739.72 | 2,000.00 | 300,000.00 | | 28 | 265,814.23 | | 21,624,553.95 |
| 7 | 3/31/2023 | 21,624,553.95 | 14,439.62 | 125,000.00 | | 31 | 293,856.95 | 15,683.73 | 21,823,534.25 |
| 8 | 4/30/2023 | 21,823,534.25 | 42,287.02 | 1,594,029.05 | | 30 | 286,994.42 | 29,570.86 | 20,588,357.50 |
| 9 | 5/31/2023 | 20,588,357.50 | 95,103.12 | 560,812.59 | | 31 | 279,776.04 | 30,324.15 | 20,432,748.22 |
| 10 | 6/30/2023 | 20,432,748.22 | 107,938.86 | 12,599,089.57 | (9,439,170.24) | 30 | 268,704.63 | 25,386.23 | 17,674,858.61 |
| 11 | 7/31/2023 | 17,674,858.61 | 145,327.62 | 1,018,754.48 | | 31 | 240,184.38 | 25,328.98 | 17,066,945.11 |
| 12 | 8/31/2023 | 17,066,945.11 | 262,150.13 | 1,200,577.18 | (762,126.00) | 31 | 231,923.42 | 25,449.30 | 17,148,016.77 |
| 13 | 9/30/2023 | 17,148,016.77 | 236,715.90 | 1,886,236.07 | (439,999.98) | 30 | 225,508.17 | 23,335.90 | 16,247,340.65 |
| 14 | 10/31/2023 | 16,247,340.65 | 181,485.97 | 421,469.23 | | 31 | 220,785.78 | 24,119.91 | 16,252,263.08 |
| 15 | 11/30/2023 | 16,252,263.08 | 124,096.90 | 46,252.13 | | 30 | 213,728.39 | 23,795.93 | 16,567,632.17 |
| 16 | 12/31/2023 | 16,567,632.17 | 179,908.25 | 76,080.44 | | 31 | 225,138.23 | 25,113.44 | 16,921,711.65 |
| 17 | 1/31/2024 | 16,921,711.65 | 117,075.20 | 92,030.96 | | 31 | 229,949.83 | 25,529.76 | 17,202,235.48 |
| 18 | 2/29/2024 | 17,202,235.48 | 122,996.91 | 178,158.70 | | 29 | 218,680.47 | 24,145.53 | 17,389,899.70 |
| 19 | 3/31/2024 | 17,389,899.70 | (113,374.07) | 396,702.93 | | 31 | 236,312.06 | 25,439.73 | 17,141,574.50 |
| 20 | 4/30/2024 | 17,141,574.50 | 66,513.09 | 28,710.66 | | 30 | 225,423.45 | 25,034.30 | 17,429,834.68 |
| 21 | 5/31/2024 | 17,429,834.68 | 235,018.30 | 136,930.69 | | 31 | 236,854.74 | 26,403.81 | 17,791,180.84 |
| 22 | 6/30/2024 | 17,791,180.84 | 90,281.95 | 29,892.27 | | 30 | 233,966.21 | 26,013.44 | 18,111,550.18 |
| 23 | 7/31/2024 | 18,111,550.18 | 87,292.94 | 33,052.10 | | 31 | 246,118.60 | 27,365.65 | 18,439,275.26 |
| 24 | 8/31/2024 | 18,439,275.26 | 352,771.93 | 23,756.39 | | 31 | 250,572.07 | 28,267.76 | 19,047,130.63 |
| 25 | 9/30/2024 | 19,047,130.63 | 194,552.25 | 76,182.98 | | 30 | 250,482.81 | 27,927.10 | 19,443,909.81 |
| 26 | 10/31/2024 | 19,443,909.81 | 89,393.24 | 79,616.08 | | 31 | 264,224.09 | 29,306.76 | 19,747,217.82 |
| 27 | 11/30/2024 | 19,747,217.82 | 75,490.79 | 138,209.03 | (79,234.00) | 30 | 259,689.44 | 28,800.81 | 20,052,223.84 |
| 28 | 12/31/2024 | 20,052,223.84 | 325,758.23 | 16,605.61 | | 31 | 272,490.49 | 30,668.14 | 20,664,535.09 |
| 29 | 1/31/2025 | 20,664,535.09 | 80,721.16 | 23,570.94 | | 31 | 280,811.22 | 31,216.04 | 21,033,712.57 |
| 30 | 2/28/2025 | 21,033,712.57 | 83,455.09 | 36,646.27 | | 28 | 258,167.21 | 28,646.46 | 21,367,335.06 |
| 31 | 3/31/2025 | 21,367,335.06 | 50,126.10 | 17,012.14 | | 31 | 290,361.59 | 32,239.08 | 21,723,049.70 |
| 32 | 4/30/2025 | 21,723,049.70 | 159,360.27 | 7,096.81 | | 30 | 285,672.98 | 31,875.39 | 22,192,861.53 |
| 33 | 5/31/2025 | 22,192,861.53 | 49,881.35 | 10,494.14 | | 31 | 301,579.71 | 33,492.06 | 22,567,320.51 |
| 34 | 6/30/2025 | 22,567,320.51 | 81,110.67 | 9,765.98 | | 30 | 296,775.72 | 32,989.33 | 22,968,430.25 |
| 35 | 7/31/2025 | 22,968,430.25 | 93,508.01 | 65,836.31 | | 31 | 312,118.94 | 34,643.04 | 23,342,863.94 |
| 36 | 8/30/2025 | 23,342,863.94 | 48,566.07 | 38,732.91 | | 30 | 306,974.65 | 34,031.03 | 23,693,702.78 |
| 37 | 9/30/2025 | 23,693,702.78 | 86,148.22 | 12,055.12 | | 31 | 321,974.70 | 35,804.66 | 24,125,575.24 |
| 38 | 10/31/2025 | 24,125,575.24 | 106,827.79 | 8,184.26 | | 31 | 327,843.43 | 36,491.76 | 24,588,553.97 |
| | Total | | 3,976,046.06 | 29,737,544.02 | (14,663,056.32) | | 9,782,555.52 | 904,440.08 | |

| | Other items # | |
|---|---------------|---|
| Activist Legal 5K*12 months | $ | 60,000.00 |
| Amount outstanding | $ | 24,648,553.97 |

Contrary to Defendants' assertion, Exhibit 185 is not formatted differently from the prior reconciliations provided, including the December 2024 reconciliation. Exhibit 185 contains the same core information and structure as the earlier versions, including tabs labeled "Updated Loan Summary," "Payment OI Details," "KeyDally $10M Purchase," "Schedule A Purchase," and "Summary Improvement Costs."

The only additional tabs in Exhibit 185 are (1) "Summary Credits," which merely aggregates and summarizes information already in other TABS, and (2) "Cash Screenshot," which consists of screenshots of bank-statement information relating to the mortgage loans at issue. Those bank statements were produced to Defendants in discovery on March 5, 2025. All the "Cash Screenshot" tab does is helpfully integrate

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

the supporting bank statement information into readily accessible screenshots in the spreadsheet.

Cymbidium produced its reconciliation spreadsheet in December 2024 and contemporaneously explained how the figures were calculated. Cymbidium then supplemented its discovery responses in April 2025, specifically in response to a discovery request regarding Cymbidium's earlier Rule 26(a)(1) damages disclosure. Exhibit 185 does not introduce new methodologies or new categories of damages.

**REQUEST NO. 1:** Documents referred to and identified in Cymbidium's Rule 26(a)(1) disclosures as:

**SUPPLEMENTAL RESPONSE**: The most recent reconciliation Excel sheet Bates stamped Cymbidium139074, contains 12 separate tabs with detailed information regarding recoveries, damages calculations, expenses such as property maintenance, mortgage servicing, REO sales, and legal and other services, and internal notes regarding the loans under the MLSA. The documents in Plaintiff's control and possession supporting the Excel and damages calculations were also previously provided to Defendants and are further outlined below. Additionally, on the "updated loan summary" tab, H8 is the sum of all the amounts under tab "Schedule A Purchase Putbacks," H16 is the sum of the amounts under tab "Keydally $10M purchase," H11-33 except H16, is the sum of the amounts under tab "Payments - OI details," H35 is the sum of all the H figures. The supporting documents were produced and are further detailed below:

Cymbidium also provided Defendants with further supplementation regarding its Fed. R. Civ. P.26 initial disclosures and discovery responses in the form of a detailed explanatory letter dated June 2, 2025, describing the calculations and damage categories

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 18

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

reflected in the reconciliation. The January 2026 update reflects additional information learned thereafter—often arising from Defendants' post-discovery conduct—not the introduction of new damages categories or a new methodology. Any remaining dispute goes to weight, not admissibility, particularly in a bench trial. Exclusion under Fed. R. Civ. P. 37 is unwarranted where information is being updated to account for a party's ongoing wrongful conduct, the components and methodology has not changed and has been previously disclosed and robustly explained, and the only thing "new" is that (i) there are some additional inputs because Defendants' misconduct continued such that additional credits previously given had to be reversed, and (ii) straightforward math applying those credit changes and extending the numbers through year-end 2025 increases the amount owed.

Defendants are incorrect regarding their concerns about Plaintiff's Exhibit 187. It is not an excel sheet showing a damages computation, and it is a different formatted excel because it is not a reconciliation spreadsheet. Plaintiff's Exhibit 187 encompasses summary information regarding all of the mortgage loans. All of the information in it is pulled from Oak Harbors internal system, and it is admissible as a business record under Fed. R. Evid. 803(6). Under Rule 803(6), spreadsheets generated from business databases are themselves admissible business records. *See, e.g., Smith v. Alternative Resources Corp.*, 128 F. App'x 614, 615 (9th Cir. 2005); *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992); *see also United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018). More recently, the Western District of Washington confirmed that the relevant inquiry

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 19

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

is whether the underlying database was maintained in the ordinary course of business—not whether the data was later exported or printed for litigation. *Larsen v. PTT, LLC*, No. 3:18-CV-05275-TMC, 2025 WL 278337, at *1–2 (W.D. Wash. Jan. 23, 2025).

Finally, Ms. Gupta, along with Mr. Weinstein, has been disclosed by the Plaintiff as a person with knowledge of the computation of damages and information about not only the various reconciliation spreadsheets, but also different summary spreadsheets were the information from each was directly pulled from Oak Harbor's database.

> INTERROGATORY NO. 8: Identify those individuals responsible for, or who were involved in calculating with respect to the First Amendment:
>
>    a.    All amounts recovered on the Mortgage Loans;
>
>    b.    All debt and interest related to the transactions contemplated under the Agreement;
>
>    c.    All unrelated third-party costs and fees related to managing the Mortgage Loans;
>
>    d.    The 16% Applicable Pricing Rate; and
>
>    e.    The Management Fee;
>
>    f.    Mortgage Loan Costs; and
>
>    g.    Outstanding Purchase Price.

Excerpt of Plaintiff's Answer to Interrogatory No. 8:

overbroad, vague, and unduly burdensome as to the knowledge of others. Without waiving any objections, Cymbidium states: William S. Weinstein, Sonal Gupta, and Michael Basile.

Cymbidium137776 is updated according to information received from the analytics teams and various other teams when efforts to recover on the mortgage loans are unsuccessful due to AHP's sale of the same mortgage loans to third parties without Plaintiff's knowledge or AHP not providing mortgage loan documents necessary for loan recoveries which result in destruction of asset values.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Accordingly, Defendants' request for exclusion of testimony regarding and exhibits 185 and 186 should be denied.

1. **Exhibit 185** is an updated reconciliation spreadsheet that applies the same methodologies and formulas previously disclosed, using information derived from Defendants' ongoing misconduct. It does not introduce a new damages theory or calculation framework.

2. **Exhibit 186**, by contrast, is not a reconciliation at all—it is a summary compilation of underlying information regarding all of the mortgage loans at issue in this case gathered from an internal database and independently admissible under Rule 803(6).

3. Ms. Gupta's testimony, and the testimony of other witnesses concerning, explaining, or summarizing these exhibits and the computation and methodology of damages, should not be excluded. Ms. Gupta, Oak Harbor's Chief Financial Officer, shouldn't be excluded from testifying because her predecessor, Michael Basile, died. The other disputes regarding Exhibits 185 and 186 go to their weight, not admissibility, especially in a bench trial. Fed. R. Evid. 37 does not authorize exclusion where the categories and methodology have been previously disclosed and explained, the update is due to is the need to include additional loans due to Defendants' ongoing conduct, there is no prejudice to defendants because they have known their continued sales of loans and other conduct rendering loans unsaleable would increase the amounts owed, and a large part of the increase is just math attributable to application of the APR.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 21

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

**MOTION IN LIMINE #2**

**Exclude Testimony or Argument Relying on the December 2024 or Earlier Spreadsheets as Affirmative Proof of Cymbidium's Alleged Damages Due to Lack of Authentication, Foundation, and Inadmissible Hearsay**

### A. DEFENDANTS' ARGUMENT:

Even apart from Cymbidium's failure to comply with Rule 26, Cymbidium should be precluded from introducing or relying on the December 2024 spreadsheet—or any other spreadsheet—prepared by Michael Basile (hereinafter, the "**Basile Spreadsheets**") as affirmative proof of damages. The undisputed record establishes that these spreadsheets lack an evidentiary foundation, cannot be authenticated by a competent witness, and constitute inadmissible hearsay.

It is undisputed that Michael Basile was responsible for preparing the spreadsheets through at least February 2025, and he is unavailable to testify because he passed away soon thereafter. William Weinstein confirmed that Basile was the individual "in charge" of preparing the spreadsheets and that no one else assumed that role until Basile became seriously ill in February or March of 2025:

Q: And can you talk to me about who was in charge at – on your side to prepare those spreadsheets?

A: Michael Basile.

Q: Anybody else?

A: Well, only after Mike Basile became very sick, Sonal Gupta took over.

Q: When did Mike Basile become very sick?

A: February or March of 2025.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Weinstein Dep. Trans. 115:6-13.

Neither Weinstein nor Sonal Gupta prepared the Basile Spreadsheets, and neither can testify to their methodology, sources, assumptions, or reconciliation process. Gupta testified that the authoritative records are Magerick LLC's (another Weinstein entity) general ledger and accounting systems—not the spreadsheets—and that the spreadsheet required ongoing updating and reconciliation. Weinstein similarly could not authenticate the spreadsheets line by line and deferred accounting questions to others. No expert has been disclosed, and no qualified witness exists who can explain how the Basile Spreadsheets were created or whether the figures reflect finalized, reconciled numbers rather than estimates, interim adjustments, or judgment calls.

That lack of foundation is dispositive. A damages exhibit is inadmissible where the proponent cannot present a sponsoring witness with personal knowledge sufficient to authenticate the document and explain how it was prepared and what it purports to show. Mere familiarity with a document's existence or general use is not enough. Here, Cymbidium lacks any witness with the requisite knowledge of preparation to authenticate the Basile Spreadsheets or lay a proper foundation for their admission.

The Basile Spreadsheets also constitute inadmissible hearsay. They aggregate multiple layers of information, including third-party servicing data, internal adjustments, credits, offsets, and discretionary categorizations (such as "atrocities"). Each embedded layer requires an independent hearsay exception. Cymbidium has identified none. Nor can the spreadsheets be admitted as business records: they are not

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 23

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

the system of record, and no custodian or other qualified witness with knowledge of their creation has been identified to establish the requirements of Rule 803(6).

For the same reasons, testimony and argument derived from the Basile Spreadsheets must also be excluded. Neither Weinstein nor Gupta has personal knowledge necessary to sponsor opinions or calculations based on those spreadsheets. Allowing Cymbidium to present spreadsheet-based damages through testimony would simply launder inadmissible hearsay through witnesses who lack foundational competence required by the evidentiary rules.

AHP does not ask the Court to resolve Cymbidium's damages claims at this stage. They ask only that Cymbidium be required to prove any claimed damages through admissible evidence supported by a competent supporting witness and a proper evidentiary foundation. Because Cymbidium cannot do so with respect to the Basile Spreadsheets, evidence, testimony, and argument relying on those spreadsheets as affirmative proof of damages should be excluded.[4]

## B.  PLAINTIFF'S ARGUMENT:

Defendants' foundation argument mischaracterizes the record. While Michael Basile was CFO at the time the December 2024 reconciliation was prepared, he was not the only person working on or knowledgeable about the spreadsheet.

---

[4] Nothing in this motion seeks to preclude AHP from relying on Cymbidium's own recorded revenue figures, to the extent reflected in Cymbidium's internal materials, as admissions relevant to AHP's counterclaims under the First Amendment. AHP does not rely on the Basile Spreadsheets to establish Cymbidium's damages or net balances, but do intend to show, based on the Basile Spreadsheets, the total amount of revenue generated on the loans at issue far exceeds any balance owed to Cymbidium.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 24

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Sonal Gupta testified she worked on the reconciliation alongside Mr. Basile and Mr. Weinstein, and was familiar with the underlying information, and understood how the spreadsheet was compiled and updated. She has sufficient personal knowledge to authenticate the spreadsheet and to testify how it was maintained and used in the course of ordinary business. Additionally, Mr. Weinstein also worked closely with both Ms. Gupta and Mr. Basile, had a say in the formatting of the document and the types of information that made up the reconciliation and had routine weekly team meetings in the regular course of business to discuss all of the information on the reconciliation spreadsheet. Those meetings included the various teams within Oak Harbor, such as the analytics, asset management, and accounting. Fed. R. Evid. 901 requires a witness with knowledge—not the original drafter. Importantly, AHP's counsel walked through the 2024 reconciliation spreadsheet with Ms. Gupta and during her deposition she answer many questions regarding the same.

Defendants' hearsay argument also fails. The spreadsheets summarize underlying business records, including loan proceeds, recoveries, and servicing activity, and are admissible as summaries under Fed. R. Evid. 1006 and as business records under Fed. R. Evid. 803(6), supported by testimony from a qualified witness with knowledge of the system and process. That Mr. Basile later passed away does not render the spreadsheet inadmissible where other knowledgeable witnesses can lay any required foundation.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Defendants also ignore their own discovery choices. Mr. Basile has always been identified as a witness in this case. Defendants elected not to depose him here, despite having deposed him in related state-court litigation and knowing about his health issues. They cannot now weaponize that choice to exclude evidence.

**MOTION IN LIMINE #3**

**Exclude Lucas Frank As a Witness Under Rule 26**

**A. DEFENDANTS' ARGUMENT:**

Cymbidium never disclosed Lucas Frank as a witness during discovery. He did not appear in Cymbidium's Rule 26(a)(1) initial disclosures, nor was he identified in Cymbidium's interrogatory responses seeking persons with knowledge of the facts of this case. At no point did Cymbidium represent that Frank possessed substantive knowledge concerning the MLSARO or First Amendment, loan documentation requirements, loan enforcement or liquidation, alleged documentation defects, or any failures to remit proceeds or provide contractually required materials.

Nor did Cymbidium ever supplement its disclosures to add Frank on these topics. Frank appeared during discovery only because AHP served him in a narrow capacity relating to his role as a notary. That limited involvement did not place AHP on notice that Cymbidium intended to rely on Frank at trial as a substantive witness on contractual obligations, loan defects, causation, or damages. The December 31, 2025 pretrial disclosure thus represented the first time AHP was informed that Frank would be offered as a witness on the core factual and legal issues in dispute.

Rule 26 requires parties to disclose, without awaiting a discovery request, the identity of individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A). Compliance is mandatory. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014). The disclosure rules exist to ensure cases are tried on the merits—not by surprise or ambush. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014). Where a late disclosure disrupts trial preparation or discovery strategy, the violation is not harmless. *See Little Butte Prop. Owners Water Ass'n v. Bradley*, No. 2:17-CV-162-RMP, 2018 WL 1975682, at \*7 (E.D. Wash. Apr. 26, 2018) (citing *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005)).

The prejudice here is acute. During discovery, AHP deposed two witnesses—Weinstein and Gupta—specifically, in large part, to test Cymbidium's damages theory and the spreadsheets on which it relies. As detailed in Motions in Limine Nos. 1 and 2, both witnesses disclaimed personal knowledge sufficient to explain, authenticate, or reconcile the spreadsheets and damages figures at issue.

The timing further confirms that Cymbidium's failure to disclose Frank was neither inadvertent nor harmless. After the Court's October 24, 2025 scheduling conference—shortly after the appearance of undersigned counsel—the parties expressly discussed potential deponents and agreed to limit post-cutoff depositions to no more than three. *See* Dkts. 209–211. AHP identified Weinstein and Gupta. Cymbidium suggested a third name—Eric Seabrook—but never identified Frank as a person with

substantive knowledge of damages, spreadsheets, loan defects, or contractual performance.

Only after the Weinstein and Gupta depositions—and only in the proposed Joint Pretrial Order filed on December 31, 2025—did Cymbidium identify Frank as a trial witness. In context, the late identification appears designed to backfill foundational gaps exposed during discovery by introducing a new witness who Cymbidium now claims can testify regarding loan documentation, contractual compliance, alleged defects, recoverability, and damages bearing directly on spreadsheet-based calculations.

Rule 26 does not permit a party to withhold a witness during discovery and then unveil that witness on the eve of trial to cure evidentiary deficiencies. *See Little Butte*, 2018 WL 1975682, at *7. Allowing Frank's testimony now—after discovery closed and after Cymbidium's disclosed witnesses disclaimed knowledge—would deprive AHP of the opportunity to conduct targeted discovery, test the basis for his purported knowledge, or assess whether his testimony is being offered to authenticate spreadsheets or supply opinions that should have been disclosed through expert testimony. The resulting prejudice cannot be cured through cross-examination alone.[5]

---

[5] During a January 5, 2026, telephone call, Cymbidium's counsel suggested that Frank was being offered merely as a "corporate witness" and therefore did not need to be disclosed by name. This post-hoc reframing does not cure Cymbidium's failure to disclose Frank as a witness during discovery. Cymbidium did not identify any generic corporate representative in its Rule 26 disclosure, and even if it had, Rule 26 does not permit a party to satisfy its disclosure obligations through an unnamed, catch-all designation. *See GEICO Cas. Co. v. Beauford*, No. 8:05-cv-697-T-24, 2007 WL 2412953, at *5 (M.D. Fla. Aug. 21, 2007) (finding that "naming a general category such as

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Accordingly, Frank's testimony should be excluded in its entirety. At a minimum, any permitted discovery should be strictly limited to the narrow subject matter actually disclosed and explored during discovery—his role as a notary—and should preclude any testimony regarding damages, spreadsheet preparation or authentication, loan recoverability, documentation defects, or financial impact.

## B. **PLAINTIFF'S ARGUMENT:**

Lucas Frank is a proper fact witness and corporate representative.

First, Defendants themselves disclosed Mr. Frank during discovery, and Plaintiff expressly reserved the right to call any witness disclosed by Defendants.

Second, Mr. Frank is employed by Oak Harbor Management, LLC on the asset-management team, alongside Maxwell Thornton, who was identified as a witness in Plaintiff's initial disclosures.

> 7.  Maxwell Thornton
> 1415 Western Ave, Suite 700
> Seattle, WA 98101
> (206) 438-1024
> c/o Brad Keller
>
> Mr. Thornton has knowledge regarding AHP loan documentation and deficiencies, plaintiff's efforts to sell properties, defendants' interference with those efforts, defendants' conversion, and defendants' efforts to sell plaintiff's properties.

---

'corporate representative' is not a sufficient disclosure under Rule 26," and granting motion in limine "to the extent that GEICO has not disclosed the specific name of the witness that will testify as its corporate representative"); *Rogers v. Bank of Am., N.A.*, No. 13-333, 2014 WL 4681031, at *5-7 (D. Kan. Sept. 19, 2024) (finding that "mere identification of individuals not by name but by a generic label that could apply to a number of its employees, such as Defendant's 'corporate representative' or 'records custodian,' is not sufficient" to satisfy Rule 26). *See also Ollier*, 768 F.3d at 863 (late disclosure of witness "throws a wrench into the machinery of trial" and can disrupt trial schedules and impair courts' ability to manage their dockets).

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 29

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Mr. Frank's testimony will be limited to the same subject matter for which Mr. Thornton was disclosed: information concerning the mortgage loans at issue, including sold loans and loans with defects and other issues rendering them unsaleable. Defendants' claim of undue prejudice is manufactured. Despite knowing of Mr. Thornton's role and knowledge, Defendants never sought his deposition. Nor did Defendants follow through on their stated intent to take Fed. R. Civ. P. 30(b)(6) depositions of Oak Harbor Capital Management, Cymbidium, or related entities—despite learning of those entities' involvement through discovery. Defendants attempt to litigate Fed. R. Civ. P. 26 required disclosures in a vacuum, ignoring the extensive, ongoing discovery conducted throughout this case and the many communications between counsel regarding witnesses and document production.

Finally, Mr. Frank has firsthand knowledge of how loan-level information was gathered, maintained, and reviewed internally, including the due-diligence process used when loan defects or missing documentation were identified. He will testify as a corporate representative for that limited purpose—explaining how information was collected and maintained in the ordinary course of business. He will not offer damages opinions or perform damages calculations.

Plaintiff has prepared compendium exhibits summarizing loan-level information for the mortgage loans at issue, identified as Exhibits 191–671, totaling more than 22,000 pages. For each loan that could not be monetized or for which prior credits were adjusted, the Oak Harbor asset-management team gathered extensive public-

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

record documentation to understand the issues with each loan. Mr. Frank's testimony is offered solely to provide foundation and context for those exhibits and how, as part of the asset management team, the information was gathered.

There is no unfair surprise. Mr. Frank's testimony introduces no new theories and no new data; it explains how information already produced in discovery was assembled and maintained. Exclusion is unwarranted.

**MOTION IN LIMINE #4**

**To the Extent Any Evidence of Damages from Spreadsheets is Allowed, Exclude Evidence or Argument Suggesting Cymbidium Possessed a Post-April 7, 2023 Contractual Right to Compel Repurchase, Impose Credits, or Unilaterally Convert Alleged Loan Defects Into Damages**

## A. DEFENDANTS' ARGUMENT:

Cymbidium should be precluded from introducing evidence or argument premised on the existence of a contractual right—after April 7, 2023—to compel repurchase of loans, impose credits, or convert alleged loan defects into damages through asserted "put-backs" or so-called "atrocities."

The MLSA granted Cymbidium a discretionary "Purchaser Put Right" only during the six-month period following the October 7, 2022 conveyance date. That contractual exercise period expired on April 7, 2023. After that date, the agreement no longer conferred any contractual mechanism by which Cymbidium could compel repurchase, impose credits, or treat alleged loan defects as enforceable put-back claims.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 31

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Evidence or argument suggesting otherwise—such as references to put-back demands, "atrocity" lists, or assertions that loans could be repurchased or credited outside the contractual exercise period—is therefore legally irrelevant. Once the put-back right expired, Cymbidium no longer possessed any mechanism, discretionary or otherwise, to compel repurchase or unilaterally convert alleged defects into damages. Assertions regarding what Cymbidium claims it "would have" put back months later cannot make any fact of consequence more or less probable, because the contract no longer conferred that right. Fed. R. Evid. 401-402.

The record confirms this issue is temporal, not factual. Cymbidium's own evidence shows that its alleged put-back demands—and its sweeping claim that "almost 300 loans" were defective—arose after the contractual window closed. A June 20, 2023 demand letter expressly invoking Section 8.02 was sent more than two months too late. Deposition testimony likewise confirms that the bulk of the alleged "atrocities" were identified, compiled, and expanded in late 2023 and 2024. Evidence offered for purpose of implying an enforceable post-expiration repurchase right therefore rests on a legally inoperative premise.

Allowing such evidence would also substantially undermine trial efficiency. Cymbidium seeks to introduce evidence concerning hundreds of individual loans—each with its own file, alleged defect, and asserted justification for repurchase—despite the absence of any operative contractual right to demand repurchase during the relevant period. In a five-day bench trial, admitting evidence premised on a lapsed

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 32

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

contractual right would invite a sprawling, loan-by-loan inquiry divorced from any live contractual issue and incapable of affecting the Court's legal analysis. Fed. R. Evid. 403.

Accordingly, while Cymbidium may present admissible evidence regarding loan performance or servicing conduct to the extent otherwise relevant, it should be precluded from introducing evidence or argument that presupposes or implies the existence of a post-April 7, 2023 contractual put-back right, including any suggestion that loans could be repurchased, credited, or deemed "atrocities" outside the contractual exercise period.

### B. PLAINTIFF'S ARGUMENT:

Defendants attempt to transform a contractual interpretation dispute into a categorical evidentiary bar. That effort is improper. This is not a motion in limine. It is a thinly veiled summary judgment motion brought long after the cutoff and on less than 3 days' notice.

Cymbidium does not seek to present evidence suggesting it exercised a discretionary contractual put-back right after April 7, 2023. That contractual put back right could be exercised, prior to that date, for any reason. Rather, Cymbidium offers evidence of Defendants' ongoing breaches of the express warranties they made, their continuing conversion of property, and their failures to remit proceeds or deliver required documents—and the resulting financial consequences of those actions regarding amounts owed under the contract. Evidence concerning loan defects,

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

missing or withheld documents, and downstream disputes and clouded title is directly relevant to Cymbidium's claims for breach of contract, conversion, amounts owed under the contract, and equitable relief, regardless of whether there also was a non-exclusive contractual "put back" right that, if exercised, needed to be done within a certain time period.

Critically, Defendants' argument ignores that many of the problems affecting the mortgage loans arose because Defendants sold to others the same loans plaintiff purchased—without notifying Plaintiff—after April 2023. It further ignores Defendants' post-suit communications with lenders, title companies, and others, including letters incorrectly asserting that Defendants had revoked powers of attorney and that such revocation divested Cymbidium of loan ownership. Those actions clouded title and rendered loans purchased unsaleable, independently supporting Cymbidium's claims and increasing the amount owed under the parties' contract.

Defendants' Fed. R. Evid. 403 arguments likewise fail in a bench trial. The Court is fully capable of distinguishing between evidence offered to prove breach or conversion and legal arguments concerning the contractual "put" remedy. A wholesale exclusion is neither necessary nor appropriate.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 34

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

**MOTION IN LIMINE #5**

**To the Extent Any Evidence of Damages from Spreadsheets is Allowed, Exclude Evidence of Affiliate and Related-Party Costs Barred by the First Amendment**

**A. DEFENDANTS' ARGUMENT:**

In Cymbidium's most recent (albeit more than a year old) December 2024 reconciliation spreadsheet, it claims reimbursement for "Improvement cost" totaling $2,739.424.55. Cymbidium139074, summary sheet, column F. Cymbidium should be precluded from introducing evidence or argument concerning any of these costs or expenses allegedly incurred by affiliated or related parties because the governing contract permits reimbursement only for "**unrelated** third-party costs and fees." The First Amendment draws a bright contractual line: before any proceeds are withheld from AHP, deductions are limited to enumerated items, including debt service, interest and *only* unrelated third-party costs incurred in managing the loans. *See* First Amendment, § 5].

That qualifier is dispositive. It defines the universe of recoverable—and thus admissible—costs as a matter of contract interpretation, not factual dispute. Costs paid to affiliates, insiders, or Weinstein-controlled entities fall outside that boundary and cannot be used to reduce proceeds or inflate claimed damages.

Specifically, evidence of payments to related entities—such as legal fees paid to Weinstein's law firm, Weinstein & Riley, servicing or management fees charged by

Land Home, a Weinstein-related entity[6] — has no probative value under Rules 401 and 402. Whether those charges were "reasonable," "customary," or similar to market rates is irrelevant. The parties bargained for a structure that excludes affiliated costs altogether. Admitting such evidence would collapse that distinction the contract expressly preserved and rewrite the agreement under the guise of damages proof.

Because this is a bench trial, the concern is efficiency and analytical clarity. Allowing affiliate-cost evidence would require collateral inquiries into corporate relationships, control, internal pricing, market rates, and post-hoc justifications — none of which bear on any admissible issue unless Cymbidium first establishes that the payee was an unrelated third party within the meaning of the contract, which it incontrovertibly cannot. Absent that foundation, such evidence should be excluded.

## B. **PLAINTIFF'S ARGUMENT:**

Defendants' argument improperly assumes facts not in evidence and seeks a merits based ruling in the guise of a motion in limine. It is yet another improperly disguised summary judgment motion.

Whether particular costs qualify as reimbursable under the First Amendment depends on the nature of the costs, the payee, and the contractual language as applied to the evidence. Defendants' argument goes to contract interpretation and allocation,

---

[6] Land Home is a member of Magerick, along with Oak Harbor Management, LLC. *See* Cause #25-007-KKE, Dkt. 109, ¶¶ 35–37. Oak Harbor Management, LLC's sole member is Oak Harbor Holdings, LLC. *Id.* ¶ 39. Oak Harbor Holdings, LLC is the sole member of Oak Harbor Capital, LLC. Dkt. 113 at 12–13, ¶ 14. Oak Harbor Capital, LLC is a member of Cymbidium Restoration, LLC. *Id.* Cymbidium Restoration, LLC is the sole member of Plaintiff. *Id.* at 12, ¶ 13.

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 36

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

not admissibility. The Court can consider the evidence and determine the weight it should receive under the contract. Exclusion at the threshold would improperly short-circuit that analysis and, in effect, be a dispositive summary judgment ruling.

Defendants are also just plain wrong. Payments to servicers "including legal" is expressly provided for in the "waterfall" provision. Reimbursement payments to Land Home for third party improvement costs or payments to it for loan servicing are third party costs that AHP was required to pay under the First Amendment. Those payments and below market payments to the Weinstein & Reily law firm for preparation of routine legal documents are reimbursable. Cymbidium has neither interest in Land Home, the vendors rendering property improvement services, nor Weinstein & Reily.

## MOTION IN LIMINE #6

### Exclude Expert Testimony or Argument When No Expert Was Disclosed

A. <u>DEFENDANTS' ARGUMENT:</u>

Cymbidium has not disclosed a single expert witness in this case. Nevertheless, its pretrial disclosures reveal an intent to elicit testimony from fact witnesses on matters that require specialized financial, accounting, contractual, and industry expertise. The Federal Rules of Evidence do not permit a party to evade Rule 702 by presenting expert opinions through lay witnesses. Any such testimony must be excluded or strictly limited to personal knowledge of discrete, non-opinion facts.

Federal Rule of Evidence 701 draws a firm boundary between lay testimony and expert opinion. Lay testimony may not be "based on scientific, technical, or other

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Courts therefore exclude lay testimony offering specialized explanations, financial analysis, or damages calculations that an ordinary fact witness could not make based on personal perception alone. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 597, 2006 WL 1330002, at \*3 (N.D. Cal. May 15, 2006); *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1108 (D. Ariz. 2019); *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004).

Cymbidium discloses that William Weinstein will testify not only regarding contract formation and negotiations, but also alleged breaches, failures to remit proceeds, and the "resulting damages" and "impact" of those failures. While Weinstein may testify to facts within his personal knowledge—such as communications he participated in or actions he personally took—he may not offer opinions regarding damages, financial impact, contractual performance, or causation. Testimony of that nature requires specialized analysis and falls within the scope of Rule 702. Because Weinstein was not disclosed as an expert and no expert discovery occurred, any such opinion testimony is inadmissible.

Cymbidium's disclosure as to Sonal Gupta is more explicit still. Cymbidium states that Gupta will testify regarding damages, the preparation and analysis of reconciliation spreadsheets, the figures reflected in those spreadsheets, and amounts allegedly owed under the MLSA and First Amendment. Determining amounts owed, analyzing reconciliation data, and interpreting financial records require specialized

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

accounting and financial analysis and therefore fall within the scope of Rule 702, not Rule 701. Gupta was not disclosed as an expert, no expert report was served, and no Rule 702 foundation exists. Her testimony must therefore be excluded to the extent it offers analysis, interpretation, or conclusions regarding damages, financial compliance, or amounts allegedly owed.

Cymbidium likewise seeks to elicit expert testimony from Lucas Frank under the guise of lay opinion. According to the recently submitted proposed joint pretrial order, Frank will testify regarding alleged documentation defects, loan recoverability, liquidation outcomes, and the consequences of purported failures to provide documents. Assessing whether documentation was defective, whether loans were enforceable or recoverable, or whether alleged defects caused financial loss requires specialized industry, financial, and legal judgment. Even if Frank were otherwise permitted to testify, which he should not be for the reasons set forth above, any testimony on those subjects would constitute expert opinion barred by Rule 701(c) and inadmissible absent compliance with Rule 702.

Cymbidium elected not to disclose expert witnesses. It may not now present expert opinions by stealth. AHP does not seek to preclude factual testimony based on personal knowledge; they seek only to enforce the evidentiary boundaries imposed by Rules 701 and 702. The Court should therefore exclude any testimony or argument from Cymbidium's witnesses that crosses from firsthand factual observation into specialized

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 39

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

financial, accounting, contractual, or industry analysis, and limit any permitted testimony strictly to non-opinion facts grounded in personal knowledge.

B. **PLAINTIFF'S ARGUMENT:**

Defendants conflate permissible lay testimony with expert testimony.

Fed. R. Evid. 701 permits lay witnesses to testify based on specialized knowledge gained through their employment, so long as the testimony is grounded in personal experience rather than litigation-driven expert analysis. Ninth Circuit law is clear on this point, "lay witnesses may testify to 'particularized knowledge by virtue of (their) experience(s)' even if the subject matter is 'specialized or technical(,) because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702'" *United States v. Losch*, 603 F. Supp. 3d 795, 798 (D. Ariz. 2022).

Accordingly:

- **Sonal Gupta**, as CFO, may testify about financial records, reconciliations, and amounts reflected in company spreadsheets that she worked on and used in the ordinary course of business.

- **William Weinstein** may testify about proceeds received, amounts withheld, and Defendants' failures based on his personal involvement.

- **Lucas Frank** may testify about how loan information was gathered and maintained internally.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

None of these witnesses will offer expert opinions, actuarial modeling, or hypothetical analysis. They will testify about what they did, what they observed, and how the business operated. Any remaining concern can be addressed through limiting instructions or cross-examination—not exclusion.

### MOTION IN LIMINE #7

### Exclude Evidence and Argument Premised on Alleged Injury
### to Loans or Proceeds Owned by a Non-Party

A.  **DEFENDANTS' ARGUMENT:**

Cymbidium should be precluded from presenting evidence or argument premised on the assertion that Cymbidium itself suffered injury, loss, or deprivation with respect to mortgage loans, loan proceeds, or collateral that—according to Cymbidium's own witnesses and documents—were owned by, pledged to, and economically borne by Magerick. Evidence or argument suggesting that Cymbidium may recover for conversion or damages based on loans or proceeds for which it did not possess ownership, control, or economic risk is legally irrelevant and risks confusing the issues at trial. Fed. R. Evid. 401-403.

The discovery record establishes that the economic interests and proceeds associated with the AHP loan portfolio resided with Magerick well before this action was filed. Weinstein testified that the acquisition of the loans was financed through Magerick; that the debt incurred to acquire the loans was owed by Magerick, not Cymbidium; that Magerick bore the economic risk associated with the loans; and that the claimed injuries relate to financing and collateral obligations associated with

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Magerick. Weinstein further testified that loan interests were expected to be transferred to, or held for the benefit of, Magerick following closing.

Sonal Gupta's accounting testimony independently corroborated those points. Gupta testified that Cymbidium does not maintain a bank account for the AHP loans; that all cash receipts, revenues, expenses, and loan activity relating to the AHP portfolio are recorded in Magerick's general ledger; and that ongoing revenues continued to be booked to Magerick, not Cymbidium. She described Cymbidium as a "middle entity" formed to facilitate transactions between AHP and Magerick, while Magerick was the fund bearing the economic consequences of loan performance. Losses associated with alleged "bad loans," credit adjustments, and impairment, she explained, affected Magerick's portfolio and borrowing base—not Cymbidium's balance sheet.

Consistent with that testimony, Weinstein identified a Secured Participation Agreement pursuant to which Cymbidium conveyed to Magerick a 100 percent participation interest in the beneficial and economic rights associated with the assets, including the right to receive principal, interest, and proceeds, and the right to direct Cymbidium's exercise of rights under the MLSA. Whatever nominal title Cymbidium may have retained in some instances, the evidence reflects that possession, control, economic benefit, and risk were allocated to Magerick.

In light of this record, allowing Cymbidium to present evidence or argument that it personally suffered conversion or economic loss based on impairment of loans,

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

collateral, or proceeds owned by Magerick would be misleading and inefficient. It would invite the Court to hear proof of alleged injuries suffered by a non-party, risk duplicative recovery theories, and require the Court to resolve collateral ownership and allocation issues that do not materially advance adjudication of Cymbidium's claims as pleaded.

To be clear, AHP recognizes that this matter will be tried to the Court and do not ask the Court to resolve ultimate questions of ownership, standing, or entitlement to relief in limine. Rather, AHP seeks a limiting ruling to ensure that the evidence and argument presented at trial remains tethered to legally relevant theories of injury and do not invite confusion, inefficiency, or collateral disputes concerning alleged losses suffered by a non-party. The requested limitation would not prevent Cymbidium from offering admissible evidence regarding its own conduct or contractual rights. It would, however, ensure that the trial proceeds on legally relevant theories of injury and avoids unnecessary detours into damages theories lacking a nexus to Cymbidium's own ownership or economic interest.

## B. PLAINTIFF'S ARGUMENT:

Defendants' ownership argument impermissibly goes to the merits, not admissibility.

As a matter of contract law, Cymbidium is the contracting party, and it is asserting claims based on Defendants' breaches of that agreement and conversion of proceeds owed under it. Evidence concerning loan proceeds, servicing conduct, and

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

document failures is directly relevant to those claims, regardless of Defendants' characterization of downstream financing or servicing arrangements. That Cymbidium may have obligations to others such as Magerick regarding the same loans and any recovery it obtains in this case, or the fact that the purchase financing was obtained through Magerick, does not divest Cymbidium (the contracting party) of standing to enforce its contractual rights or to recover for conversion of its property.

The evidence will show the practical and lawful reason why the contract was with Cymbidium and it was the purchaser and owner of the loans. When Defendants wrongfully sold loans to others and withheld proceeds, they were selling loans and converting proceeds that, under the contract, belonged to Cymbidium. And when Defendants refused to deliver mortgage loan documents, they were breaching a contractual obligation owed to Cymbidium. Defendants do not get a "get out of jail free" card because Cymbidium may have an obligation to turn over to Magerick any recovery in this case after the fact.[7]

AHP's assertion—which was raised for the very first time in the proposed pretrial order— that Cymbidium is not the real party in interest fails both procedurally and substantively as the basis of this motion. Real party in interest is an affirmative defense. This was never pled in accordance with Fed. R. Civ. P 8(b). Allowing

---

[7] Defendants' position is inherently contradictory. If Magerick had filed this lawsuit, Defendants would have argued that it was not a party to the MLSA and therefore lacked standing to sue. Having taken that position by implication, Defendants cannot now argue the opposite to defeat Cymbidium's claims. This "heads I win, tails you lose" approach smacks of gamesmanship.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Defendants to raise it now on the eve of trial, and to exclude evidence because of it would result in substantial prejudice, as any entity Defendants now claim to be the real party in interest could have been joined had this defense been timely asserted.

At most, Defendants' argument here presents an issue for the Court to resolve after hearing the evidence. It is not a basis for exclusion in limine.

***

Respectfully Submitted this 8th day of January 2026.

**BAILEY DUQUETTE P.C.**

By: */s Hozaifa Y. Cassubhai*
Hozaifa Y. Cassubhai, WSBA #39512
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.225.2250
E: hozaifa@baileyduquette.com
will@baileyduquette.com

*Attorneys for Defendants*

**BYRNES KELLER CROMWELL LLP**

By:/s/ Bradley S. Keller
    Bradley S. Keller, WSBA #10665

By:/s/ M. Victoria Molina
    M. Victoria Molina, WSBA #62109
    1000 Second Avenue, 38th Floor
    Seattle, Washington  98104
    Telephone: (206) 622-2000
    Facsimile:  (206) 622-2522
    Email:      bkeller@byrneskeller.com
                mvmolina@byrneskeller.com

*Attorneys for Plaintiff*

JOINT SUBMISSION ON DEFENDANTS'
MOTIONS IN LIMINE – Page 45

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869