The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CYMBIDIUM RESTORATION TRUST,

                              Plaintiff,

        v.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; its Trustee, U.S. BANK TRUST
N.A.; AHP CAPITAL MANAGEMENT, LLC;
AMERICAN HOMEOWNER
PRESERVATION SERIES 2015A+; its Trustee,
U.S. BANK TRUST NATIONAL
ASSOCIATION; AHP SERVICING, LLC; and
JORGE NEWBERY,

                              Defendants.

NO. 2:24-cv-00025-KKE

**PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS**

**NOTE ON MOTION CALENDAR: APRIL 23, 2026**

**ORAL ARGUMENT**

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE)

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND FACTS....................................................................................1

        A.      The Amended MLSA's Operative Provisions Unambiguously Relinquish
                and Transfer Ownership of the Loans to Cymbidium. ..............................3

        B.      The AHP Trusts Were Required To Deliver The Mortgage Loan Documents
                Under the MLSA.......................................................................................4

                1.      Delivery of the Mortgage Loan Documents was a mandatory, central
                        obligation under the MLSA. ............................................................4

        C.      The AHP Trusts Did Not Own Some of the Mortgage Loans It Sold to
                Cymbidium; It Had Already Sold the Same Loans to Others......................7

        D.      AHP's Improper Revocation of Powers of Attorney and Its Communications
                With Title Insurance Companies and Others Prevented Monetization of
                Loans.........................................................................................................8

III.    ARGUMENT.....................................................................................................10

        A.      Contract Interpretation Principles Governing All Six Motions. ................11

        B.      Motion 1: The MLSA and Amended MLSA Are Valid and Enforceable
                Contracts, Therefore, AHP's Fraudulent Inducement and Other Enforcement
                Defenses Fail As a Matter of Law. ...........................................................12

        C.      Motion 2: The Amended MLSA Transferred Ownership of the Loans to
                Cymbidium Free and Clear With No Restriction on Transfer or Pledge...15

        D.      Motion 3: The MLSA Required AHP to Deliver All "Mortgage Loan Documents"
                and Other Necessary Transfer Instruments to Transfer Title/Ownership..17

        E.      Motion 4: AHP Breached Express Warranties by Selling the Same Loans to
                Others Before the Effective Date...............................................................18

        F.      Motion 5: After the MLSA Effective Date, AHP Was Required to Remit Loan
                Proceeds to Cymbidium and Breached by Failing to Do So. ....................18

        G.      Motion 6: Any Credit Previously Given to AHP Must Be Reversed for Loans
                That Were Double-Sold, Document-Defective, or Rendered Unmonetizable by
                AHP...........................................................................................................20

IV.     CONCLUSION..................................................................................................25

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE)

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

i

## I.    INTRODUCTION

This is a breach of contract case. Many of the issues can and should be determined as a matter of law under the plain language of the parties' contract and basic rules of contract interpretation. Plaintiff Cymbidium Restoration Trust ("Cymbidium") moves for partial summary judgment under Fed. R. Civ. P. 56 on six discrete issues concerning contract-interpretation, contract-enforcement, and contract-breach. They are:

1. The Mortgage Loan Sale Agreement with Repurchase Obligation ("MLSA") and the First Amendment (together the "amended MLSA") is a valid and enforceable contract, and defendants' fraudulent-inducement and other enforcement defenses fail as a matter of law.

2. The amended MLSA transferred to Cymbidium any ownership, title, and interest defendants had in the subject loans and REOs free and clear, and there was no restriction on Cymbidium's right to transfer or pledge those assets.

3. The MLSA and the amended MLSA required AHP to deliver all Mortgage Loan Documents and other transfer instruments necessary to convey ownership and title regarding the subject loans and REOs to Cymbidium or its designee.

4. AHP breached the MLSA and the amended MLSA by selling certain loans to third parties prior to the MLSA effective date.

5. After the MLSA's effective date, AHP was contractually required to remit loan proceeds to Cymbidium, and it breached that obligation regarding certain loans.

6. Any credit Cymbidium previously gave AHP should be reversed for loans that were double-sold by AHP, or for which AHP refused to provide transfer or other needed documentation, or which were rendered unmonetizable by AHP's conduct.

The material facts regarding these issues are either uncontested or no admissible evidence contesting them exists.  Plaintiff is bringing these motions so that certain issues of law can be resolved now, largely based on the unambiguous language in the operative contract, and the issues remaining for trial can be narrowed.

## II.    BACKGROUND FACTS

The MLSA is dated October 7, 2022, but it was executed on October 6, 2022, by Cymbidium and American Homeowner Preservation Trust Series AHP Servicing and American

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 1

Homeowner Preservation Series 2015A+ (collectively, "AHP" or "Defendants") *See* Declaration of William Weinstein in Support of Cymbidium's Partial Summary Judgment ("Weinstein Decl.") ¶2, Ex. 1. Cymbidium  funded the transaction  by wire transferring over $20 million from a Magerick account to AHP on October 6, 2022. *Id.* at ¶3.[1] Initially the MLSA had two groups of loans: Category A and Category B loans. *Id*. Ex. 1 at 3. The Category B loans were a $19.75 million pool of loans that AHP agreed in the MLSA were to be sold through Mission Capital. *Id.* at 5. Any Category B loans not sold through Mission Capital or through other means, were to be repurchased by AHP a few months later. MLSA, Section 4.  However, the Mission Capital sale ended up not proceeding because AHP claimed it was not satisfied with the bids Mission Capital received. *Id.* at ¶4, Ex. 2–3.  Therefore, AHP was unable to repurchase the Category B loans by January 2023 as it was contractually required under the initial MLSA. Keller Decl. Ex. 1. (Newbery Dep. 21:16-24:21, 31:17-34:7, 35:4-36:22, 37:14-38:23). The parties then entered into the First Amendment effective March 15, 2023. Weinstein Decl. *Id*. at ¶5, Ex. 4. Under the First Amendment, (i) AHP provided Cymbidium an additional 277 mortgage loans, (ii) AHP's repurchase obligation was eliminated, and (iii) the distinction between the two categories of loans was eliminated. *Id.* at ¶6, Ex. 4 at ¶¶ 1–2.  Under the First Amendment, the loans that had previously been the Category B loans and the 277 additional loans were to be sold with all proceeds going to Cymbidium until it received $19.75 million, plus an agreed rate of return, and all of its financing and certain other costs. *Id*. ¶ 7, Ex. 4. Only after those amounts were paid in full, if any loans remained, were the remaining loans to be conveyed back to AHP.

Critically, the waterfall provision in the First Amendment expressly required repayment of the WAB Bank ("WAB") financing before any potential reversion of remaining loans would occur.  Paragraph 6 of the First Amendment specifically provides that, while best efforts in good

---

[1] AHP has repeatedly tried to suggest that it was somehow improper for the purchased loans to have been pledged to WAB Bank on October 6, 2022, the day prior to the MLSA effective date. But the MLSA was fully executed by all parties on October 6, 2022, and perhaps even more important, AHP received the $20 million on October 6, 2022.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 2

faith were to be exercised to maximize loan recoveries, the repayment obligation to WAB had to be met. There was no mystery or nondisclosure regarding either the financing or Magerick's involvement: AHP was expressly told before closing that Magerick, an affiliate of Cymbidium, had borrowed most of the purchase price from WAB, and AHP was told that Cymbidium was purchasing the loans on behalf of Magerick. Weinstein Decl. ¶8, Ex. 5 – 6. In contemporaneous email communications, the parties referred to the transaction as the "AHP–Magerick transaction." *Id*. Nothing in the MLSA restricted Cymbidium's or Magerick's ability to pledge, transfer, or encumber the loans, and AHP expressly warranted to Cymbidium that AHP retained no claim to or interest in the loans.[2]

## A.    The Amended MLSA's Operative Provisions Unambiguously Relinquish and Transfer Ownership of the Loans to Cymbidium.

The amended MLSA clearly provides that the loans were (i) sold by AHP to Cymbidium, and (ii) that AHP retained no ownership interest in the loans or their proceeds unless, and until, Cymbidium had received all amounts under the MLSA. Weinstein Decl. Ex. 1.

Beginning with the MLSA's recitals, the first "whereas" recites AHP's desire to sell the loans and Cymbidium's desire to purchase them. Section 2 provides that AHP "sell, transfer, assign, and convey" to Cymbidium all right, title, and interest in the loans, including any interest AHP held in them. *Id*. Section 2 further confirms that Cymbidium, as purchaser, is entitled to receive all payments and other recoveries arising from the loans. *Id*. Section 8.01(vii) contains a broad warranty that the transfer vests in Cymbidium "all rights as owner of such Mortgage Loans free and clear of any and all claims," including any claims by the seller, the AHP Trusts. *Id*. Section 15 reiterates the parties' express intent that the MLSA constitutes a sale of the loans.[3] *Id*.

---

[2] *See* Order Granting in Part and Denying in Part, *AHP Capital Management LLC v. Oak Harbor Capital, et a*l., No. C25-0007-KKE (W.D. Wash. July 08, 2025), Dkt. No. 108 at 9 (hereinafter, the "007 MTD Order") (Court addressed certain contract construction issues and ruled that, under the MLSA, Defendants transferred the loans to Cymbidium).

[3] *See* also 007 MTD Order at 8, where the Court noted that the MLSA provision requiring any remaining Loans to be conveyed "back" to AHP after all amounts were paid confirms that the

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

The amended MLSA reinforced that ownership of the loans was transferred. Under the MLSA and amended MLSA, ownership of the loans vested in Cymbidium at closing.

**B.    The AHP Trusts Were Required to Deliver the Mortgage Loan Documents Under the MLSA.**

1. <u>Delivery of the Mortgage Loan Documents was a mandatory, central obligation under the MLSA.</u>

The MLSA does not merely anticipate delivery of Mortgage Loan Documents—it required it. Delivery of those documents is a fundamental provision of the MLSA and the amended MLSA, and it was essential to Cymbidium's ability to realize the benefit of the bargain.

Section 1 of the MLSA defines the key components of each "Mortgage Loan." They include the "Mortgage," the "Note," the "Mortgage File," and the "Mortgage Loan Documents." The contractual definitions of those terms are specific and purposeful. They reflect the commercial reality that a mortgage loan is not merely an abstract payment stream, but a bundle of enforceable legal rights that depends on possession and control of specific documents.

The MLSA contractual definitions are:

- <u>Mortgage File</u>: The Mortgage Loan Documents pertaining to the related Mortgage Loan and Servicing File.

- <u>Mortgage Loan</u>: Each residential Mortgage Loan sold, assigned, and transferred to the Purchaser …including to the extent available, the Mortgage File, the Monthly Payments and all other rights, benefits, proceeds, and obligations arising from a Mortgage Loan.

- <u>Mortgage Loan Documents</u>: The documents listed in Exhibit 1 to the MLSA for each Mortgage Loan, which include:

  - the original Note and endorsements;

  - an assignment of mortgage acceptable for recording;

transaction effected a present transfer of ownership since, if ownership had not initially transferred to Cymbidium, there would be nothing to convey "back."

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- any loan modification agreements;

- title policies; and

- any other security agreements.

*See* Weinstein Decl. at Ex. 1.

Exhibit 1 of the MLSA required that all of these documents, which are collectively defined as the "Mortgage Loan Documents," "shall" be delivered to Cymbidium.[4] With possession of the Mortgage Loan Documents, Cymbidium would have (and control) everything needed to realize a recovery from the MLSA loans either through a borrower "work out,"  by obtaining a deed in lieu of foreclosure and selling the "REO"[5] property, through foreclosure, or by selling the loan.

This delivery obligation is reinforced throughout the MLSA. Section 7.01 requires the servicer's computer systems clearly reflect the loans have been sold and mandates the delivery of Mortgage Loan Files to the successor servicer after a transition period. Section 7.02 provides that AHP release any interest it has in the Mortgage Files. These are standard requirements in this industry and AHP's representative, Karen Kamphausen, testified to understanding the meaning of this section and the requirement that it imposed on AHP. Keller Decl. at Ex. 2 (Kamphausen Dep. 38:1-41:2, 71:18-73:12, 76:3-9). Together, these provisions confirm that possession and control of the Mortgage Loan Documents were integral to the transaction.

Consistent with these obligations, on December 2, 2022, Cymbidium sent a demand to AHP Servicing, LLC and Jorge Newbery requesting delivery of all Mortgage Files pursuant to Section 7.02 of the MLSA. Weinstein Decl. at Ex. 7. Beginning on December 7, 2022, AHP's Senior Vice President of Trading, Karen Kamphausen, confirmed that 75 Mortgage Loan Files—

---

[4] Exhibit 1 of the MLSA, titled "Mortgage Loan Documents," provides: "With respect to each Mortgage Loan set forth on a related Mortgage Loan Schedule, [AHP] shall deliver and release to [Cymbidium], the following documents..."

[5] When a lender takes control of a property pledged as collateral, it is referred to in the industry as a "REO" property, and that term is used here.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

referred to by AHP Servicing as "collateral files"[6]—had been shipped to WAB. *Id*. Ex. at 8. Of the 703 Mortgage Loans sold under the MLSA, only 238 Mortgage Loan Files were ultimately sent to WAB; AHP Servicing represented that the remaining files were held by other servicers with whom it was working at the time to provide the necessary documents. *Id*. at Ex. 9.

As of September 8, 2023, Newbery acknowledged that 319 Mortgage Loan Files still had not yet been transferred to Land Home and proposed that 198 of them remain with AHP Servicing. *Id*. at Exs. 10 – 11. None of the 121 loans Newbery agreed to transfer to Land Home pursuant to the MLSA were in fact ever transferred. Instead, AHP retained both the Mortgage Loan Files and servicing for all 319 loans. *Id*. ¶ 9. By October 2023, there were additional unresolved issues concerning missing Mortgage Loan Documents for 103 loans, with no response from AHP or Newbery regarding when those documents would be provided. *Id*. Ex. 12 – 13. During her deposition, Kamphausen agreed that the Mortgage Loan Documents were supposed to be sent to Cymbidium, and due to servicing for some there was an agreement they would be sent in tranches, but when asked if she knew if all the documents had been sent, she claimed to not remember details or whether she was instructed by Newbery to not transfer any more. Keller Decl. Ex. 2 (Kamphausen Dep. at 49:18-53:16, 54:14-55:25, 69:15-71:10).

In November 2023, despite knowing that delivery of the Mortgage Loan Documents was a contractual obligation and necessary to complete pending loan sales, Newbery attempted to leverage performance of that obligation in an effort to extract additional proceeds for AHP. *See* Weinstein Decl. Ex. 14. During this litigation, Cymbidium and its servicers have repeatedly encountered problems because Mortgage Loan Documents were never delivered or only copies—rather than originals—were provided, requiring additional corrective actions, including as an example, the motion to compel execution of deeds and transfer documents in this case. *See* Dkt. 172.

---

[6] *See also* Keller Decl. Ex. 2, (Kamphausen Dep. 57:2-15, 59:18-25, 61:5-23), where Kamphausen repeatedly referred to the mortgage loans under the MLSA as collateral for WAB.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 6

To this day, AHP continues to refuse to deliver Mortgage Loan Documents for a substantial number of MLSA loans or to execute documents necessary to complete pending sales or to enable sales. That failure goes to the essence of the MLSA and defeats its central purpose.

**C.     AHP Did Not Own Some of the Mortgage Loans It Sold to Cymbidium; It Had Already Sold the Same Loans to Others.**

Under Section 8.01 of the MLSA, AHP represented and warranted that:

- it had "the full power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate, all transactions contemplated by this Agreement." (ii).

- "[T]he Seller has not knowingly impaired, waived, altered or modified the related Mortgages or Notes in any material respect, or satisfied, canceled, rescinded or subordinated such Mortgage or Notes in whole or in part or release all or any material portion of the related Mortgage Properties from the lien of the related Mortgages, or executed any instrument of release, cancellation, rescission or satisfaction of the related Notes or Mortgages." (vi).

- "The Seller has good title to and is the sole owner and holder of the related Mortgage Loans." (vii).

*Id*. Ex. 1.

Yet, on April 17, 2023, Karen Kamphausen sent a list of loans sold by AHP, some which had already been sold *prior to* the MLSA effective date, October 7, 2022. *Id*. Ex. 15. Prior to this email, Cymbidium was not aware that AHP had already sold, and no longer owned, some of the loans it had sold to Cymbidium under the amended MLSA. *See* Weinstein Decl. at *Id.*, ¶10. Currently, Cymbidium is aware of roughly 70 Mortgage Loans that AHP purportedly sold to Cymbidium that, as of October 2022, AHP had either already sold to someone else or it no longer owned the loan for other reasons. *Id.*, ¶11. Twenty-three of those loans were Category B loans with an ascribed aggregate price of $693,481.41. *Id*. Forty-nine of them were part of the

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

277 First Amendment and they had an aggregate basis[7] of $1,889,469.79. *Id*.[8]  Put bluntly, (i) close to $700,000 of the loans AHP initially sold Cymbidium in October 2022 did not exist, and (ii) an additional approximately $1.9 million of loans that it purported to sell with the First Amendment also did not exist.

**D.    AHP's Improper Revocation of Powers of Attorney and Its Communications With Title Insurance Companies and Others Prevented Monetization of Loans.**

The MLSA required AHP to provide documents like powers of attorney to effectuate the transaction. Section 23 obligated AHP to "execute and deliver such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement." The powers of attorney were not optional conveniences; they were contractually required instruments allowing Cymbidium to both receive and exercise the rights of ownership AHP conveyed.

Consistent with those contractual requirements, AHP executed powers of attorney in favor of Oak Harbor Capital (the "OH POAs") to permit execution of mortgage assignments, endorsements and alonges, servicing transfers, foreclosure documents, and REO conveyances. Weinstein Decl. ¶12, Ex. 30. The OH POAs expressly authorized Oak Harbor to execute any "documents related to any Loan" and to convey "title to real estate owned." These broad grants of powers and authority track the post-closing activities required by the MLSA and the amended MLSA: loans had to be transferred to Cymbidium or its designee, and then they needed to be able to pledge, foreclose upon, sell, and otherwise monetize the loans to fund the amended MLSA waterfall.

AHP's later attempt to revoke the OH POAs was improper as a matter of law. Nothing in the amended MLSA or the OH POAs gives AHP the right to revoke the OH POAs. To the

---

[7] "Basis" refers to a loan cost basis, i.e., a reflection of the investor's remaining capital investment in the loan excluding unearned interest or other non-principal amounts.

[8] The Basis is not the amount AHP recovered from these loan sales, which AHP has never fully accounted for; the Court-appointed Special Master would be able to determine that amount.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 8

contrary, AHP warranted that it transferred all rights, title, and interest in the loans free and clear and that it retained no ownership interest, liens, or claims to the loans. With no rights in or claim to the loans, AHP could not revoke the POAs. Moreover, the OH POAs were powers "coupled with an interest" and irrevocable as a matter of law on that basis as well. A power of attorney is coupled with an interest when it is granted to protect or enable the agent's own property interest, not merely to benefit the principal. *Taylor v. Burns*, 203 U.S. 120, 126 (1906); Restatement (Third) of Agency § 3.12 cmt. c. (Am. Law Inst. 2006). Washington law squarely holds that a power of attorney coupled with an interest "is not revocable at the will of the principal." *State ex rel. Everett Tr. & Sav. Bank v. Pac. Waxed Paper Co.*, 22 Wn.2d 844, 850–52, 157 P.2d 707 (1945).

Here, Cymbidium—and its transferees—held a direct ownership and economic interest in the loans. Under the MLSA and amended MLSA, monetization of the loans was the sole source of funds to satisfy more than $20 million owed under the contractual waterfall, including repayment of third-party financing. The OH POAs were granted precisely to protect and enable that interest by allowing Cymbidium and its agents to complete assignments, endorsements, foreclosures, servicing transfers, and REO sales where AHP was still in the chain of title or its sign off was otherwise needed. Because the OH POAs were coupled with Cymbidium's ownership interest, AHP had no legal ability to revoke them as a matter of law.

The MLSA transferred any interest AHP had in the loans, and AHP expressly warranted that it retained no lien or other rights. Having sold the loans, AHP had no legally cognizable interest that could be harmed by the use of the POAs to assign mortgages, endorse notes, convey REO property, or complete servicing transfers. As this Court has already held, Cymbidium's transfer of loans to affiliates and those affiliates' pledging of the loans was not inconsistent with the MLSA or amended MLSA. *See* 007 MTD Order at 9:1–7. The use of the POAs therefore did not impair any right of AHP as a matter of law.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

After purporting to revoke the OH POAs in October 2023, AHP compounded its breach by refusing to execute assignments, allonges, deeds, and other transfer documents and by *affirmatively* contacting title insurance companies and escrow and closing agents to announce a "dispute," to tell them it had revoked any POAs, and to threaten claims against them if they proceeded with transactions regarding the loans. *See* Weinstein Decl. ¶ 16 – 18. As reflected in the underwriting denial and closing-hold correspondence, title insurers refuse to insure and closing agents refuse to close transactions because the POA revocation and other litigation clouded title. *See id*. at Exs. 19 – 20. Those actions directly prevented sales, foreclosures, refinancings, and payoff transactions and rendered loans unmonetizable, not because of any defect in the loans themselves, but because of AHP's refusal to provide required documents and its affirmative post-closing interference, both which were breaches of its warranties in the MLSA.

In short, the powers of attorney were given and required under the MLSA to effectuate the transaction; they were irrevocable because they were coupled with Cymbidium's ownership interest; and they were wrongfully revoked in breach of both the MLSA and settled agency law. AHP's revocation—followed by its refusal to execute transfer and other documents and its communications with title insurers and market participants—directly frustrated Cymbidium's ability to monetize the loans for which AHP had already been paid.

### III.    ARGUMENT

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Each of Cymbidium's six motions presents a discrete question of contract interpretation or undisputed breach that can be resolved based on the plain language of the MLSA, amended MLSA, and the undisputed record.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 10

## A.    Contract Interpretation Principles Governing All Six Motions.

Washington law governs the MLSA and amended MLSA. Washington courts "are loath [] to interfere with the rights of parties to contract as they please between themselves." *Salewski v. Pilchuck Veterinary Hosp., Inc., P.S.*, 189 Wn. App. 898, 908, 359 P.3d 884 (2015) (alteration in original). Courts therefore enforce contracts as written and "determine the parties' intent at the time they executed the contract rather than 'the interpretations the parties are advocating at the time of the litigation.'" *Radliff v. Schmidt*, 27 Wn. App. 2d 205, 210, 532 P.3d 622 (2023).

Courts give "undefined terms their plain, ordinary, and popular meaning." *Nishikawa v. U.S. Eagle High, LLC*, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007). And courts impute an intent consistent with the reasonable meaning of the words used. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent[.]" *Interstate Prod. Credit Ass'n v. MacHugh*, 90 Wn. App. 650, 654, 953 P.2d 812 (1998). But where reliance on extrinsic evidence is unnecessary, contract interpretation is a question of law. *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co.*, 176 Wn.2d 502, 517, 296 P.3d 821 (2013).

Finally, this Court must interpret the agreement as a whole and avoid rewriting the parties' deal. If a party's position requires stretching the language to imply terms that are not present, that would amount to writing a new contract. *In re Marriage of Mudgett*, 41 Wn. App. 337, 341, 704 P.2d 169 (1985); see also *Fitness Int'l, LLC v. Nat'l Retail Props., LP*, 25 Wn. App. 2d 606, 613, 524 P.3d 1057 (2023).

With those principles in mind, each of Cymbidium's motions can (and should) be resolved as a matter of law.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**B.      Motion 1: The MLSA and Amended MLSA Are Valid and Enforceable Contracts, Therefore, AHP's Fraudulent Inducement and Other Enforcement Defenses Fail As a Matter of Law.**

Cymbidium seeks a ruling that the MLSA and amended MLSA are valid and enforceable contracts and that AHP's defenses aimed at avoiding enforcement—including fraudulent inducement—fail as a matter of law.

The amended MLSA is a  negotiated, written agreement between sophisticated parties governing the sale, ownership, and monetization of a defined portfolio of mortgage loans. The agreements contain detailed provisions addressing consideration, transfer of title, representations and warranties, servicing, document delivery, allocation of proceeds, and remedies.

Washington law does not permit parties to evade written contracts by asserting generalized allegations of fraud that contradict the express terms of the agreement. A claim for fraudulent inducement requires proof—by clear, cogent, and convincing evidence—of each of the nine elements of fraud, including a false representation of an existing fact, knowledge of its falsity, intent to induce reliance, justifiable reliance, and resulting damages. *Frontier Bank v. Bingo Invs.*, LLC, 191 Wn. App. 43, 59–60, 361 P.3d 230 (2015). At the summary judgment stage, the question is not whether fraud has been alleged, but whether Defendants have produced evidence sufficient to create a genuine dispute of material fact as to each required element under that heightened evidentiary standard. *Pedersen v. Bibioff*, 64 Wn. App. 710, 722, 828 P.2d 1113 (1992). AHP has not done so.

A party claiming fraudulent inducement must identify a misrepresentation of existing fact that is independent of the contract itself. *Id*. Here, Defendants' purported fraud defenses merely repackage disagreement with the economic outcome of the transaction and post-hoc objections to how the contract operates.

Defendants' fraudulent-inducement theory fails for multiple independent reasons. Most fundamentally, the MLSA unambiguously provides that AHP transferred its interest in the loans to Cymbidium regardless of whether the transaction could be or was colloquially referred to as a

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

"loan" or a "sale." As this Court already held, the MLSA vested ownership of the loans in Cymbidium as a matter of contract construction. 007 MTD Order at 9:22–10:3. Because the written agreement expressly addresses and resolves the issue of ownership, Defendants cannot establish any misrepresentation of an existing fact that is independent of the contract itself.

Nor could AHP ever establish justifiable reliance. Parties to a written contract are presumed to have read and understood its terms. *Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 381–82, 745 P.2d 37 (1987). And while justifiable reliance is normally a question of fact, summary judgment is appropriate if reasonable minds could reach but one conclusion. *Cornerstone Equip. Leasing, Inc. v. MacLeod*, 159 Wn. App. 899, 905, 247 P.3d 790, 794 (2011). AHP expressly warranted in the MLSA that it was relinquishing its interest in the loans and transferring ownership of them to Cymbidium free and clear of any claim AHP had regarding them. Having made that warranty, AHP cannot now claim that it somehow was "misled" by any prior casual references characterizing the transaction differently. Washington courts do not permit a party to disavow the plain language of a contract by claiming reliance on pre-contract statements that the written agreement squarely contradicts. *Id*.

The evidentiary record confirms the absence of fraud. Defendants point to no contemporaneous document, communication, or witness testimony showing that Cymbidium misrepresented an existing fact, concealed material information, or intended to deceive AHP when the parties entered the MLSA, or perhaps more importantly, when they entered into the amended MLSA. To the contrary, the structure of the transaction—including the waterfall, third-party financing, servicing arrangements, and ultimate allocation of proceeds—is fully disclosed on the face of the amended MLSA.

Because Defendants cannot establish multiple required elements of fraudulent inducement—misrepresentation, falsity, intent, justifiable reliance, and causation—by clear, cogent, and convincing evidence, the defense fails as a matter of law and cannot preclude enforcement of the contracts.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants' remaining enforcement defenses fare no better. Their assertions of satisfaction, failure of conditions, failure of duties or obligations, substantial performance, de minimis harm, and impossibility of performance are either legally deficient, unsupported by admissible evidence, or contradicted by the undisputed record. None identifies a contractual provision excusing performance, none establishes a failure of a condition precedent, and none creates a triable issue regarding the enforceability of the amended MLSA. Assertions of "substantial performance" and "de minimis harm" are incompatible with undisputed evidence that AHP failed to deliver loan files, diverted proceeds, double-sold assets, and affirmatively rendered loans unmonetizable. Likewise, impossibility is unavailable where the alleged impossibility is the result of the breaching party's own conduct. *Liner v. Armstrong Homes of Bremerton, Inc.*, 19 Wn. App. 921, 924-925, 579 P.2d 367, 370 (1978)

The MLSA and amended MLSA fully disclose the structure of the transaction, including the waterfall, third-party servicing, and financing. Defendants cannot rely on subjective dissatisfaction or hindsight disagreement to avoid enforcement of unambiguous contract terms. Because AHP's position is contrary to and would render the express language of the contract meaningless, it fails as a matter of law. The Court must give effect to all of the language used and cannot render any language meaningless or ineffective. *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d (2014).  The Court "must enforce the contract as *written*; it may not modify the contract or create ambiguity where none exists." *Lehrer v. Dep't of Soc. and Health Servs.*, 101 Wn. App. 509, 515, 5 P.3d 722 (2000). (emphasis added). Because Defendants' enforcement defenses would require the Court to disregard express contractual language and rewrite the amended MLSA, they fail as a matter of law.

Accordingly, Cymbidium seeks summary judgment that the MLSA and amended MLSA are valid, enforceable contracts and that Defendants' enforcement affirmative defenses—including fraudulent inducement—should be dismissed.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**C.      Motion 2: The Amended MLSA Transferred Ownership of the Loans to Cymbidium Free and Clear With No Restriction on Transfer or Pledge.**

The MLSA unambiguously transferred ownership of the mortgage loans to Cymbidium free and clear of claims by AHP. Section 2 provides that AHP "sell[s], transfer[s], assign[s], and convey[s]" all right, title, and interest in the loans to Cymbidium. Section 8.01(vii) warrants that the transfer vests in Cymbidium "all rights as owner … free and clear of any and all claims," including those of the seller itself. Section 15 expressly confirms the parties' intent that the transaction constitutes a sale.

AHP's current position seeks to impose limitations on that ownership interest that were never bargained for, never written, and are inconsistent with both the contract's plain language and the parties' contemporaneous understanding. The issue is not whether the MLSA or the amended MLSA contains an express provision authorizing subsequent transfers or pledges. The issue is whether, once ownership is transferred free and clear, the agreement contains any provision that restricts subsequent transfers or pledging. It does not.

This Court has already addressed that precise issue:

> Additionally, the amended MLSARO places no explicit restriction on Cymbidium's ability to transfer, assign, or pledge the Mortgage Loans, as AHP's counsel admitted at oral argument.  That Cymbidium transferred Mortgage Loans to Magerick, which pledged them as collateral for the loan that funded the amended MLSARO, is therefore not inconsistent with the amended MLSARO.  Although AHP's counsel attempted to characterize such a restriction as an implied assumption of the amended MLSARO, Washington law requires that the explicit terms of the agreement control.

007 MTD Order at 9:1-7 (citations omitted).[9]

Independent of the Court's ruling, AHP's implied-restriction theory fails under settled Washington law. "Contracts are assignable unless such assignment is expressly prohibited by statute, contract, or is in contravention of public policy." *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 823, 881 P.2d 986 (1994). And where parties intend to include protections, conditions, or carve-outs, "they would have used specific language to that

---

[9] This issue was also briefed by WAB in case No. C25-0007-KKE, Dkt. Nos. 126 and 133.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

effect." *Syrovy v. Alpine Res., Inc.*, 122 Wn.2d 544, 550, 859 P.2d 51 (1993). They did not do so here.

AHP's after-the-fact assertion that the parties nonetheless "understood" such restrictions to exist is both contrary to Washington contract law and contradicted by contemporaneous evidence. Under Washington law, a party's "subjective" understanding is irrelevant. *See Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 123 Wn.2d 678, 684, 871 P.2d 146 (1994) ("Unilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions."). Moreover, while the parties were still working cooperatively, Newbery expressly acknowledged that certain loans had been pledged to WAB and proposed strategies to repay the WAB loan in order to release the collateral. *See* Weinstein Decl. Exs. 5 – 6, 21 – 22. In contemporaneous communications, AHP and its agents referred to the pledged loans as WAB's "collateral files." Keller Decl. Ex. 2 (Kamphausen Dep.); Weinstein Decl. Exs. 8, 46.[10] Far from objecting to the pledging of the loans, AHP understood it, acknowledged it, and worked within that framework.

Nor would the pledging of loans for WAB financing have prevented later reconveyance of any remaining loans. The First Amendment's waterfall provision expressly required repayment of the WAB financing before any remaining loans were to be conveyed back to AHP. Once that purchase financing was paid off, any encumbrance would be extinguished, and the remaining loans would no longer be pledged. The structure presupposes—not prohibits—the interim pledging of loans as collateral.

Viewed against the MLSA's text, the First Amendment's waterfall, this Court's prior Order, and Washington law, AHP's claim that Cymbidium lacked the ability to transfer the loans or that Magerick lacked the ability to pledge them is untenable as a matter of law.

---

[10] Weinstein Decl. Ex. 4 is a bailment letter from WAB confirming that the loans were subject to a "perfected first lien security interest in favor of WAB." Kamphausen testified that she received this letter as part of a loan sale to Kirkland Group that included Cymbidium loans and that this type of bailment letter was routinely used. Keller Decl. Ex. 2, (Kamphausen Dep. at 64:3–67:3).

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 16

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The amended MLSA reinforced—rather than reversed—the ownership structure established at closing. It eliminated the repurchase obligation and confirmed that Cymbidium would retain ownership and control of the loans and their proceeds until all amounts due under the waterfall were satisfied, including repayment of the WAB purchase financing.

Nothing in the MLSA or the amended MLSA restricts Cymbidium's ability to transfer loans to an affiliate, pledge loans as collateral, or otherwise encumber them. AHP expressly warranted that it retained no ownership interest. As a matter of law, ownership vested in Cymbidium at closing, free and clear.

**D.      Motion 3: The MLSA Required AHP to Deliver All "Mortgage Loan Documents" and Other Necessary Transfer Instruments to Transfer Title/Ownership.**

Delivery of Mortgage Loan Documents was a mandatory and central obligation under the MLSA. Exhibit 1 of the MLSA requires that those documents "shall" be delivered to Cymbidium. Without possession and control of the Mortgage Loan Documents, Cymbidium could not foreclose, modify, sell, or otherwise monetize the loans—defeating the purpose of the transaction.

The MLSA reinforces this obligation throughout, including in Sections 7.01 and 7.02, which require the transfer of Mortgage Files and release of AHP's interest in them. The undisputed record shows that AHP failed to deliver documents for a substantial number of loans and refused to execute documents necessary to complete pending sales. *See* Weinstein Decl. Ex. 7, 13, 14.  That failure constitutes a material breach as a matter of law. *See e.g., Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wn. 2d 577, 589, 167 P.3d 1125, (2007) (failure to perform when due is a breach).

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

**E.      Motion 4: AHP Breached Express Warranties by Selling the Same Loans to Others Before the Effective Date.**

The MLSA contains express representations and warranties that AHP had good title, sole ownership, and full authority to sell each loan, and that the loans had not been previously impaired, released, or transferred.

The undisputed (or undisputable) evidence shows that AHP had sold or no longer owned at least 70 mortgage loans prior to October 7, 2022. At the time the MLSA was executed, and again at the time of the First Amendment, AHP therefore lacked title and authority to sell those loans to Cymbidium. That  constitutes a clear breach of Sections 8.01(ii), (vi), and (vii) of the MLSA. *See e.g. Percival-Birchard v. Caldwell*, 16 Wn. App. 2d. *3-4 1018 (2021)(holding that a seller's breach of a material warranty going to the nature and value of what was sold constituted a breach of contract because the buyer did not receive the benefit of the bargain). Cymbidium is entitled to summary judgment establishing that these double-sold and other non-existent loans breached the MLSA.

**F.      Motion 5: After the MLSA Effective Date, AHP Was Required to Remit Loan Proceeds to Cymbidium and Breached by Failing to Do So.**

Once the MLSA became effective and ownership of the mortgage loans transferred to Cymbidium, AHP no longer had any right to retain any proceeds from those loans. The MLSA required that all recoveries, payments, and proceeds received on the loans be turned over because (i) Cymbidium owned the loans, and (ii) AHP Servicing was a loan servicer with a fiduciary duty to remit proceeds to the loan owner. That understanding was repeatedly confirmed in contemporaneous communications among the parties and their agents, which reflect that proceeds on Cymbidium-owned loans were to be remitted to accounts designated for Cymbidium or its affiliates, not retained by AHP. *See* Weinstein Decl. Exs 23 – 25. Despite that clear contractual obligation, AHP repeatedly failed to remit proceeds it received after the MLSA effective date. Internal correspondence in August 2023 shows Oak Harbor and its trading counterparties scrambling to identify loan sales by AHP that were "unaccounted for," including

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 18

basic information such as when loans were sold, to whom, for how much, and—critically—where the proceeds went. In response to inquiries seeking a complete reconciliation so that paydowns of the WAB facility could be tracked, AHP could not account for numerous sales and proceeds. *See* Weinstein Decl. Ex. 26.

That failure to account is consistent with deposition testimony confirming that AHP retained proceeds instead of remitting them as required under the MLSA waterfall. *See* Keller Decl. Ex. 2 (Kamphausen Dep. 100:11–105:24, 106:21–108:11, 113:2–114:2).

The VAK transaction provides a particularly clear example of AHP's breach by not remitting loan proceeds. In January 2023—only a few months into the transaction—AHP sold 31 mortgage loans to VAK Capital Trust I for $930,017.46 Rather than remitting those proceeds to Cymbidium as required, AHP instructed VAK to wire payment directly to AHP. Cymbidium did not receive those funds.[11] As later confirmed by VAK's principal, Stephen Khanamirian, AHP represented that it owned the loans outright, had the right to sell them, and was entitled to receive payment directly. At no point did AHP disclose that Cymbidium owned the loans or that proceeds were required to be remitted under the MLSA. *See* Weinstein Decl. at Ex 47 ¶¶ 2–5 ("Khanamirian Decl.").

That misrepresentation also had predictable consequences. VAK later sued both AHP and Cymbidium after discovering that nine of the mortgage loan files had not been delivered and that clear title could not be confirmed. Although VAK ultimately exited the litigation, the parties entered into a stipulation supported by the Khanamirian Decl., which confirms that VAK paid AHP directly at AHP's instruction and never paid Cymbidium. *Id*. ¶ 5. In other words, AHP not only failed to remit proceeds it received, but affirmatively structured the transaction so that

---

[11] AHP now claims it turned over $500,000 of the VAK sale proceeds even though, at the time, it did not identify it as such. Regardless, even if that is accepted as true for purposes of this motion, all that means is that AHP's breach/conversion was for "only" $430,017 rather than $930,017. Keller Decl. Ex. 1 (Newbery Dep. 42:6-43:2).

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 19

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Cymbidium was bypassed entirely—despite having already transferred ownership of the loans to Cymbidium under the MLSA.

This conduct is a straightforward breach of contract and conversion. The MLSA does not permit AHP to retain or divert proceeds received on Cymbidium-owned loans after the effective date. Nor does it allow AHP to instruct third-party purchasers or servicers to send funds to AHP instead of Cymbidium and its agents. By retaining proceeds from post-closing loan sales and recoveries—including the VAK transaction—AHP violated the express terms of the MLSA as a matter of law.

Accordingly, Cymbidium seeks a ruling that AHP breached the MLSA by failing to remit post-effective-date loan proceeds and that Cymbidium is entitled to recover those amounts, together with all associated damages, interest, and equitable relief.

**G.      Motion 6: Any Credit Previously Given to AHP Must Be Reversed for Loans That Were Double-Sold, Document-Defective, or Rendered Unmonetizable by AHP.**

Last, Cymbidium seeks a ruling that any credit previously given to AHP must be reversed for loans that (i) AHP double-sold, or (ii) were unable to be monetized because AHP refused to provide assignments, endorsements, allonges, or other required documents, revoked a POA, or its conduct clouded title or otherwise prevented monetization of a loan for which it had previously been given credit.

When Cymbidium or Magerick sold groups of mortgage loans or REO properties to third-party buyers such as Keydally or BBNY Mortgage LLC, AHP would be given a credit against the MLSA amounts for the sale price. Weinstein Decl. ¶13, and Ex. 48. In other words, the purchase price for those portfolios would be applied as a credit against the amounts under the First Amendment. Each credit reduced the amount Cymbidium was to receive dollar-for-dollar. AHP reviewed the loan portfolios being sold and agreed to the credits and received the benefit of those credits. *Id*.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 20

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

After receiving credit, however, AHP did not provide required signatures for sales of some loans to third parties; it used its wrongful retention of Mortgage Loan Documents to sell some of the same loans or REO properties to someone else and kept the proceeds; and in other cases, knowing it had already received the credit for the loans, it destroyed the loan's value by purporting to revoke a power of attorney used in the title chain, by encumbering properties with debt, and/or by communicating with title insurers and others for the express purpose to clouding title and making the loan or REO unmarketable. *Id*. These were not pre-existing defects in the loans. All these problems were created by AHP after it had already received credit for the loans in transactions, and it knew it had received credit for them. Put simply, AHP sold Cymbidium these loans, got credit for selling them, and then prevented Cymbidium from getting what it had paid for via a credit.

Below are a few examples of this:

As of October 2023, AHP was given credit for a REO property located in Hawaii that was a MLSA loan. Weinstein Decl. ¶14. With AHP's knowledge and consent, Cymbidium—through Oak Harbor Capital and its servicer—incurred nearly $70,000 in expenses to clear title, pay delinquent condominium fees and taxes, relocate occupants, and prepare the property for sale. *Id*. Ex. 28 – 29.

All these payments were made with the knowledge and consent of the AHP Trusts and their principal, Newbery. Newbery authorized the AHP Trusts to sign and execute on April 19, 2023, a Limited Power of Attorney to OHC. *Id*. at ¶ 15 and Ex. 30. More importantly, on September 25, 2023, Newbery confirmed via email approval of the sale of the Hawaii Property to Hudson Watuppa. *Id*. at ¶ , Ex. 31 – 32. But on December 28, 2023, when Plaintiff's servicer attempted to record a deed, it was unable to do so. *Id*. at ¶16. It discovered the AHP Trusts had taken out a $450,000 loan secured by the Hawaii Property, and on February 12, 2024, they had sold the property to a third party for $595,000. *Id*. ¶16 and Exs. 33, 34; Keller Decl. Ex. 1 (Newbery Dep. 181:24-188:4); Keller Decl. Ex. 2. (Kamphausen Dep. 88:14-89:2, 89:17-90:4).

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 21

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

In summary, this Hawaii REO condominium was an MLSA property; Cymbidium incurred at least $70,000 out-of-pocket costs to maintain and improve it with Defendants' knowledge and consent making the property financeable and ready for sale. Then, with the written consent of Newbery on behalf of the AHP Trusts, the property was placed under contract for sale. Yet at the same time, Defendants intentionally thwarted the transfer of the property by misusing the same Mortgage Loan Documents they were required to turnover under the MLSA, encumbering the property with significant debt, pocketing the loan proceeds, and then selling the condominium and pocketing more proceeds. Cymbidium received nothing. AHP had been given an approximately $500,000 credit in anticipation of the sale Plaintiff had arranged. That credit now, as a matter of law, get reversed because AHP's double sale of the condominium prevented Cymbidium from getting the $500,000.00. *Id*.

AHP's conduct also rendered loans that were part of larger pool sales unmonetizable. In the Keydally transaction, roughly 200 loans became unsaleable not because of any defect inherent in the loans, but because AHP purported to revoke POAs, refused to provide loan transfer and property title documentation, and affirmatively contacted title insurers and other industry participants to cloud title—after AHP had already received an approximately $10 million credit for the Keydally sale. *Id*. ¶ 18. Newbery was aware of the need for the Keydally sale to pay down the WAB loan and approved of the same. *Id*. Ex. 35.

The record shows extensive back-and-forth between the parties regarding which specific loans would be included in the pool, which potential buyers were reviewing the portfolio, how the purchase would be financed, and how the $10 million sale proceeds would be used to pay down the WAB loan. *Id*. Exs. 36 – 43. Through that process, the Keydally loan pool was finalized, and AHP received a $10 million credit for the transaction against the MLSA amounts.

After AHP received $10 million credit—and after the parties' relationship deteriorated— AHP reversed course. It revoked POAs, refused to provide necessary executed documents for certain loans, and, for others, affirmatively contacted title insurance companies to inform them of

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 22

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

a "dispute" between the parties, thereby clouding title and rendering the mortgage loans unmarketable and without economic value. *Id.* Exs. 19, 20. As a result of AHP's actions, roughly 200 of the 298 loans in the Keydally pool cannot be sold. The portion of the $10 million credit AHP received for those roughly 200 loans, approximately $7.5 million, must therefore be reversed. By refusing to provide the required transfer and related documents, AHP breached the express covenants and warranties in the amended MLSA and because of that as a matter of law, it is not entitled to retain the credit it received.

The same pattern occurred with the BBYN Mortgage portfolio. AHP received a $2.2 million credit for that sale, then sent communications that clouded title, rendering the loans unsaleable after payment credit had already been given. *Id.* Ex. 22.

AHP's post-credit conduct also impaired individual loans that should have been straightforward to monetize using the POAs executed under the MLSA. For loans backed by properties in Georgia and Indiana, AHP wrongfully revoked the POAs granted to Oak Harbor and refused to execute deeds after disputes arose in this litigation. As a result, Cymbidium has been unable to commence eviction proceedings, foreclose, or take steps to prevent waste, leaving the properties to deteriorate. *Id*. ¶ 19; Exs. 19, and 49.

In some instances, innocent third-party borrowers—whose loans are serviced by Land Home—have fully paid off their loans and are entitled to have mortgage liens removed from their property title. Yet neither Cymbidium nor Land Home can provide the necessary executed documents because AHP has refused to sign or has revoked the powers of attorney provided under Section 25 to the MLSA. *Id*. Exs. 46 – 47. Those loans, too, have been rendered effectively valueless by AHP's refusal to perform obligations that were mandatory under the MLSA and that formed the basis for the credits AHP already received.

In a separate transaction between AHP and Magerick, AHP sold Magerick a ten-loan portfolio for $2.7 million, with the purchase price satisfied through a credit applied against amounts owed by AHP under the MLSA. Weinstein Decl. ¶20, Ex.51; Keller Decl. Ex. 1

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 23

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

(Newbery Dep. 62:6–75:13). One of the loans in that portfolio was secured by real property located at 835 Bowman Avenue in New Jersey. In connection with that sale, AHP executed an assignment of mortgage and a deed conveying the property, confirming the transfer. Weinstein Decl. ¶21. Only after disputes arose in the broader Cymbidium transaction did AHP refuse to provide a tax filing required to record the deed. Then it instructed a broker to market the property directly to the same buyer with whom Magerick had been under contract. *Id*. Despite this conduct, AHP now contends in New Jersey state court that the property was never paid for because no wire transfer occurred[12]—even though Newbery admits (albeit reluctantly) that the parties specifically agreed the purchase price would be satisfied through a credit against the MLSA amounts. Keller Decl. Ex. 1 (Newbery Dep. 62:6–75:13).

A party is precluded "from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. Ltd. Liab. Co.*, 13 Wn. App. 2d 159, 169, 463 P.3d 117 (2020). It is axiomatic that the acceptance and retention of performance requires return performance. *See TMT Bear Creek Shopping Ctr., Inc. v. Petco Animal Supplies, Inc.*, 140 Wn. App. 191, 210, 165 P.3d 1271, 1282 (2007). AHP accepted the full amount of the Purchase Price, which was wired to it on October 6, 2022. It then needed to completely perform with what was bargained for in the contract. Where warranty or other breaches by AHP deprived Cymbidium of the ability to monetize loans, any credit previously provided for those loans must be unwound.[13] Put simply, AHP does not get credit for sales of loans when its breaches of the warranties and other provisions in the amended MLSA resulted in Cymbidium not getting what it paid for. AHP's conduct prevented sales, foreclosures, and the ability to obtain title insurance regarding loans and

---

[12] *Magerick, LLC v. AHP*, Case No. OCN-L-2937-23, Superior Court of New Jersey Law Division: Ocean County (2024). Weinstein Decl. Ex. 50.

[13] The reconciliation Cymbidium provided to AHP as of October 2023, Weinstein Decl. Ex. 48, included all these credits. At that point Cymbidium was not aware of most of the double-sales, AHP had not yet revoked the powers of attorney, and AHP had not affirmatively interfered with monetization of loans for which it had received credits. The overall credit reversal is approximately $14.6 million. *Id*. Ex. 27.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 24

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

REOs for which it had previously received credit against the MLSA amounts. As a matter of law, credits associated with those loans and REOs get reversed.

## IV.    CONCLUSION

The Court should enforce the MLSA as written, confirm Cymbidium's ownership of the MLSA loans and proceeds, and reject Defendants' affirmative defenses regarding enforcement.

DATED this 2nd day of February, 2026.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
    Bradley S. Keller, WSBA #10665

By /s/ M. Victoria Molina
    M. Victoria Molina, WSBA #62109
    1000 Second Avenue, 38th Floor
    Seattle, Washington  98104
    Telephone: (206) 622-2000
    Facsimile:  (206) 622-2522
    Email:     bkeller@byrneskeller.com
               mvmolina@byrneskeller.com
    *Attorneys for Plaintiff*

CERTIFICATION:  The above signature also certifies that this memorandum contains 8,346 words, in compliance with the Local Civil Rules.

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 25

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 9th day of January, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ M. Victoria Molina
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
mvmolina@byrneskeller.com

PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTIONS
(NO. 2:24-cv-00025-KKE) - 26

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000