The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CYMBIDIUM RESTORATION TRUST,

Plaintiff,

v.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; its Trustee, U.S. BANK TRUST
N.A.; AHP CAPITAL MANAGEMENT, LLC;
AMERICAN HOMEOWNER
PRESERVATION SERIES 2015A+; its Trustee,
U.S. BANK TRUST NATIONAL
ASSOCIATION; AHP SERVICING, LLC; and
JORGE NEWBERY,

Defendants.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; AHP CAPITAL
MANAGEMENT, LLC; AMERICAN
HOMEOWNER PRESERVATION SERIES
2015A+; and AHP SERVICING, LLC,

Counter-Plaintiffs,

v.

CYMBIDIUM RESTORATION TRUST,

Counter-Defendant.

NO. 2:24-cv-00025-KKE

DECLARATION OF SONAL GUPTA IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT

NOTE ON MOTIONS CALENDAR:
APRIL 23, 2026

ORAL ARGUMENT REQUESTED

DECLARATION OF SONAL GUPTA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

I, Sonal Gupta, have personal knowledge of the facts stated in this Declaration and, if called as a witness, could and would testify competently thereto, and declare as follows:

**Personal Background**

1.	I am a Qualified Chartered Accountant. My qualification comes from the Institute of Chartered Accountants of India. This designation is recognized as the premier accounting qualification in India and covers accounting, auditing, taxation, corporate finance, law, and financial management comprehensively. My qualification is globally respected, especially in accounting, finance, audit, and taxation roles.

2.	I am the Chief Financial Officer of Oak Harbor Capital, a role I have held since June 30, 2025. In that capacity, I oversee Oak Harbor's financial operations, including the reconciliation of loan sales, proceeds, credits, reversals, servicing costs, and application of the Applicable Pricing Rate ("APR") under the Mortgage Loan Sale Agreement With Repurchase Obligation and First Amendment (together, the "Amended MLSA").

3.	I joined Oak Harbor Capital as Controller on March 13, 2023. I worked closely with the prior Chief Financial Officer, Michael L. Basile, overseeing all accounting deliverables. My responsibilities included tasks related to month-end close, investor reporting, audits, preparation of GAAP financial statements, among others.

4.	Prior to joining Oak Harbor Capital, I accumulated over 15 years of experience, including more than 13 years with JPMorgan Chase Bank, India where I progressed from Analyst to Vice President. During this time, I held multiple roles across the region, primarily in controller related functions, overseeing legal entity control, month-end close, general ledger integrity, and finance and regulatory reporting across multiple entities and jurisdictions. I contributed to strengthening internal controls, enhancing governance frameworks, and delivering finance automation projects. Before my tenure at JPMorgan Chase, I worked with Accenture.

DECLARATION OF SONAL GUPTA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 2

5. I have worked directly with the reconciliation spreadsheets that track loan sales, credits, proceeds, reversals, servicing costs, and application of the APR under the Amended MLSA (the "Reconciliation").

6. Defendants contend that Cymbidium's Reconciliation is unreliable because it has evolved over time. That characterization is incorrect. The methodology has remained consistent. The updates reflect (a) correction of an identified double counting error, and (b) the financial impact of Defendants' continuing breaches that occurred after earlier versions were produced.

**Correction of Double Counting Error**

7. In preparing the October 2025 updated Reconciliation, I identified that approximately 47 loans had been credited twice to Defendants: first as part of the $10 million Keydally transaction, and again when those same loans were subsequently sold or otherwise accounted for. Attached as Exhibit 40 to the Keller Decl. is a true and correct copy of the Reconciliation updated through October 2025, which reflects information drawn from the Magerick general ledger and other accounting records, as well as new or updated information provided by Oak Harbor's analytics and asset management teams.

8. That duplicate credit materially understated the amounts owed by Defendants. Once identified, the duplicate credits were removed.

9. Correcting this error alone accounts for approximately $1.7 million of the difference between the December 2024 Reconciliation and the October 2025 update, before application of the contractually required APR and management fees. Attached as Exhibit 42 to the Keller Decl. is a true and correct copy of the Reconciliation updated through December 2024.

10. This correction did not rely on newly discovered theories or methodologies. Defendants had already been provided loan-level details identifying each loan included in the Keydally pool, and each loan for which later credits were applied. The update simply removed credits that had been mistakenly applied twice.

**Increase in Loans Rendered Unmonetizable ("Atrocity" Loans)**

DECLARATION OF SONAL GUPTA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

11.     The increase in loans reflected in the "atrocity" category does not represent a change in damages theory. It reflects additional loans that, over time, were discovered to have been sold elsewhere, encumbered, or rendered unsaleable due to Defendants' actions.

12.     The December 2024 Reconciliation identified approximately 89 loans in the Keydally pool totaling roughly $3.46 million that could not be monetized.

13.     As additional title failures, documentation deficiencies, duplicative sales, and third-party disputes surfaced—often because Mortgage Loan Documents were never delivered—the number of affected loans increased.

14.     The October 2025 Reconciliation reflects approximately 224 loans totaling approximately $7.5 million that have been rendered unmonetizable.

15.     The methodology did not change. The universe of impacted loans expanded as additional defects were discovered.

16.     Many of these issues only became apparent over time because Defendants failed to deliver loan files, retained proceeds, or took post-sale actions that clouded title or interfered with monetization. Cymbidium incorporated those impacts into the Reconciliation as they became known.

**Application of the Applicable Pricing Rate**

17.     A substantial portion of the change between the December 2024 Reconciliation and the October 2025 update is the arithmetic result of applying the Amended MLSA's 16percent Applicable Pricing Rate.

18.     Credits are applied based on the month in which a portfolio sale was believed to have occurred. When a credit is later reversed—whether due to double counting, or because a loan was sold elsewhere, or rendered unsaleable—the reversal is applied in the same month as the original credit.

19.     Once a credit is removed, the APR applies to the increased outstanding balance. This approach was used in the December 2024 Reconciliation and has been consistently applied.

DECLARATION OF SONAL GUPTA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 4

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20.     By way of example, adjustments of approximately $5.4 million resulted in the APR component increasing from approximately $4.5 million to approximately $9.7 million. This increase is the mathematical consequence of correcting credits and applying the APR to balances increased by Defendants' conduct.

**The Reconciliation Reflects Continuing Breaches, Not Shifting Theories**

21.     Defendants describe the Reconciliation as a "moving target." It is only moving because the universe of impacted loans expanded as additional defects were discovered and due to double counting error which was reversed out.

22.     As Defendants sold additional loans, retained proceeds, failed to deliver Mortgage Loan Documents, and took steps that rendered loans and REO properties unsaleable, the amounts owed under the Amended MLSA necessarily increased.

23.     The October 2025 Reconciliation does not introduce new damages categories or methodologies. It reflects corrections of errors that previously benefited Defendants and incorporates the financial consequences of Defendants' ongoing breaches.

24.     Defendants cannot continue breaching the contract and then rely on the resulting changes in damages as grounds for summary judgment.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

DATED in Seattle, Washington, this **27**ᵃ day of February, 2026.

/s/ _____ Gupta. _____
Sonal Gupta

DECLARATION OF SONAL GUPTA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000