The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CYMBIDIUM RESTORATION TRUST,

        Plaintiff,

  v.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; its Trustee, U.S. BANK TRUST
N.A.; AHP CAPITAL MANAGEMENT, LLC;
AMERICAN HOMEOWNER
PRESERVATION SERIES 2015A+; its Trustee,
U.S. BANK TRUST NATIONAL
ASSOCIATION; AHP SERVICING, LLC; and
JORGE NEWBERY,

        Defendants.

---

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; AHP CAPITAL
MANAGEMENT, LLC; AMERICAN
HOMEOWNER PRESERVATION SERIES
2015A+; and AHP SERVICING, LLC,

        Counter-Plaintiffs,

  v.

CYMBIDIUM RESTORATION TRUST,

        Counter-Defendant.

NO. 2:24-cv-00025-KKE

DECLARATION OF LUCAS FRANK IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT

NOTE ON MOTIONS CALENDAR:
APRIL 23, 2026

ORAL ARGUMENT REQUESTED

DECLARATION OF LUCAS FRANK IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

I, Lucas Frank, declare as follows:

1.      I am an Asset Manager and member of the Asset Management Team at Oak Harbor Capital, LLC ("Oak Harbor"). I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently thereto.

2.      I have approximately eight years of experience in loan servicing, collateral management, portfolio analytics, and secondary-market loan sales. My responsibilities include managing physical collateral files, reviewing assignments, allonges, and powers of attorney, coordinating collateral transfers to custodians, reviewing HUD statements in REO sales, working with investment and analytics teams on pricing and portfolio modeling, participating in large portfolio sales, and related due diligence.

3.      In connection with this case, I work directly with loan-level data for the mortgage loans sold by American Homeowner Preservation entities ("AHP") under the Mortgage Loan Sale Agreement With Repurchase Obligation and First Amendment (together, the "Amended MLSA").

4.      I have been involved in tracking the status of MLSA loans, reviewing loan tapes, evaluating portfolio sales, identifying documentation deficiencies, and maintaining the internal Blossom database used to monitor monetization status, title condition, duplicative sales, and other loan-level issues.

5.      The Greensheet reflects information obtained from public records, internal servicing data, foreclosure filings, third-party communications, and investor reporting. Backup documentation for each loan is maintained in individual loan-level files, many of which were produced as exhibits in this litigation.

**The Keydally Transaction and Mission Capital Comparison**

6.      In connection with this matter, I reviewed (i) the Mission Capital tape and associated bid information distributed through the Mission Capital sale effort (Exhibits 25 and 26 to the Keller Decl.), and (ii) the loan data for the portfolio sold to Keydally. I then reviewed a

DECLARATION OF LUCAS FRANK IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

spreadsheet summarizing pricing information for the Keydally portfolio on one tab and comparing that information to offer prices reflected on the Mission Capital tape on another tab (the "Spreadsheet"), essentially overlaying both pools of loans. A true and correct copy of the Spreadsheet is attached as Exhibit 26 to the Keller Decl. I submit this declaration to describe what the Spreadsheet reflects at both the portfolio level and illustratively, at the loan level.

7.      The Mission Capital tape contained 469 loans in total. Of those, 201 loans were also included in the Keydally portfolio. For those 201 overlapping loans:

- The aggregate Unpaid Principal Balance ("UPB") was $12,510,209.

- The aggregate offer prices reflected through the Mission Capital sale effort totaled $6,726,815.89, which is approximately 53.8 percent of UPB.

8.      For those same 201 overlapping loans, the Keydally purchase-price allocation reflected in the Spreadsheet totals $8,053,584.41 against an aggregate UPB of $12,478,980.95, which is approximately 64.5 percent of UPB.

9.      In aggregate, the Keydally pricing for the 201 overlapping loans exceeded the aggregate offer prices reflected through the Mission Capital process by approximately $1.33 million. Stated differently, the Keydally pricing reflected approximately a 10.7 percentage-point increase over the percentage of UPB reflected in the Mission Capital offers for those same loans.

10.      The full Keydally portfolio reflected an aggregate UPB of $15,494,940.29 and a total purchase price of $10,000,000, which equates to approximately 64.54 percent of UPB. That percentage is consistent with the 64.5 percent pricing reflected for the 201 overlapping loans.

11.      In the secondary market for distressed or non-performing loans, purchasers do not typically pay 100 percent of UPB. UPB represents the contractual principal balance, not market value. Market pricing reflects numerous factors, including collateral condition, title status, borrower performance history, litigation risk, and anticipated servicing and resolution costs. As reflected in the Spreadsheet, both the Mission Capital offers and the Keydally transaction reflect pricing as a percentage of UPB, which is standard in portfolio transactions of this type.

DECLARATION OF LUCAS FRANK IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

12.     The Spreadsheet also contains loan-level comparisons for the 201 overlapping loans. While the Keydally portfolio was priced at a portfolio-level percentage rather than by individually negotiated loan prices, the loan-level data reflects that:

- For 137 of the 201 overlapping loans, the Keydally allocation exceeded the offer price reflected on the Mission Capital tape; and,

- For 64 of the 201 loans, the Mission Capital offer price reflected on the tape exceeded the Keydally allocation.

13.     This distribution is consistent with a portfolio-level pricing methodology, where individual loan variances are balanced across the pool.

14.     By way of example, the Spreadsheet reflects the following overlapping loans where the Keydally allocation exceeded the Mission Capital offer price:

- Loan 12500003 (950 W 13th St., Sanford): Keydally allocation approximately $413,038 compared to a Mission Capital offer of $254,625.

- Loan 315816 (3183 Nantucket Lane, Oceanside): Keydally allocation approximately $384,639 compared to a Mission Capital offer of $309,750.

- Loan 312000726 (106 W 114th St., Chicago): Keydally allocation approximately $77,429 compared to a Mission Capital offer of $13,500.

15.     Based on my review of the Spreadsheet and underlying data, the pricing reflected in the Keydally transaction is consistent with—and, for the overlapping loans, materially higher in the aggregate instead—the outside offers reflected through the Mission Capital sale effort for those same loans.

**The Greensheet and Loan-Level Status Tracking**

16.     I The Greensheet covers 871 loans in total.

17.     Information in the Greensheet was maintained by me and other members of Oak Harbor's asset management and analytics teams to track the condition, ownership status, collateral completeness, and monetization status of each loan in the MLSA portfolio. It

DECLARATION OF LUCAS FRANK IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

consolidates information obtained from multiple sources, including public land records, title searches, servicing records, transaction documents, and Oak Harbor's internal case management systems, all that information was then extracted to an excel which we internally refer to as the Greensheet.

18.    Much of this information is ordinarily maintained in Oak Harbor's Blossom case management software, which is used to track loan-level developments such as assignments, vesting status, title issues, borrower payoffs, tax sales, and disposition efforts. For purposes of analysis and reporting in this matter, that data was exported into Excel format and organized into the Greensheet.

19.    For each loan reflected on the Greensheet, the underlying supporting materials are organized in individual loan-level files. To my knowledge, those loan files were produced in the course of this litigation and also provided as trial exhibits in connection with this litigation and trial preparation.

20.    Each loan on the Greensheet is assigned a status designation reflecting the most current information available regarding that loan. These designations include, among others: "Title legitimacy in question," "AHP lost prior to October 2022," "AHP sold to third party," "Credit to OHC," "Lost to tax sale," "OHC unable to sell," "incomplete collateral," "borrower paid off," etc.

21.    These designations reflect different factual conditions affecting individual loans. For example, "incomplete collateral" indicates missing or deficient loan documents; "pending title report" reflects that ownership verification is still underway; "lost to tax sale" indicates extinguishment of the lien; and "borrower paid off" reflects satisfaction of the underlying debt.

22.    A designation of "title legitimacy in question" or "OHC unable to sell" means that events occurring during the transaction process or subsequent litigation—such as competing assignments, disputed ownership, or affirmative actions taken to cloud title—have created uncertainty regarding legal ownership of the mortgage or property, and as the investment

DECLARATION OF LUCAS FRANK IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

manager, Oak Harbor is unable to offer those for sale or to monetize in any way for the investors. Loans with this designation generally cannot be monetized until title issues are resolved.

23.    Based on the Greensheet, of the 871 loans in the Amended MLSA portfolio, only approximately 204 loans have been monetized to date. The remaining loans are either in limbo due to title, collateral, or enforceability issues, or were sold by AHP without proceeds being remitted to Cymbidium.

24.    The Greensheet reflects that a substantial portion of the MLSA portfolio remains unresolved from a monetization perspective due to ownership, collateral, or transactional issues that prevent sale or enforcement. This information has developed over time as additional records and information regarding the loans, including AHP's post-Amended MLSA activities and actions occurring after this litigation was filed, became available and updated loan-level reports were generated..

**BBNY Subset of Loans and Monetization Status**

25.    Separately, based on the Greensheet, I identified the subset of loans associated with the BBNY transaction. Exhibit 18 to the Keller Declaration is a true and correct copy of the subset of loans that were part of the BBNY transaction and separated from the Greensheet.

26.    Of the 62 loans included in the BBNY portfolio, 51 have not been monetized. Based on the Greensheet and related loan-level records, these loans remain unsold due to issues identified during diligence and servicing, including prior third-party sales, statute of limitations concerns, deeds-in-lieu or other title transfers to third-parties, and additional title defects or clouds that prevent marketable transfer.

27.    These determinations were made using a combination of public-record review and internal servicing records maintained in Oak Harbor's Blossom case management system and summarized in the Greensheet. They reflect the operational status of the loans at the time of my review.

DECLARATION OF LUCAS FRANK IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

**Loan No. 48073823 and Routine Post-Closing Use of Powers of Attorney**

28.    In its summary judgment motions, AHP cites Loan No. 48073823, secured by 429 Campbell Street, River Rouge, Michigan 48218, as purported evidence of wrongful use of an Oak Harbor Power of Attorney after revocation.

29.    In the ordinary course of business following a portfolio loan sale, Powers of Attorney are commonly used to complete ministerial post-closing tasks, including recording assignments and transferring record title for loans that have already been sold and credited in portfolio reconciliations.

30.    Loan No. 48073823 was included in the Keydally sale portfolio, and AHP received credit for this loan as reflected in the reconciliation materials.

31.    Consistent with standard servicing and closing practices, the Power of Attorney was used solely to complete the transfer of record title from AHP to Magerick for this sold loan.

32.    Based on my review of the portfolio records and reconciliation, this reflects routine post-sale administrative processing for a loan that had already been transferred economically as part of the Keydally transaction and for which AHP had received credit as part of the $10 million Keydally sale.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

DATED in Seattle, Washington, this 27th day of February, 2026.

/s/ _Lucas Frank_
Lucas Frank

DECLARATION OF LUCAS FRANK IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000