The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CYMBIDIUM RESTORATION TRUST,

Plaintiff,

v.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; its Trustee, U.S. BANK TRUST
N.A.; AHP CAPITAL MANAGEMENT, LLC;
AMERICAN HOMEOWNER
PRESERVATION SERIES 2015A+; its Trustee,
U.S. BANK TRUST NATIONAL
ASSOCIATION; AHP SERVICING, LLC; and
JORGE NEWBERY,

Defendants.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; AHP CAPITAL
MANAGEMENT, LLC; AMERICAN
HOMEOWNER PRESERVATION SERIES
2015A+; and AHP SERVICING, LLC,

Counter-Plaintiffs,

v.

CYMBIDIUM RESTORATION TRUST,

Counter-Defendant.

NO. 2:24-cv-00025-KKE

DECLARATION OF WILLIAM
WEINSTEIN IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

NOTE ON MOTIONS CALENDAR:
APRIL 23, 2026

ORAL ARGUMENT REQUESTED

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

I, William S. Weinstein, declare as follows:

1.    I am an authorized representative of Cymbidium Restoration Trust ("Cymbidium"). I am competent to testify to the matters stated herein. In that capacity, I have personal knowledge of the Mortgage Loan Sale Agreement with Repurchase Obligation ("MLSA"), the First Amendment to the MLSA, the transactions contemplated by those agreements, and the post-closing conduct of Defendants American Homeowner Preservation Trust Series AHP Servicing and American Homeowner Preservation Series 2015A+ (collectively, "AHP").

**Use of Multiple Entities**

2.    To the best of my knowledge throughout my working relationship with Jorge Newbery and AHP, AHP operates through multiple affiliated entities involved in loan acquisition, servicing, trustee services, and disposition. Attached as Exhibit 1 to the Bradley Keller Decl. in Support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment ("Keller Decl.") is a true and correct copy of American Homeowner Preservation 2015A+, LLC, SEC Annual Report (Form 1-K), dated December 31, 2017, which is publicly available online and accurately reflects my understanding of AHP's operational structure.

3.    Cymbidium likewise engaged multiple service providers in connection with servicing and monetization of the MLSA portfolio. I understand that, in communications to its investors in connection with a legal crowdfunding site, AHP has represented that its filing of RICO claims against various entities and me was intended to demonstrate the existence of an "enterprise" based on the use of multiple service providers performing routine functions. I further understand that, in those communications, Mr. Newbery informed AHP's investors that Cymbidium was "managing" the Amended MLSA loans on behalf of AHP, rather than AHP had sold the mortgage loans pursuant to the Amended MLSA. Attached as Exhibit 4 to the Keller Decl. is a true and correct copy of a screenshot of those investor communications, which was publicly available online before it was removed.

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**August 2022 Transaction and October 2022 MLSA**

4.    In August 2022, Cymbidium entered into a transaction with AHP involving approximately 56 loans for a purchase price of $2.5 million. That agreement contemplated a short-term repurchase by AHP. Attached as Exhibit 5 to the Keller Decl. is a true and correct copy of emails exchanged with Jorge Newbery on August 3, 2022, regarding that mortgage loan tape for the transaction. Attached as Exhibit 6 to the Keller Decl. is a true and correct copy of additional emails dated August 8, 2022, in which Mr. Newbery requested that the agreement include language allowing AHP to repurchase the 56 loans 60 days after execution.

5.    AHP did not complete that repurchase.

6.    As a result, on October 7, 2022, the parties entered into the MLSA, which included Category A loans intended to resolve the August transaction and Category B loans comprising a separate approximately $20 million portfolio. Attached as Exhibit 7 to the Keller Decl. is a true and correct copy of emails exchanged with Mr. Newbery dated September 14, 2022, in which he shared a 939-loan data tape for review so that Cymbidium could identify the mortgage loans to be included in the transaction.

7.    Unlike the August agreement, the MLSA defined a Servicing Transfer Date and required delivery of Mortgage Loan Documents.

8.    On October 6, 2022, I confirmed funding of the transaction and provided wire confirmation. Attached as Exhibit 44 of the Keller Decl. is a true and correct copy of an email sent to Mr. Newbery on October 6, 2022, confirming the funding for the "AHP-Magerick transaction."

9.    I understand that AHP has suggested in its filings that a comment I made in a September 2022 email exchange with Cliff Ponte reflected an intent that Cymbidium would not perform under the MLSA or the Amended MLSA. That is not correct.

10.    The September 2022 communications were part of my review of the loan tape that Mr. Newbery provided, which contained approximately 939 loans. The purpose of that review

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 3

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

was to identify loans of sufficient value to support a portfolio totaling approximately $25 million for the contemplated transaction.

11.    Neither I nor Cymbidium had control over the outcome of the Mission Capital sale effort. The structure of the transaction contemplated that Mission Capital would sell a substantial portion of the mortgage loans, and that the proceeds from those sales would be used to reduce the Western Alliance Bank acquisition financing, which remains outstanding and continues to accrue interest.

12.    Neither I, Cymbidium, nor any of the other entities managed by Oak Harbor Capital block or interfere with AHP's repurchase obligation under the MLSA.

**Financing Structure, Magerick, and Western Alliance Bank**

13.    From the outset of the MLSA transaction, AHP was aware that Cymbidium was acquiring the loans as part of a broader capital platform and that Magerick was providing financing.

14.    AHP's communications referenced Cymbidium purchasing the loans for the benefit of Magerick.

15.    AHP was also aware that Western Alliance Bank ("WAB") was providing acquisition financing and that the mortgage loans would be pledged as collateral.

16.    Loan tapes were provided to WAB prior to closing for underwriting and approval of the financing.

17.    Nothing in the MLSA restricted Cymbidium's ability to finance the acquisition or pledge the loans.

**AHP Repurchase Obligation and First Amendment**

18.    Under the MLSA, AHP had a repurchase obligation with a deadline of January 7, 2023, followed by a contractual grace period.

19.    AHP did not satisfy that obligation.

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

20. After expiration of the grace period in February 2023, Cymbidium retained ownership of the Category B loans.

21. Because Cymbidium still needed to be able to sell the loans, and AHP had not transferred all the loan documents as required under the MLSA, on March 2023, the parties executed the First Amendment.

22. The First Amendment removed AHP's repurchase obligation and modified the parties' economic arrangement, leaving Cymbidium responsible for monetizing the loans and AHP eligible to receive remaining loans only after satisfaction of the contractual waterfall.

23. The First Amendment also eliminated any contractual obligation for AHP itself to pay amounts otherwise contemplated under the MLSA and placed the risk of loss on Cymbidium if proceeds from loan sales were insufficient to fund the senior levels of the First Amendment waterfall.

24. After execution of the First Amendment, Cymbidium's efforts to pursue portfolio sales, including the Keydally and BBNY transactions, were undertaken in order to generate proceeds necessary to reduce the outstanding balance of the Western Alliance Bank ("WAB") acquisition financing.

25. AHP was informed that these transactions were being pursued for that purpose and participated in discussions regarding the loans to be included in the respective portfolios. In doing all the transactions related to the mortgage loans that are part of the Amended MLSA, the primary goal was to sell sufficient loan portfolios at appropriate values to repay the WAB purchase financing to avoid damaging the relationship with that financial institution. Attached as Exhibits 8 and 9 to the Keller Decl. are true and correct copies of emails sent to Mr. Newbery reiterating this pursuit.

26. In connection with these transactions, AHP was notified in advance, provided with loan-level detail, and engaged in discussions regarding pricing and portfolio composition, including which loans would be included.

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

27.    AHP did not object to the pursuit of these transactions at the time and was aware that proceeds were intended to be applied toward reduction of the acquisition financing balance.

28.    For each transaction, AHP received credit under the contractual waterfall.

29.    In certain instances, previously applied waterfall credit was later reversed after AHP did not provide loan documents necessary to complete transfers or where it was discovered that the same loan or REO property had been sold to a third party.

**Keydally Transaction**

30.    Prior to the Keydally transaction in July 2023, AHP was informed that Cymbidium was pursuing a $10 million portfolio sale and was provided with proposed loan pools. Attached as Exhibit 10-17 of the Keller Decl. are true and correct copies of email communications with Mr. Newbery regarding the loan tape, pricing, and valuation of what became the Keydally loan portfolio.

31.    AHP received loan-level detail and participated in discussions regarding pricing and removal of certain loans.

32.    AHP was aware of the source of funds for the Keydally transaction and that proceeds would be applied to reduce the WAB balance. Attached as Exhibits 13 and 19 of the Keller Decl. are true and correct copies of emails where I informed Mr. Newbery that the Keydally transaction would be financed by me and Brad Waite personally, and that the funds from the Keydally sale would be directly used to pay down the WAB loan.

33.    AHP received credit under the contractual waterfall for the Keydally sale.

**BBNY Transaction**

34.    Prior to the BBNY transaction, AHP was provided with proposed loan pools and pricing parameters. Attached as Exhibit 27 to the Keller Decl. is a true and correct copy of an email communication with Mr. Newbery dated August 25, 2023, in which (at the bottom of page 2 of the Exhibit) I informed him of the AHP RPL tape that was originally intended for purchase by Headlands or Erostylis and later became the BBNY loan tape offered for sale for $2.2 million.

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Also, attached as Exhibits 28–35 to the Keller Decl. are true and correct copies of additional communications with Mr. Newbery regarding the same loan tape, including discussions about substituting loans in and out to finalize the portfolio for the pricing amount.

35. AHP reviewed the loan lists, provided feedback, and participated in refining the pool of loans ultimately presented to the buyer. These communications occurred before the transaction closed.

36. I later became aware that, after this action was filed, AHP sent a letter to Bill Bymel, BBNY and First Lien Capital's representative, seeking information regarding the BBNY transaction, including the purchase price and loans included in the sale, which adversely affected my business relationship with Mr. Bymel. A true and correct copy of that letter is attached as Exhibit 36 to the Keller Decl.

**Powers of Attorney and Loan No. 48073823**

37. In connection with the Amended MLSA, Powers of Attorney were used to complete post-closing administrative tasks, including recording assignments and transferring record title for loans that had already been sold and credited under the contractual waterfall.

38. Loan No. 48073823, secured by 429 Campbell Street, River Rouge, Michigan, was included in the Keydally portfolio.

39. AHP received credit for that loan as part of the Keydally transaction.

40. The Power of Attorney was used to complete the transfer of record title for that loan following the sale.

**Cherry Bekaert and Reconciliation Discussions**

41. In 2023, AHP proposed engaging Cherry Bekaert to perform an accounting.

42. At the time AHP proposed engaging Cherry Bekaert to perform an accounting, I was aware that Cherry Bekaert had significant unpaid invoices, more than $100,000, from AHP relating to prior work.

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 2:24-cv-00025-KKE) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

43.    AHP asked Cymbidium to assist in paying those balances. Attached as Exhibits 38 and 39 to the Keller Decl. are true and correct copies of email communications with Mr. Newbery and Todd Batchelor of Cherry Bekaert in which Mr. Newbery inquired whether Cymbidium could pay AHP's outstanding balance.

44.    Based on my understanding of the circumstances, Cherry Bekaert had not issued, and was unlikely to issue, a clean audit of AHP's financial records.

45.    At the same time, Cymbidium was beginning to uncover information indicating that certain MLSA loans had been sold to third parties prior to October 2022 and that proceeds from certain post-closing loan sales had not been remitted.

46.    Because AHP owed Cherry Bekaert over $100,000 and was unlikely to rely on, or permit a meaningful audit of its financial records, Cymbidium viewed AHP's proposal to engage Cherry Bekaert as a stalling tactic while it continued to use Mortgage Loan Documents to sell loans and retain proceeds, and therefore, did not proceed with the proposed audit.

**Post-Amendment Communications and Loan Administration**

47.    After the First Amendment, Cymbidium sought delivery of Mortgage Loan Documents and worked with servicers and service providers to monetize the MLSA portfolio.

48.    As Cymbidium worked with its servicers and advisors to monetize the MLSA portfolio, it continued to discover additional information regarding the status of certain loans, including instances in which loans had been sold to third parties and proceeds had not been remitted, loans were subject to title defects, or lacked sufficient documentation to permit monetization.

49.    These discoveries occurred over time through review of public records, servicing information, and transaction-level data. The issues have continued to arise because AHP did not transfer the Servicing Files, including the Mortgage Loan Files, to Land Home for Servicing despite its obligation to do so. Attached as Exhibit 43 to the Keller Decl. is a true and correct

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

copy of an email from Mr. Newbery to Karen Kamphausen, on which I was cc'd, acknowledging that requirement.

**Weinstein & Riley, P.S.**

50.    Weinstein & Riley, P.S. provided legal services in connection with certain loans in the MLSA portfolio.

51.    These services included routine default servicing work such as foreclosure proceedings, bankruptcy matters, title curative work, payoff processing, reinstatement processing and litigation oversight.

52.    Based on my experience, the work performed by Weinstein & Riley in connection with the MLSA portfolio was consistent with standard legal services provided in the management of non-performing mortgage loans.

53.    Based on my experience and review of available servicing and vendor materials reflecting acceptable charging rates established by Fannie Mae, the rates charged by Weinstein & Riley for this work were consistent with or lower than those charged by institutional servicers and vendor networks, including Fannie Mae-approved vendors. Attached as Exhibit 44 to the Keller Declaration is a true and correct copy of an excerpt from Fannie Mae's Servicing Guide dated December 17, 2025. Attached as Exhibit 45 to the Keller Declaration is a true and correct copy of Fannie Mae's schedule of allowable servicing costs and fees, which reflects that Weinstein & Riley's charges were at or below those amounts.

54.    Finally, Based on my review of the loan-level records and October 2025 reconciliations, I understand that millions of dollars in credits must be reversed due to Defendants' refusal to provide Mortgage Loan Documents and other actions that prevented monetization of approximately 338 loans, leaving more than $14 million outstanding before any remaining loans would be conveyed back to AHP.

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

DATED in Seattle, Washington, this 27th day of February, 2026.

/s/ _____

William S. Weinstein

DECLARATION OF WILLIAM WEINSTEIN IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
(NO. 2:24-cv-00025-KKE) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000