UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYMBIDIUM RESTORATION TRUST, | CASE NO. C24-0025-KKE |
| Plaintiff(s), | ORDER ON MOTIONS FOR PARTIAL |
| v. | SUMMARY JUDGMENT |
| AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING, et al., | |
| Defendant(s). | |

During a pretrial conference in January 2026, the Court discussed the need for resolution on certain threshold legal issues before this matter proceeds to trial. Dkt. Nos. 224, 226. Instead of proceeding to trial the following week as scheduled, the Court vacated the trial date to allow the parties to brief dispositive motions. Dkt. No. 227. The parties' motions for partial summary judgment are now fully briefed, and the Court has considered the oral argument of counsel. Dkt. Nos. 233, 236, 272.[1] For the following reasons, the Court will grant in part and deny in part both motions.

## I.    BACKGROUND

In August 2022, Plaintiff/Counter-Defendant Cymbidium Restoration Trust

---

[1] In this order, the Court refers to the parties' filings by their CM/ECF page number.

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 1

("Cymbidium") contracted with Defendants/Counter-Plaintiffs AHP[2] to purchase approximately 56 mortgage loans for $2.5 million. Dkt. No. 251 ¶ 4. At the time that this contract was executed, the parties contemplated that AHP would repurchase the 56 mortgage loans 60 days after the contract's execution. *Id.*

AHP did not repurchase the loans, which led the parties to negotiate another contract. Dkt. No. 251 ¶¶ 5–6. On October 6, 2022, Cymbidium and AHP entered into a contract titled "Mortgage Loan Sale Agreement With Repurchase Obligation" ("MLSARO") that became effective on October 7, 2022. Dkt. No. 234 ¶ 2; Dkt. No. 234-1. The MLSARO addressed the transfer of two groups of mortgage loans—"Category A" and "Category B" loans—from AHP to Cymbidium, in exchange for Cymbidium transferring $20 million to AHP from the account of Cymbidium's affiliate Magerick, LLC. Dkt. No. 234 ¶¶ 2–3. Magerick pledged the MLSARO's mortgage loans to Western Alliance Bank to fund the loan, and AHP received the $20 million on October 6, 2022. *Id.* ¶¶ 3, 8; Dkt. No. 251 ¶¶ 8, 15.

The MLSARO provided that after the loans were conveyed, the "Category B" loans would be put up for sale by Mission Capital, "with the proceeds of any sales being applied dollar for dollar to the Repurchase Price for the benefit of [AHP]." Dkt. No. 234 at 16–17. The MLSARO obligated AHP to repurchase the remaining "Category B" loans on January 7, 2023. *Id.* at 1. Under the terms of the MLSARO, Cymbidium was entitled to all monthly payments and all other payments and recoveries of principal, interest, late payment charges, prepayment charges, prepayment premiums and other fees, as well as charges and amounts paid or recovered on the

---

[2] For simplicity, this order refers to Defendants/Counter-Plaintiffs American Homeowner Preservation Trust Series AHP, AHP Capital Management LLC, American Homeowner Preservation Series 2015A+, AHP Servicing LLC collectively as "AHP."

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 2

"Category B" loans on and after September 30, 2022, until AHP's repurchase price was paid in full. *Id.* at 16–17.

Although Mission Capital attempted to sell the loans, AHP was dissatisfied with the bids received and did not consummate the sale of the "Category B" loans. Dkt. No. 235 at 14–18. Accordingly, AHP could not pay the repurchase price for the "Category B" loans on January 7, 2023, as contemplated by the MLSARO. *Id.* The parties executed the First Amendment to the MLSARO as a response.[3] Dkt. No. 234 ¶¶ 4–5. Effective March 15, 2023, the amendment eliminated the distinction between the "Category A" and "Category B" loans, such that AHP was no longer obligated to repurchase any loans, and granted Cymbidium rights to an additional 277 mortgage loans owned by AHP. *Id.* ¶ 6. The amended MLSARO provides that the proceeds of the sale of the loans subject to the contract (hereinafter "Mortgage Loans") would be distributed according to a seven-part priority list referred to by the parties as "the waterfall." *Id.* ¶ 7. After those amounts were paid in full, if any loans remained, they and their proceeds would be reconveyed to AHP. *Id.* at 73 ¶ 5.

The First Amendment also impacted the parties' loan servicing obligations. The original MLSARO required that the servicing of the "Category A" loans was to transfer from AHP to Cymbidium as soon as practicable after October 7, 2022, while AHP was to continue servicing the "Category B" loans until February 3, 2023, and then transfer servicing to Cymbidium as soon as practicable thereafter. *See* Dkt. No. 234 at 16. The First Amendment states that "AHP Servicing and SN Servicing will remain the servicers of the Mortgage Loans through at least July 1, 2023." *Id.* at 73 ¶ 7.

---

[3] It appears that other transactions also resulted from this change in plans. *See, e.g.*, Dkt. No. 235 at 22–34 (discussing a side transaction between AHP and Magerick and other "assorted transactions together").

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 3

AHP's obligation to transfer "mortgage loan documents"[4] was not altered by the First Amendment, however.  The original MLSARO required that AHP "shall deliver and release to [Cymbidium's] custodian" certain documents related to each of the Mortgage Loans.  Dkt. No. 234 at 30.  The First Amendment does not reference or alter this obligation.  *See id.* at 72–75.

In the months following the First Amendment, Cymbidium and AHP each accused the other of breaching the amended MLSARO in multiple ways and asserted divergent interpretations of that contract.  Dkt. No. 234 ¶¶ 9–18, Dkt. No. 237 ¶¶ 12–21, Dkt. No. 255 ¶¶ 4–26.  In November 2023, Cymbidium filed this lawsuit in King County Superior Court, bringing claims for breach of contract and conversion.  Dkt. No. 1-2.  AHP removed the suit to this Court in January 2024 and filed counterclaims for breach of contract, conversion, and an accounting against Cymbidium.  Dkt. Nos. 1, 1-2, 5.  The operative versions of the pleadings were filed in March and April 2026.  Dkt. Nos. 264, 270.

Cymbidium and AHP have filed motions for partial summary judgment, which will be granted in part and denied in part for the following reasons.

## II.    ANALYSIS

### A.    Legal Standards

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims[,]" so that "factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986).  In resolving

---

[4] This is a defined term in the MLSARO.  *See* Dkt. No. 234 at 15, 30.

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 4

a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. To meet its burden under Rule 56, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

"Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim." *Trs. on Behalf of Teamsters Benefit Tr. v. Patterson Heavy Haul, Inc.*, No. 2:23-cv-2393-JDP, 2026 WL 865921, at *2 (E.D. Cal. March 30, 2026) (citing Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim ....") (internal quotation marks and citation omitted))). "[C]ourts may rely upon Rule 56 to determine certain facts or elements of a claim as established and thereby dispose of the need to adjudicate them at trial." *SM 10000 Prop., LLC v. Allianz Glob. Risks US Ins. Co.*, No. 19-cv-03054-PJH, 2021 WL 1299071, at *10 (N.D. Cal. Apr. 7, 2021) (citing *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n. 9 (9th Cir. 2009)). Nonetheless, "[i]t is well-settled that district courts have the authority to reconsider and revise interlocutory orders, such as orders granting motions for partial summary judgment." *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003).

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 5

"A decision granting partial summary judgment generally is not appealable." *PharmacyChecker.com LLC v. LegitScript LLC*, 710 F. Supp. 3d 856, 868 (D. Or. 2024).

**B.    Cymbidium Is a Real Party in Interest.**

AHP's motion argues that there is a "threshold defect" in this action: that Cymbidium is not the real party in interest, and thus cannot prosecute its claims here under Federal Rule of Civil Procedure 17(a). Dkt. No. 236 at 29–34. Federal Rule of Civil Procedure 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest." Because Magerick—not Cymbidium—financed the acquisition of the MLSARO mortgage loans, pledged the Mortgage Loans to Western Alliance Bank, and possesses a 100% participation interest in the Loans, it is AHP's position that Magerick is the real party in interest, not Cymbidium. Dkt. No. 236 at 29–34. AHP contends that permitting substitution of Magerick at this late stage of the litigation would only reward Cymbidium's "strategic conduct" and would "unfairly prejudice AHP." *Id*. at 34.

In Washington, a "party to a contract is entitled to enforce it and to sue in his own name." *Kim v. Moffett*, 234 P.3d 279, 284 (Wash. Ct. App. 2010). Yet "[t]he real party in interest is the person who possesses the right sought to be enforced." *Peyton Bldg. LLC v. Niko's Gourmet, Inc.*, 323 P.3d 629, 632 (Wash. Ct. App. 2014). Here, the parties agree that Cymbidium granted to Magerick an "undivided participation interest in all of [Cymbidium's] right, title and interest in and to the proceeds and all other beneficial and economic rights and interests that [Cymbidium] receives from the [Mortgage Loans] …." Dkt. No. 238-1 at 226–29. Magerick's participation interest does not extinguish Cymbidium's rights, however, nor does the participation agreement assign Cymbidium's right to enforce the MLSARO. Because Cymbidium has the right to bring

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 6

the contract-based claims listed in its operative complaint, the Court will deny AHP's first motion for partial summary judgment.[5]

### C.    Cymbidium's Conversion Claim Fails Under the Independent Duty Doctrine.

In Washington, the tort of conversion has three elements: "(1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby depriving the owner of possession." *Burton v. City of Spokane*, 482 P.3d 968, 773 (Wash. Ct. App. 2021). But where the taking or unlawful retention also constitutes a breach of contract, recovery in contract *and* tort may be barred by the independent duty doctrine: "An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract. ... When no independent tort duty exists, tort does not provide a remedy." *Puget Soundkeeper All. v. APM Terminals Tacoma LLC*, 545 F. Supp. 3d 893, 897 (W.D. Wash. 2021) (quoting *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010)).

The Washington Supreme Court has explained the application of the independent duty doctrine as follows:

> The question is how a court can distinguish between claims where a plaintiff is limited to contract remedies and cases where recovery in tort may be available? A review of our cases on the economic loss rule shows that ordinary tort principles have always resolved this question. An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract. The court determines whether there is an independent tort duty of care, and "'[t]he existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent.'" *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash.2d 233, 243, 35 P.3d 1158 (2001) (internal quotation marks omitted) (quoting *Lords v. N. Auto. Corp.*, 75 Wash. App. 589, 596, 881 P.2d 256 (1994)); *see also Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wash.2d 442, 447–51, 243 P.3d 521 (2010). Where this court has stated that the economic loss rule applies, what we have meant is that considerations of common sense, justice, policy, and precedent in a particular set of circumstances led us to the legal conclusion that the defendant did not owe a duty. When no independent tort duty exists, tort does not provide a remedy.

---

[5] The Court does not find that AHP waived its right to bring this motion by not raising it in the earlier versions of its answer because it is listed in the operative answer. Dkt. No. 270 ¶ 28.

*Eastwood*, 241 P.3d at 1261–62.

In this case, AHP argues that Cymbidium's claim for the tort of conversion fails because it arises entirely from the amended MLSARO and is therefore duplicated by Cymbidium's contract claim. Dkt. No. 236 at 42–45. Cymbidium disagrees, arguing that AHP (as a servicer of some of the Mortgage Loans) had an independent fiduciary duty not to pocket the proceeds of loans owned by Cymbidium. Dkt. No. 246 at 31–32.

None of Cymbidium's complaints bring a claim for breach of a fiduciary duty, however. Instead, Cymbidium's briefing emphasizes that its claim to the disputed loan proceeds arises from the express terms of the contract, which "transferred ownership to Cymbidium and provided the exclusive contractual right to receive all recoveries and apply recoveries in the manner set forth in the waterfall." Dkt. No. 246 at 31. Here, it is the MLSARO—not an independent duty—that instructs AHP how to distribute the proceeds of the Mortgage Loans. The "unlawfulness" of AHP's actions is therefore judged against the contract, rather than an independent duty. *See, e.g.*, *Olympic Tug & Barge, Inc. v. Lovel Briere LLC*, 668 F. Supp. 3d 1165, 1176 (W.D. Wash. 2023). Accordingly, Cymbidium's conversion claim fails as a matter of law under the independent duty doctrine.

**D.    The MLSARO Should Be Interpreted as Written.**

Washington courts "follow the objective manifestation theory of contracts. Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Comm'cns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). "[W]hen interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used[,]" and courts "generally give words in a contract their ordinary, usual,

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 8

and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.*

"It is a fundamental precept of contract law that contracts must be interpreted in accordance with all of their terms." *Storti v. Univ. of Wash.*, 330 P.3d 159, 164 (Wash. 2014). "An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used." *Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 271 P.3d 850, 856 (Wash. 2012).

In this case, Cymbidium and AHP ask the Court to construe the amended MLSARO as a matter of law, but disagree as to how it should be interpreted. The Court will address each dispute in turn, to explain how it interprets the amended MLSARO on that point.

### 1. No Restriction on Pledging the Mortgage Loans

First, the parties dispute whether the Mortgage Loans were transferred to Cymbidium free and clear, as Cymbidium argues, or whether the contract should be read to include a restriction on their transfer or pledge, as AHP argues.

Cymbidium's interpretation is consistent with the language of the amended MLSARO, which contains no prohibition on transferring or pledging:

> On the Conveyance Date, upon the payment of the Purchase Price and delivery of the documents described herein, [AHP] shall sell, transfer, assign, set over, and convey to [Cymbidium], subject to the representations, warranties, terms and provisions of this Agreement, all the right, title, and interest of [AHP] in and to the Mortgage Loans, servicing released.
>
> …
>
> The transfer, assignment and delivery of the related Mortgage Loans in accordance with terms and conditions of this Agreement shall vest in [Cymbidium] all rights as owner of such Mortgage Loans free and clear of any and all claims, charges, defenses, offsets and encumbrances of any kind or nature whatsoever, including, but not limited to, those of [AHP.]

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 9

…

> It is the intention of the parties that [Cymbidium] is purchasing, and [AHP] is selling, the Mortgage Loans and not a debt instrument of [AHP] or another security. Accordingly, the parties hereto each intend to treat the transaction for Federal income tax purposes as a sale by [AHP], and a purchase by [Cymbidium], of the Mortgage Loans.

Dkt. No. 234 at 16, 19, 25.

AHP acknowledges this contractual language, but argues that the "Category B" Mortgage Loans were not transferred outright to Cymbidium but instead served as collateral for the Cymbidium loan to AHP. Dkt. No. 236 at 36. AHP describes several aspects of the MLSARO that it describes as hallmarks of a secured financing arrangement rather than a true sale. *Id*. at 37–40.

Whether the MLSARO is more like a "sale" or "loan" does not resolve any of the parties' disputes, and the Court therefore need not determine the appropriate label. But to the extent that AHP seeks to invalidate any of the terms of the MLSARO as not "commercially reasonable," it has not cited cases permitting such an approach in the context of a commercial contract, like the MLSARO, that was negotiated at arm's length. *See* Dkt. No. 236 at 41.

Because the MLSARO provides for the transfer of the Mortgage Loans to Cymbidium and does not prohibit Cymbidium from thereafter transferring or pledging the Mortgage Loans, the Court interprets the MLSARO to not impose a transfer or pledging restriction on Cymbidium.

2. *Delivery of "Mortgage Loan Documents"*

The MLSARO requires that with respect to each Mortgage Loan, AHP "shall deliver and release to [Cymbidium's] custodian" certain documents pertaining to each loan. Dkt. No. 234 at 30. Cymbidium contends that AHP failed to deliver these documents as required for all of the

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 10

loans, and has continued to resist transferring some of them to this day, and that this failure prevented Cymbidium from realizing the full benefit of its bargain.  Dkt. No. 233 at 7–9.

AHP does not dispute that the contract requires the delivery of loan documents.  Dkt. No. 254 at 22–24.  It argues that a failure to deliver the documents did not, in fact, prevent Cymbidium from monetizing the Mortgage Loans, and states that it refused to deliver loan documents only after it believed that it had paid off the Cymbidium loan because at that point, the waterfall required the return of the Loans to AHP.  *Id*.

But the MLSARO does not explicitly permit AHP to stop delivering loan documents when it unilaterally believes the loan is paid off; it states that the documents shall be delivered on the conveyance date (October 7, 2022).  Dkt. No. 234 at 14, 18, 30.  Whether a failure to provide documents resulted in damages is a separate issue to be resolved at trial, but for now, the Court finds that the MLSARO required AHP to deliver to Cymbidium's custodian the "Mortgage Loan Documents" as that term is defined in the contract.

*3.  Express Warranty Against Double-Selling*

In a section of the MLSARO entitled "Representations and Warranties Respecting the Seller," AHP stated that with respect to the Mortgage Loans, it "has the full power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this Agreement."  Dkt. No. 234 at 18–19.  Cymbidium contends that AHP breached this warranty by selling some of the Mortgage Loans to others before the effective date of the MLSARO.  Dkt. No. 233 at 20.

AHP's opposition argues that (1) Cymbidium has not identified the double-sold loans with specificity, (2) damages would not necessarily immediately flow from the double-selling, and (3) Cymbidium has not proved its damages.  Dkt. No. 254 at 25–28.  None of these arguments dispute Cymbidium's argument that double-selling would be a breach of the MLSARO, however, and

AHP's counsel conceded at oral argument that at least some of the Loans purportedly transferred by the contract were in fact sold beforehand.  The Court agrees with AHP that the extent of a breach and whether any damages resulted is an issue for trial, but for now the Court finds that AHP warranted in the MLSARO that it owned the Mortgage Loans it purported to transfer.

### 4.  Loan Proceeds Distributed According to the Waterfall

The amended MLSARO includes a waterfall provision explaining how Mortgage Loan proceeds will be distributed, with seven descending priorities.  The first three steps of the waterfall mandate distributions to Cymbidium to pay the mortgage loan costs, the management fee, and the applicable pricing rate accrued on the mortgage loans.  Dkt. No. 234 at 73.  Fourth, the consultant's fee is paid.  *Id.*  Fifth, the loan servicers' fees and third-party costs are paid.  *Id.*  Sixth, Western Alliance Bank is to be paid principal, interests, and costs on Cymbidium's loan.  *Id.*  And then once those six priorities are paid, "all remaining proceeds" go to AHP.  *Id.*

Cymbidium argues that after the MLSARO became effective, AHP was required to remit loan proceeds from the Mortgage Loans in accordance with the waterfall, but did not.  Dkt. No. 233 at 20–22.  Cymbidium argues that, as a matter of law, AHP's failure to remit the loan proceeds consistent with the amended MLSARO was a breach of the contract.  *Id.*

AHP acknowledges the waterfall provision, but states that it merely sets a priority for distribution, but does not require "immediate remittance of all gross proceeds."  Dkt. No. 254 at 29.  AHP also argues that proceeds were not arbitrarily or deliberately not remitted to Cymbidium, and notes that it was in AHP's interest to remit proceeds to Cymbidium to hasten the reduction of its debt to Cymbidium.  *Id.* at 30.  AHP emphasizes that the parties' "remittance practices evolved over time" (*id.*), but suggests that the Court should deny Cymbidium's motion "absent proof that Cymbidium did not receive the amounts due" under the amended MLSARO.  *Id.* at 31.

It is true, as AHP emphasizes, that the waterfall provision does not require immediate turnover of proceeds; it sets a priority for distribution for the proceeds "for each month." Dkt. No. 234 at 73. The Court does not perceive the parties' dispute to be one of timing, however: Cymbidium is not complaining that AHP did not remit proceeds fast enough, but that it refuses to remit them (with respect to at least some Loans) at all. The Court finds that the waterfall indeed requires remittance of proceeds of the Mortgage Loans. Whether proceeds were retained arbitrarily or deliberately is immaterial to the question of whether AHP remitted the proceeds it was required to, and the full answer to this question may be aided by the work of an accounting expert. For now, the Court finds only that the waterfall requires AHP to remit the proceeds of Mortgage Loans according to a cascading list of priorities, and provides that once the waterfall has been satisfied, the Mortgage Loans were to revert back to AHP.[6]

### 5. Put-Back Damages

The original MLSARO includes a section titled "Purchaser Put Right," which states that "at any time [before April 7, 2023], [Cymbidium] may for any reason put any Mortgage Loan conveyed hereunder back to [AHP] and [AHP] will promptly repurchase such Mortgage Loan[.]" Dkt. No. 234 at 21. This section is not altered in the First Amendment.

AHP requests that the Court rule that Cymbidium cannot recover put-back damages because Cymbidium did not timely notify AHP of any breach, as required by the "Purchaser Put Right" section of the MLSARO. Dkt. No. 236 at 45–52. In response, Cymbidium disclaims any "put-back damages," arguing that it never sought to force AHP to repurchase the Mortgage Loans. Dkt. No. 246 at 32–33. What it *does* seek to do is to reconcile the accounting to ensure that AHP

---

[6] Nonetheless the Court finds that the amended MLSARO does not set forth a definitive method for determining whether "payment in full" has occurred or address how to resolve disputes as to that determination; if it had, this litigation may have been avoided or at least simplified.

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 13

only gets credit for proceeds properly remitted in accordance with the waterfall and not for transfers of non-monetizable Mortgage Loans. *Id*. at 33.

The parties appear to agree that any "put right" damages are subject to the notice requirement in the MLSARO. Whether any damages are sought under that provision is apparently an issue for trial and accordingly it need not be further addressed at this time.

### 6. *Improvement Costs*

The First Amendment states the amounts accruing and owed by AHP to Cymbidium include "any unreimbursed third-party costs advanced by [Cymbidium] related to the Mortgage Loans, including without limitation maintaining or improving any underlying Mortgage Property (the 'Mortgage Loan Costs')." Dkt. No. 234 at 72. Later in the First Amendment, the waterfall provision explains which amounts must be paid before the remaining Loans and other assets are transferred back to AHP, including "all unrelated third-party costs and fees related to managing the Mortgage Loans[.]" *Id*. at 73.

AHP interprets "unrelated" to apply to the third parties, arguing that if costs were incurred by entities related to Cymbidium, then they cannot be recovered. Dkt. No. 236 at 50–51. As explained at oral argument, Cymbidium interprets "unrelated" to apply to costs, to differentiate those costs from the defined "Mortgage Loan Costs" that are referenced in a different part of the waterfall. It is Cymbidium's position that whether the costs were incurred by an entity "related" to Cymbidium is irrelevant: because the costs were incurred for standard, legitimate purposes, Cymbidium posits that they must be reimbursed in the waterfall. *See* Dkt. No. 246 at 21–22.

Either interpretation of "unrelated" could be reasonable on this record, where the parties have not presented evidence as to how the parties used that term or intended to use that term. Summary judgment on this issue is therefore inappropriate, and the Court will consider evidence at trial to resolve this question of fact. *See Martinez v. Miller Indus., Inc.*, 974 P.2d 1261, 1266

(Wash. Ct. App. 1999) ("If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent; if two or more meanings are reasonable, a question of fact is presented." (quoting *Interstate Prod. Credit Ass'n v. MacHugh*, 953 P.2d 812, 814 (Wash. Ct. App. 1998))).

### 7.  Credits Reversed

Cymbidium requests that to the extent that an accounting reveals that AHP received credit against the loan for Mortgage Loans that it double-sold or that it prevented monetization thereof (by withholding documents, revoked a power of attorney, etc.), those credits should be reversed. Dkt. No. 233 at 22–27.

AHP argues that this argument is hypothetical, in that it assumes the existence of credits to reverse, and even if such credits do exist, they should be reversed by/to Magerick, not Cymbidium. Dkt. No. 254 at 32–33.  AHP also disputes the existence of truly reversible credit, arguing that it should not have credit reversed where credit was allowed by the amended MLSARO because the Cymbidium loan had been paid off.  *Id.* at 34.  As discussed earlier in this order, however, AHP acknowledged at oral argument that some of the Loans it purportedly transferred to Cymbidium under the MLSARO had already been sold to others.

The Court finds that the terms of the amended MLSARO control which proceeds are subject to distribution under the waterfall and the other respective obligations of the parties intended to "utilize [Cymbidium] to maximize the ultimate recovery [AHP] will achieve for the Mortgage Loans[.]" Dkt. No. 234 at 72.  In the abstract, this is hardly a controversial finding, to the limited extent the Court grants Cymbidium's motion.  The Court otherwise denies the motion, however.  As AHP concedes, some of the Loans that AHP purportedly transferred under the MLSARO could not in fact be transferred, but there are issues of fact as to the existence and extent

of other credits that should be reversed in an accounting, and those questions must be resolved at trial.

**E.      AHP Has Not Met Its Burden to Defeat Cymbidium's Motion for Judgment Against Certain Affirmative Defenses.**

"Fraud in the inducement exists when [a misrepresentation of existing fact] is of a matter or matters that motivate a defendant to enter into the transaction." *Baker Boyer Nat'l Bank v. Foust*, 436 P.3d 382, 386 (Wash. Ct. App. 2018).

Cymbidium seeks to strike AHP's affirmative defenses of fraudulent inducement and other assorted defenses (failure of conditions, impossibility of performance, substantial performance, and de minimis harm) aimed at avoiding enforcement.  Dkt. No. 233 at 14–16.[7]  Cymbidium contends that AHP has not identified evidence to support fraudulent inducement— misrepresentation, falsity, justifiable reliance, and causation—and it should therefore be bound by the terms of the contract.  *Id.*  "On an issue as to which the nonmoving party will have the burden of proof ... the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Here, Cymbidium argues that no evidence supports AHP's fraud in the inducement affirmative defense or the other challenged defenses, which shifts the burden to AHP to come forward with evidence to show a triable issue on those defenses.  AHP summarily points to evidence that the MLSARO does not disclose Western Alliance Bank's role in the pledging of the Mortgage Loans, arguing that if the pledging *had* been disclosed AHP would not have agreed to the MLSARO because it is the pledging that ensures that the Loans cannot revert to AHP.  Dkt.

---

[77] Counsel clarified at oral argument that although Cymbidium's motion included the defense of satisfaction, it had since become clear that this argument was based on a misreading of AHP's answer.

No. 254 at 16. This argument appears to have a faulty premise, because if Western Alliance Bank's lien is satisfied (which is a goal of the waterfall and must occur before reconveyance), then the lien would not impede reconveyance. Accordingly, assuming for the sake of argument that Cymbidium was obligated to but failed to disclose its financing arrangement with Western Alliance Bank, AHP has not identified evidence suggesting that disclosure of the arrangement would have had any material impact.

AHP also notes that the mechanism for reconciling the accounting of the waterfall distributions evolved over time such that AHP could never achieve reconveyance, arguing that this evidence could support its defenses. Dkt. No. 254 at 16–18. It is undisputed that the need for tighter accounting is a central issue in this dispute, but it is unclear how the evolution of the reconciliation formula could demonstrate fraud in the inducement, if it necessarily takes place later in time than the formation of the contract or its amendment.

Accordingly, because AHP has not identified with particularity evidence that would satisfy the elements of its fraud in the inducement affirmative defense (or any of the other affirmative defenses challenged by Cymbidium), Cymbidium's motion to strike these defenses will be granted.

**F.      The Parties Agree That AHP's Sixth Motion as to Specific Performance Is Moot.**

AHP's motion argued that because Cymbidium's complaint did not explicitly request specific performance, it could not seek to compel AHP to turn over Loan documents. Dkt. No. 236 at 53–54. Cymbidium has since amended its complaint to request specific performance. Dkt. No. 264. The parties now agree that this part of AHP's motion is moot. Dkt. No. 269.

**G.      AHP's Motion to Strike Is Granted in Part and Denied in Part.**

"If a party fails to provide information or identify a witness as required by [Federal Rule of Civil Procedure] 26(a) or (e), the party is not allowed to use that information or witness to

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 17

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Along with its opposition to AHP's motion for partial summary judgment, Cymbidium filed declarations from Lucas Frank and Chris Wittrig. Dkt. Nos. 249, 252. AHP's reply brief requests that the Court strike these declarations because neither declarant was disclosed during discovery, and because Frank's declaration contains expert opinion that is improper from a fact witness. Dkt. No. 265 at 3–6.

AHP was, however, aware of Frank's involvement to some degree during discovery: it acknowledged in a motion in limine that it "served him in a narrow capacity relating to his role as a notary. That limited involvement did not place AHP on notice that Cymbidium intended to rely on Frank at trial as a substantive witness on contractual obligations, loan defects, causation, or damages." Dkt. No. 218 at 29. The Court thus finds that Cymbidium's failure to disclose Frank as a witness earlier is harmless as to the narrow issue probed during discovery, namely his role as a notary. *See id*. at 32. The Court grants AHP's motion to strike Frank's declaration to the extent it goes beyond that narrow role. *See* Dkt. No. 249 ¶¶ 6–32.

As to Wittrig, the Court denies AHP's motion to strike his declaration as moot because the Court did not rely on the declaration in adjudicating the pending motions.

### III.   CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Cymbidium's motion for partial summary judgment (Dkt. No. 233) and GRANTS IN PART and DENIES IN PART AHP's motion for partial summary judgment (Dkt. No. 236) as follows:

(1) Cymbidium's first, second, third, fourth, and fifth motions are GRANTED, and Cymbidium's sixth motion is GRANTED IN PART and DENIED IN PART.

(2) AHP's first motion is DENIED.

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 18

(3) AHP's second motion is DENIED.

(4) AHP's third motion is GRANTED.

(5) AHP's fourth motion is DENIED.

(6) AHP's fifth motion is GRANTED IN PART.

(7) AHP's sixth motion is DENIED AS MOOT.

(8) AHP's motion to strike is GRANTED IN PART and DENIED IN PART.

Dated this 4th day of May, 2026.

_____
Kymberly K. Evanson
United States District Judge