HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYMBIDIUM RESTORATION TRUST,

        Plaintiff,

    v.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; ITS TRUSTEE, U.S. BANK
TRUST N.A.; AHP CAPITAL
MANAGEMENT, LLC; AMERICAN
HOMEOWNER PRESERVATION SERIES
2015A+; ITS TRUSTEE, U.S. BANK TRUST
NATIONAL ASSOCIATION; AHP
SERVICING, LLC; AND JORGE NEWBERY,

        Defendants.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING.; AHP CAPITAL
MANAGEMENT, LLC; AMERICAN
HOMEOWNER PRESERVATION SERIES
2015A+; and; AHP SERVICING, LLC,

        Counter-Plaintiffs,

    v.

CYMBIDIUM RESTORATION TRUST,

        Counter-Defendant.

Case No.  2:24-cv-00025-KKE

DEFENDANT / COUNTER-
PLAINTIFFS' MOTION FOR
REVISION OF INTERLOCUTORY
ORDER OR, IN THE
ALTERNATIVE, FOR PARTIAL
RECONSIDERATION

NOTED FOR: JUNE 8, 2026

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page i

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................3

    A. Legal Standard ..............................................................................................3

    B. The Order Should Be Revised Because the Record Did Not Establish That
       Paying Any "Waterfall" Amount Necessarily Enables Reconveyance ..................3

    C. Cymbidium Never Established That Repayment of the AHP-Related Balance
       Would Necessarily Release the Mortgage Loans.......................................................5

    D. In Any Event, The Existing Record Raised Genuine Disputes of Material
       Facts Concerning Reconveyance ...............................................................................7

    E. Supplemental Materials Further Reinforce the Unresolved Nature of These
       Issues ...................................................................................................................... 10

    F. Clarification Is Necessary Because the Order is Already Being Invoked as a
       Broader Ownership, Enforcement, and Transfer Authorization Than Summary
       Judgment Resolved ................................................................................................. 11

    G. The Same Unresolved Premise Also Affects the Court's Summary Adjudication
       of Certain Affirmative Defenses............................................................................. 14

III. CONCLUSION ................................................................................................15

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page ii

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

## I. INTRODUCTION

By this motion, Defendant / Counter-Plaintiffs ("AHP") asks the Court for two discrete and urgently needed revisions or clarifications to its May 4, 2026 Order, Dkt. 274. The Order's reasoning appears to rest in part on an unproven operational premise, and Cymbidium-related parties are already invoking the Order in ways that threaten to irreparably impair AHP's reversionary rights.

**First request — Limitation of scope**: The Court should clarify that its Order did not, and could not on the summary-judgment record, decide that repayment of any particular "waterfall" amount necessarily results in lender release and practical reconveyance of the Mortgage Loans to AHP. Respectfully, the Rule 56 record contains no competent evidence establishing lender payoff or release mechanics, the size or pooling and cross-collateralization of downstream facilities, or any lender's conditions for releasing specific collateral. Yet the Order's reasoning appears to assume those operational facts as true and treats Cymbidium/Magerick's ability to effectuate reconveyance upon repayment as a foregone conclusion. Because that premise was neither established by admissible evidence nor properly resolved on summary judgment, any reasoning that depends on it should be revised. *See* Sections II.B-E *supra*.

**Second request — No authorization to defeat reversion**: The Court should clarify that, notwithstanding its finding that the governing agreements do not expressly prohibit pledging, nothing in its Order authorizes Cymbidium or its affiliates to undertake transfers, pledges, sales, servicing changes, or enforcement actions that

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

would effectively render reconveyance impracticable if the accounting ultimately shows "payment in full." While accounting, tracing, and the "payment in full" question remain unresolved, the Order should not be read to permit post-Order conduct that would materially impair AHP's asserted reversionary rights. *See* Section II.F *supra*.

These clarifications are necessary for three reasons. First, Cymbidium never met its Rule 56 burden to prove that payment of the AHP-related waterfall amount would compel lender release and reconveyance. Second, the existing record raises genuine disputes about pooled and cross-collateralized facilities, borrowing-base balances, and lender release conditions. Third, since May 4, Cymbidium-related parties have invoked the Order in other proceedings and communications as though downstream ownership, transferability, and enforcement rights were conclusively resolved. That overreading threatens to impair AHP's rights before trial and to undermine meaningful relief if AHP ultimately prevails in the accounting or at trial; indeed, there is genuine concern that the Order is currently being used to rubberstamp potential impairment. Rule 54(b) permits revision of interlocutory rulings to correct mistaken premises and avoid unintended overreach. AHP therefore seeks narrow revision on these two points so the case proceeds on the factual and accounting issues that the record actually supports.

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 2

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

## II. ARGUMENT

### A. Legal Standard

This Court's May 4, 2026 order is interlocutory. Under Rule 54(b), it "may be revised at any time" before final judgment. Fed. R. Civ. P. 54(b). The Ninth Circuit likewise recognizes a district court's inherent authority to reconsider and revise interlocutory rulings while it retains jurisdiction. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).

Local Civil Rule 7(h) appropriately cabins reconsideration, but it does not bar revision where an interlocutory order rests on a premise the summary-judgment record did not establish, or where clarification is needed to prevent the ruling from being read to decide issues not actually adjudicated. *See* Dkt. 274 at 5 (*citing Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003)); *see also Greenspan v. Fieldstone Fin. Mgmt. Grp.*, 2018 WL 6682995, at *1 (D. Or. Dec. 18, 2018).

Revision is warranted here because the Order's analysis relies on a premise not established on summary judgment and because clarification is needed to prevent the interlocutory ruling from being read to decide issues the Court did not adjudicate.

### B. The Order Should Be Revised Because the Record Did Not Establish That Paying Any "Waterfall" Amount Necessarily Enables Reconveyance

This motion does not seek to relitigate contract interpretations of anti-pledging;[1]

---

[1] It is true that the MLSARO contains no *express* prohibition on pledging the Mortgage Loans. AHP maintains, however, that the agreements and their reversionary structure give rise to an implied restriction that is not resolved by pointing to the absence of a single prohibitory sentence. AHP respectfully preserves that issue for later review.

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

rather, it seeks correction of an operational premise embedded in the Order's reasoning: that repayment of a listed "waterfall" amount necessarily produces lender payoff, release of lien(s), and practical reconveyance to AHP.

The Order's discussion of AHP's concerns about the WAB structure illustrates the point. In rejecting AHP's position, the Court reasoned that AHP's concern appeared to rest on a "faulty premise" that lender lien(s) could serve to impede reconveyance. Respectfully, the Rule 56 record did not establish that premise.

Nothing in the summary-judgment evidence showed how the WAB facility and any downstream collateral structures operate, what obligations these Mortgage Loans secured within those structures, whether the collateral was cross-collateralized or pooled, or what payoff and release conditions would compel release of the specific collateral necessary to effect reconveyance. Paragraph 6 of the waterfall is a term in the parties' private agreement; it is not evidence of lender release mechanics.

The Court should therefore revise and clarify the Order to state plainly that it did not—and could not on this record—adjudicate that payment of any particular amount necessarily yields lender release and practical reconveyance, and that the Order should not be read to resolve those separate operational and factual questions.[2]

---

[2] Even if nothing in the governing agreements expressly prohibited pledging, Cymbidium may not pledge the Mortgage Loans in a manner that materially impairs AHP's justified expectation of the Mortgage Loans reverting upon repayment. *See Edmonson v. Popchoi*, 172 Wn.2d 272, 280 (2011) (good faith requires "faithfulness to an agreed common purpose and consistency with the justified expectation of the other party"); *see also Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 452 (9th Cir.

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 4

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

### C. Cymbidium Never Established That Repayment of the AHP-Related Balance Would Necessarily Release the Mortgage Loans

Under Rule 56, Cymbidium bore the initial burden to show the absence of a genuine dispute of material fact on premises necessary to the relief it sought—or necessary to defeat AHP's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-05 (9th Cir. 2000). Argument is not evidence, and the burden does not shift on counsel's say-so.

Here, Cymbidium's summary-judgment briefing largely treated lender release and reconveyance as automatic consequences of the waterfall's ordering of payments. Cymbidium asserted that the Amendment to the MLSARO "expressly required repayment of the WAB … financing before any potential reversion" (Dkt. 233 at 4–5) and then leapt to the conclusion that "[o]nce that purchase financing was paid off, any encumbrance would be extinguished, and the remaining loans would no longer be pledged." Dkt. 233 at 16. But Cymbidium did not support that conclusion with competent evidence from WAB or any downstream lender—no payoff or release documentation; no credit agreement provisions governing release; no testimony from any lender; and no evidence establishing that these Mortgage Loans were not part of a larger pooled borrowing base or otherwise cross-collateralized.

---

1994); *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014); Restatement (Second) of Contracts, § 205, cmt. A (1979).

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 5

That omission matters because the premise at issue concerns lender operations and collateral mechanics, not merely contractual interpretation. The waterfall is a priority of distributions as between contracting parties. It does not, by itself, establish third-party lender payoff/collateral-release mechanics—or prove that tender of an "AHP-related" balance would necessarily compel release of the particular Mortgage Loans.

The point crystallized at oral argument when the Court asked whether the WAB obligations extended beyond the AHP transaction and whether those obligations "can sort of never be paid off, because the loan wasn't for $19 million. It was for so much more." **Ex**. **A** at 58:21–24. Cymbidium's counsel responded that "the answer is in paragraph no. 6 of the waterfall"; only the financing "incurred for the purchase of the mortgage loans" needed to be repaid; and "when you pay that, you get the collateral released." *Id*. at 58:25-59:7.

The Court then specifically asked whether it therefore "doesn't matter" if the Mortgage Loans were pledged to support a much larger lending facility because "the only amount that would need to be repaid would be the amount connected to the $19 million." *Id*. Cymbidium's counsel agreed and characterized the WAB facility as functionally equivalent to ordinary purchase-money financing where repayment of the relevant amount simply results in release of the collateral loan-by-loan. *Id*.

But counsel's characterization cannot supply the missing evidence (and, as set forth in Section E below, is not supported by the evidence). And paragraph 6 of the

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 6

Amendment—standing alone—does not establish the size or scope of the WAB or any other lender's facility, whether the collateral was pooled or cross-collateralized, or the conditions under which WAB or any other lender would be required to release specific collateral for reconveyance.

Because Cymbidium failed to carry its initial Rule 56 burden on lender-release mechanics, the Court could not treat those mechanics as undisputed. For that reason, the Court should—consistent with the relief requested in the Introduction—revise the Order to clarify that it did not and could not on this record decide that repayment of any particular waterfall amount necessarily results in lender release and practical conveyance. *See Martinez v. City of Los Angeles*, No. 2:20-CV-10559-FWS-KS, 2023 U.S. Dist. LEXIS 1430, at *28, 2023 WL 8686729 (C.D. Cal. Jan. 4, 2023) (finding that merely arguing "there is no evidence" did not satisfy the movant's initial Rule 56 burden).

### D. In Any Event, The Existing Record Raised Genuine Disputes of Material Facts Concerning Reconveyance

Even if Cymbidium had carried its initial Rule 56 burden (it did not), summary judgment still could not rest on the assumption that satisfaction of some AHP-related balance would necessarily compel lender release of the Mortgage Loans and permit their practical reconveyance. The record already contained evidence showing that the Mortgage Loans had been embedded in larger, evolving lending facilities and that the collateral-release mechanics were, at minimum, uncertain and disputed.

First, the record included WAB borrowing-base materials reflecting that the Mortgage Loans were part of a substantially larger facility well after the MLSARO

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Amendment. Those materials show an approximately **$36.8 million** facility balance as of **July 25, 2024**—at a time when Cymbidium's own internal reconciliation materials reflected a dramatically smaller amount allegedly owed by AHP under the waterfall (approximately **$2.6 million** as of late March/early April 2024). *See* Dkt. 238-1 at 589 (Ex. 67) (WAB Borrowing Base, 7/25/2024); *compare with id*. at 542 (Ex. 54) (Cymbidium spreadsheet reflecting AHP balance of $2.64 million as of 3/29/2024) and *id.* at 548 (Ex. 55) (initial disclosures reflecting approximately $2.6 million as of 4/4/2024). That disparity does not itself prove reconveyance is impossible. But it squarely disputes the premise that payment of an "AHP-related" balance would necessarily align with—much less satisfy—the operative lender obligations governing collateral release.

Second, the record contained testimony confirming that WAB indebtedness persisted long after the Amendment. Weinstein testified that as of **December 2025**, Magerick still owed WAB "**roughly $20 million**." Dkt. 238-1 at 101 (Ex. 6) (at 224:3–15). A continuing, multi-year lender balance of that magnitude—against a facility reflected in borrowing-base materials as materially larger than the AHP-related numbers used in Cymbidium's internal accounting—creates at least a triable dispute over what must be paid (and to whom) before any collateral release could occur.

Third, the record included testimony demonstrating uncertainty about whether the Mortgage Loans could in fact be released and returned to AHP upon tender of the amounts Cymbidium claims are due under the waterfall. *See* Dkt. 238-1 at 93-95 (Ex. 6) (at 193:8–196:14) (Weinstein unable to confirm release/reconveyance mechanics). That

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

testimony forecloses any conclusion, as a matter of undisputed fact, that payment of a particular waterfall balance would necessarily result in collateral release and practical reconveyance.

AHP raised these issues at oral argument and pointed to the borrowing-base materials and testimony reflecting the ongoing and broader lender obligations. **Ex. A** at 38:23–40:13. Again, AHP does not ask the Court to find on this record that reconveyance is impossible. The point is narrower: the evidence already in the Rule 56 record created genuine disputes of material fact as to (i) the scope of the lender obligations secured by the Mortgage Loans, (ii) whether the collateral was pooled or cross-collateralized, (iii) whether tender of any AHP-related balance would necessarily compel release of the specific collateral needed for reconveyance, and (iv) whether the Mortgage Loans are capable of practical reconveyance upon payment of any particular amount.

Those are not side issues. They go to the heart of the parties' reversionary structure and the "payment in full" question that the Court has already recognized the contract does not definitively resolve. *See* Dkt. 274 at 13 n.6. And they confirm why the Court's Order should be revised and clarified to avoid any implication that lender release and practical reconveyance necessarily follow from repayment of some amount identified in the waterfall.

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 9

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

**E. Supplemental Materials Further Reinforce the Unresolved Nature of These Issues**

AHP submits supplemental borrowing-base and collateral materials to address the premise that crystallized at oral argument and appears in the Order's reasoning—namely, that repayment of an AHP-related waterfall balance necessarily compels collateral release and practical reconveyance. These materials provide additional context for the downstream collateral structures already implicated by the existing record.

Specifically, these supplemental materials reinforce that the Mortgage Loans were incorporated into larger, evolving borrowing-base facilities supported by pooled collateral, not a static purchase-money loan tied to a single pool. They include: (i) an October 6, 2022 WAB Borrowing Base Certificate reflecting an approximately $38.6 million facility balance at or near the time the Mortgage Loans were initially pledged (**Ex. B**); (ii) a June 30, 2023 WAB Borrowing Base Certificate reflecting an approximately $50 million facility balance supported by substantially larger pools of pledged assets (**Ex. C**); and (iii) materials reflecting overlapping pledges to other lenders (including Banner Bank) involving  loans also pledged to WAB. **Ex. D**.[3] The supplemental materials also rebut the notion raised during oral argument that payoff of individual Mortgage Loans necessarily results in release of those loans from the borrowing base:

---

[3] On about June 29, 2023, Cymbidium records indicate that Weinstein pledged 231 Mortgage Loans to Banner Bank to secure over $9 million in financing (many of the same loans were simultaneously pledged to WAB). *Id*. (at Tab: ACCRETION METHOD, Row E9, F9).

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

multiple loans paid off or sold in 2023 still appeared within WAB collateral reporting in mid-2024. *See* **Ex. E** (previously submitted as Dkt. 238-1, Ex. 67) (see highlighted loans pledged as part of the WAB borrowing base certificate); **Ex. F** (Cymbidium 139074) (previously submitted as Dkt. 238-1, Ex. 56) (see "Pivot_Payments-with OI" tab in Cymbidium's internal spreadsheet reflecting that the same loans identified in the WAB borrowing base had already been sold and thus should not have remained pledged to WAB ).

In short, these materials reinforce that the scope of secured obligations, the extent of cross-collateralization, and the mechanics and triggers for collateral release remain disputed.

**F. Clarification Is Necessary Because the Order is Already Being Invoked as a Broader Ownership, Enforcement, and Transfer Authorization Than Summary Judgment Resolved**

Events since May 4, 2026 confirm the need for revision and clarification. In other proceedings and communications, Cymbidium-related entities have cited the Order's holding—that the MLSARO contains no express restriction on pledging or transfer—as though it conclusively resolved downstream ownership and enforcement rights and, worse, as though it affirmatively authorizes new post-Order transfers, pledges, or enforcement actions. That is not what the Order decided, and the summary-judgment record did not support such adjudications. Left unchecked, these post-Order invocations risk allowing Cymbidium and its affiliates to overextend the Court's

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 11

construction of the agreements into a practical license to dispose of assets in ways that would defeat AHP's reversionary rights.

Illustrative post-Order uses of the Order include:

1.     **Ohio**. On May 8, 2026 — within days of the Order — Magerick invoked this Court's decision in a declaratory judgment / foreclosure action in Trumbull County, Ohio to assert that AHP had "already litigated, and lost, its attempt to claim ownership of the Note and Mortgage." **Ex. F** at 6.  The filing further cited this Court's Order as support for Magerick's asserted ownership position. *Id*. at 6-7.

2.     **New York**. In Nassau County, New York, Weinstein-related entities invoked disputed downstream assignments and servicing authority to seek diversion of mortgage-sale proceeds away from AHP (**Ex. G**) notwithstanding that AHP remains the plaintiff of record. **Ex. H**. Because of those efforts, the undersigned law firm was prompted to enter an appearance in that court, intervene on AHP's behalf, and seek emergency relief to (a) prevent the Fein Such law firm, which, at Weinstein's apparent direction, was purportedly representing AHP in the matter (**Ex. I)** while simultaneously representing Magerick and other affiliates *against* AHP in other matters (*e.g.,* **Ex. J**), from taking any further action on behalf of AHP, and (b) ensure that any funds from the sale remain in escrow pending further order. *See* **Ex. K** (Summary Brief in Support of Order to Show Cause); **Ex. L** (Order to Show Cause).

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 12

3.    **Cymbidium correspondence**. Cymbidium has likewise asserted post-Order that downstream ownership and entitlement issues are now "no longer open or debatable." **Ex. M**.

*** 

These invocations of the Order underscore why clarification is critical now. The Order did not—and could not on summary judgment—decide: (i) the validity or effectiveness of any particular downstream assignment, pledge, foreclosure, transfer, or affiliate enforcement action; (ii) the validity, scope, revocation, or continuing effectiveness of any powers of attorney or other asserted agency authority; (iii) whether any particular Mortgage Loan is presently owned or controlled by Cymbidium, Magerick, Weinstein, Atlantica, Land Home, or any other affiliate free and clear of AHP's contractual and reversionary interests; or (iv) whether the "payment in full" condition for reconveyance has been satisfied. To the contrary, the Court recognized that the Amendment "does not set forth a definitive method for determining whether 'payment in full' has occurred" and that the accounting issues remain central. Dkt. 274 at 13 n.6.

Accordingly, the Court should enter a narrow clarifying revision and immediate guardrails: until the accounting, tracing, and "payment in full" questions are resolved, the May 4 Order should not be read to authorize loan-by-loan transfers, pledges, sales, servicing changes, or enforcement actions that would effectively dispose of Mortgage Loans or render reconveyance impracticable. Absent such clarification, there is a real

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 13

and imminent risk that the Order will be used to effectively authorize transactions that materially impair AHP's reversionary rights.[4]

### G. The Same Unresolved Premise Also Affects the Court's Summary Adjudication of Certain Affirmative Defenses

The unresolved factual disputes concerning the WAB and related collateral structures also bear on the Court's summary adjudication of AHP's affirmative defenses. In granting Cymbidium's motion to strike, the Order reasoned that AHP's concerns about the pledging structure rested on a "faulty premise" because "if Western Alliance Bank's lien is satisfied (which is a goal of the waterfall and must occur before reconveyance), then the lien would not impede reconveyance." Dkt. 274 at 17.

Respectfully, that premise was not established as an undisputed fact on summary judgment. As explained above, Cymbidium did not submit competent evidence demonstrating that satisfaction of an "AHP-related" balance under the waterfall would necessarily compel lender release of the specific collateral needed for reconveyance, or that the Mortgage Loans were not embedded in broader, pooled, or cross-collateralized facilities with independent collateral-release conditions. The record instead reflected unresolved questions about the scope and mechanics of lender

---

[4] Indeed, there is a genuine concern that, in an effort to raise funds, Weinstein is already using the Court's Order to market or promote additional transfers or pledges of Mortgage Loans in a manner that, if successful, will directly impact AHP's reversionary rights, whether or not such transfers have already occurred.

DEFENDANT / COUNTER-PLAINTIFFS' MOTION FOR REVISION OF INTERLOCUTORY ORDER OR, IN THE ALTERNATIVE, FOR PARTIAL RECONSIDERATION – Page 14

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

encumbrances and release—questions that go directly to the practical effect and materiality of the downstream financing structures on AHP's reversionary rights.[5]

AHP does not contend that every affirmative defense rises or falls on lender collateralization alone. But to the extent the Order's disposition of any defense depended on the assumption that lender satisfaction necessarily permits reconveyance (and thus that any nondisclosure or collateralization could not be material), revision and clarification are warranted. At minimum, the Court should clarify that it did not adjudicate—and the summary-judgment record did not establish—whether payment of any particular amount necessarily results in lender release and practical reconveyance of the Mortgage Loans. Clarification on this point will ensure that issues of materiality, causation, and reliance are addressed on a developed record, not on an assumed collateral-release mechanism.

### III. CONCLUSION

For these reasons, AHP asks that the Court revise and clarify the May 4, 2026 Order in two narrow respects. First, the Court should state that it did not—and the summary-judgment record did not—adjudicate that repayment of any particular

---

[5] It bears mention that, at oral argument, Cymbidium's counsel asserted that WAB "has no lien in these loans anymore," suggesting that what the Court described as a "goal of the waterfall" has already been achieved. **Ex. A** at 59:20–22; *see also* Dkt. 274 at 17. AHP does not offer this statement for its truth, but to underscore that Cymbidium's own position that WAB is already out of the picture raises substantial questions about what "payment in full" means under the Amendment, whether it has occurred, and why reconveyance has not followed. Those questions further highlight that lender-release status and reconveyance mechanics were not established as undisputed facts on summary judgment and remain matters for the accounting and trial.

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

waterfall amount necessarily results in lender release and practical reconveyance of the Mortgage Loans to AHP, and the Court should revise any reasoning that depends on that unproven premise. Second, the Court should clarify that the Order did not, loan by loan, determine the present ownership, enforceability, or transferability of any Mortgage Loan free and clear of disputed accounting, "payment in full," reversionary, or downstream-lien issues—matters the Court recognized remain unresolved and that will be addressed through the accounting process and at trial. While accounting, tracing, and the "payment in full" question remain pending, the Order should not be construed as authorizing any pledging, sale, transfer, servicing change, or enforcement action that would potentially impair AHP's asserted reversionary rights.

Respectfully Submitted this 18th day of May 2026.

**BAILEY DUQUETTE P.C.**

By: */s Hozaifa Y. Cassubhai*
Hozaifa Y. Cassubhai, WSBA #39512
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.225.2250
E: hozaifa@baileyduquette.com
will@baileyduquette.com
*Attorneys for Defendant/Counter-Plaintiffs*

*This above motion contains 3,770 words in compliance with the Local Rules.*

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 16

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing

Defendants / Counter-Plaintiff's Motion For Revision Of Interlocutory Order Or, In

The Alternative, For Partial Reconsideration to be served upon as follows:

Bradley S. Keller, WSBA #10665
M. Victoria Molina, WSBA #62109
1000 Second Avenue, 38th Floor                    ☒ Via ECF
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
Email: bkeller@byrneskeller.com
mvmolina@byrneskeller.com

*Attorneys for Plaintiff / Counter-Defendants*

I declare under penalty of perjury under the laws of the State of Washington that

the foregoing is true and correct.

Dated: May 18, 2026 at Westfield, New Jersey.

*/s Hozaifa Y. Cassubhai*
Hozaifa Y. Cassubhai, WSBA No. 39512

DEFENDANT / COUNTER-PLAINTIFFS'
MOTION FOR REVISION OF INTERLOCUTORY
ORDER OR, IN THE ALTERNATIVE, FOR
PARTIAL RECONSIDERATION – Page 17

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869