The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CYMBIDIUM RESTORATION TRUST,

Plaintiff,

v.

AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING; its Trustee, U.S. BANK TRUST N.A.; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+; its Trustee, U.S. BANK TRUST NATIONAL ASSOCIATION; AHP SERVICING, LLC; and JORGE NEWBERY,

Defendants.

AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+; and AHP SERVICING, LLC,

Counter-Plaintiffs,

v.

CYMBIDIUM RESTORATION TRUST,

Counter-Defendant.

NO. 2:24-cv-00025-KKE

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL READINESS

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL
READINESS (NO. 2:24-cv-00025-KKE) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

In accordance with the Court's June 30, 2026 Order, Dkt. 311, Plaintiff Cymbidium Restoration Trust ("Cymbidium") files the following Status Report:

**A.      Status of the Parties' Interactions With the Expert**

Prior to Mr. Solis being retained, he was provided with a copy of the Court's order specifying what areas he was to address.  Some were issues AHP[1] wanted addressed (e.g. costs applied to the waterfall and proceeds from loans realized by Cymbidium). Others were areas Cymbidium wanted addressed (e.g. AHP's dispositions of loans/REOs, remittance of proceeds, and reversal of credits).  The Court requested that the parties communicate with Mr. Solis regarding his availability through July 2026 to complete the assignment as contemplated in the order assigning him as an expert and providing the scope of work. *See* Dkt. 281. Mr. Solis was provided with the Order from the Court and indicated he preferred the July 27 date, meaning he had the capability to complete the assignment as contemplated by the Court and was aware the trial date would be scheduled for the 27th as was his preference. For whatever reason, including reasons about which the parties do not agree, the expert's work still is nowhere near complete. He apparently "front loaded" the issues AHP requested be addressed and even that is not yet done. And he apparently has not begun, or has only just begun, reviewing the issues Cymbidium wanted addressed.  His most recent communication indicated that there would not even be a report by the currently scheduled trial date.

Cymbidium's increasing frustrations regarding delay—and the enormous adverse financial consequences to it of delay—were further heightened by certain recent events. On June 24, 2026, the parties held a videoconference with Mr. Solis. Mr. Solis had a single question regarding one mortgage loan transaction, which was fully addressed within the first twenty minutes of the call. The remaining fifty-five minutes of the call, however, were consumed not by any issues identified by Mr. Solis, but by issues raised unilaterally by AHP,

---

[1] Defendants American Homeowner Preservation Series AHP Servicing, AHP Capital Management, LLC, American Homeowner Preservation Series 2015A+, and AHP Servicing, LLP (collectively, "AHP").

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL
READINESS (NO. 2:24-cv-00025-KKE) - 2

which AHP represented to the expert "may" impact his review of the data or "may" require him to review additional documentation, notwithstanding that Mr. Solis himself had identified no such issues or concerns.

Following the call, Cymbidium agreed to provide additional data to Mr. Solis, if Mr. Solis determined he actually needed it. Cymbidium took this position because the exercise AHP proposed would require the expert to review data spanning many years, most (if not all) of which would not aid the analysis the Court tasked him with performing. In substance, AHP requested the expert to conduct mini-audits of the transactions of multiple entities, potentially entailing months of additional work, based on nothing more than AHP's suspicion that it is possible that funds *could* have been transferred to those entities and would not appear in Magerick's general ledger. Although Mr. Solis expressed no concerns of his own, he requested—based on the concerns voiced by AHP—that Cymbidium provide the additional information. Cymbidium has complied and has now furnished information regarding certain additional entities. The expert is now going to be spending yet additional time and effort at AHP's request to address AHP's suspicions for which it provided no support, resulting in more delay and expense.

Cymbidium has taken a markedly different approach in its own communications with the expert. Rather than advocating to Mr. Solis theories or suppositions that could color his analysis or compromise his neutrality (what AHP has been doing), Cymbidium sent Mr. Solis an email containing only a list of over 200 of the subject loans—without commentary or additional information—that, based on public and other records, it believed AHP had disposed of.  Cymbidium asked Mr. Solis a single, neutral question: whether he had received from AHP all documentation needed to complete the portion of his engagement concerning (a) which of the subject loans AHP sold or otherwise received proceeds from; (b) the amounts for which those loans were sold or disposed of and the amounts AHP received for each; and (c) whether those proceeds were remitted by AHP to Cymbidium (or Magerick). On Thursday, June 25,

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL
READINESS (NO. 2:24-cv-00025-KKE) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

2026, before the videoconference with Mr. Solis, Mr. Solis told Cymbidium via email that he was unable to answer that because he was still working on that component and did not know if he had everything. After the videoconference with the parties in which AHP made its remarks, Cymbidium's counsel asked Mr. Solis once again if he had all documents from AHP regarding its earlier question. Mr. Solis responded that he did not need additional documents from AHP.

Cymbidium accepts that Mr. Solis may *think* he does not need additional documents from AHP, but the fact that he may believe that just shows he either has done little or no work thus far regarding the areas Cymbidium wanted addressed, or that if he has, whatever he produces cannot possibly meaningfully address the issue, or both. This is because he does not have, and AHP has not provided, the closing statements for the over 200 REO property dispositions public records show AHP has engaged in.[2] AHP's general ledger entries alone do not, and cannot, establish the proceeds realized from a REO property disposition; only the closing statement for the REO shows that. Any seller can instruct an escrow agent to direct portions of sale proceeds wherever they want. The closing statements will show how AHP directed REO sale proceeds to be disbursed, including whether proceeds were directed to be sent to unrelated creditors, accounts of other related entities, and the like—with only a much smaller lesser amount going to the AHP account for which the general ledger was provided to Mr. Solis. These are not abstract or theoretical concerns. AHP's general ledger shows amounts received for certain loans/REOs that are dramatically less than the sale prices reflected in publicly available records. In some cases, the general ledger amount is a small fraction of the public record sale price—a disparity that cannot be accounted for by typical closing disbursements such as unpaid real estate taxes, the cost of title insurance, and similar closing costs. The general ledger information AHP provided regarding its sales is the beginning of the

---

[2] AHP was required to produce these closing statements under the Court Order compelling discovery. AHP was ordered to produce: "Defendants' general ledger and chart of accounts, documentation tracing proceeds from MLSA-related loan sales, and source data linking payments to specific loans." Dkt. No. 188 at 4. Cymbidium has again requested the closing statements from AHP, and if not provided immediately, they will be the subject of a motion.

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL
READINESS (NO. 2:24-cv-00025-KKE) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

inquiry, not the end of the inquiry. Cymbidium raises the issue here, to the Court alone, because AHP's failure to provide  the closing statements is not only a matter of its failure to comply with a court-ordered production, but also shows how little has been done by the expert thus far to meaningfully address the issues in the referral order that were requested by Cymbidium.

**B.      Trial Readiness and the Trial Date**

The expert engagement, however well-intentioned initially, has not proceeded as contemplated. Mr. Solis was to complete his work by early-to-mid June 2026. He has now advised the parties that he will not even have a report by the current trial date, and he has provided no date certain by which his work will be complete. This matter was originally set for trial in January, and as matters stand today, only a small portion of the expert's engagement has been completed, while the delay attributable to this single exercise has grown untenable.

The financial consequences of the delay have also been unsustainable. As the Court is aware, during the period of delay AHP has continued to use retained Mortgage Loan Documents to sell loans/REOs and is not remitting proceeds. While there is a dispute regarding where things stand under the waterfall, there no longer is any valid dispute that those Mortgage Loan Documents were to have been provided to Cymbidium. This also is not a situation where, if/when Cymbidium ultimately wins, a money judgment will make it whole.  AHP has acknowledged that it is "judgment proof" with no real assets.[3] At the same time, AHP continues to cloud title to and prevent Cymbidium from selling loans/REOs. Yet Cymbidium continues to incur purchase financing interest costs, pay for taxes and improvements, and pay for loan servicing fees. The continued delay is imposing an unsustainable financial burden on Plaintiff.

---

[3] *See* Jorge P. Newbery, *Debt Cleanse: How to Settle Your Unaffordable Debts for Pennies on the Dollar (And Not Pay Some at All)* 55 (2016) ("A judgment is just a piece of paper, kind of like toilet paper but less useful.").

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL
READINESS (NO. 2:24-cv-00025-KKE) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Cymbidium respectfully submits that the trial date should not be continued, and proposes the following:

1. **The expert should be discharged, with delivery of the completed portion of his work.** The parties have already paid for Mr. Solis's time and for the work he has performed. Mr. Solis has indicated that he has completed the portion of his engagement concerning costs. Cymbidium requests that the Court direct Mr. Solis to deliver a report on that completed portion, so that the parties' investment of time, money, and effort is not lost.

2. **The parties should proceed to trial on the remaining issues.** If a party is not prepared to carry its burden on a given issue at trial, that is a failure of proof by that party—not a basis to further delay these proceedings. Cymbidium will be prepared to try its case. Nor will AHP suffer any prejudice: AHP has had the benefit of the neutral expert process, and it elected never to retain its own expert. AHP should not be permitted to use the neutral expert exercise as a substitute for the expert it chose not to hire, or as a vehicle to lend credence to theories it has otherwise made no effort to prove.

**C. Impact on Cymbidium's Motion to Compel Delivery of the Mortgage Loan Documents.**

The Court asked the parties to address the impact of the case's current progression on Cymbidium's Motion to Compel Delivery of the Mortgage Loan Documents. Cymbidium's position is as follows:

If the Court maintains the current trial date, the Motion can be resolved in the ordinary course in connection with trial. If, however, the Court vacates or continues the trial date, the calculus changes materially. Mr. Solis has given no clear indication of when his work will be complete, only that he will not have a report by the trial date. A continuance would therefore leave Cymbidium in limbo for an indefinite period while the expert completes what has become

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL
READINESS (NO. 2:24-cv-00025-KKE) - 6

a quasi-audit of multiple entities' transactions that may or may not bear any relationship to the mortgage loans, undertaken largely to disprove AHP's theories—and with Cymbidium continuing to bear the costs of that work. Meanwhile, AHP would continue to retain the mortgage loan documents that, as set forth in the Court's Order on the parties' motions for summary judgement, Dkt. 274, AHP breached the parties' contract by withholding.

Accordingly, if the trial date is continued, Cymbidium requests that the Court:

1. **Order AHP to turn over the mortgage loan documents forthwith.** AHP should not be permitted to benefit from delay it has substantially contributed to by continuing to withhold documents it has no right to retain; and

2. **Order AHP to produce the closing documents to Cymbidium and to Mr. Solis immediately.** AHP was required to produce these documents by Court Order entered in July 2025 (Dkt. 188), nearly a year ago, and to date has never done so.

DATED this 2nd day of July, 2026.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
   Bradley S. Keller, WSBA #10665

By /s/ M. Victoria Molina
   M. Victoria Molina, WSBA #62109
   1000 Second Avenue, 38th Floor
   Seattle, Washington  98104
   Tel: (206) 622-2000
   Email: bkeller@byrneskeller.com
        mvmolina@byrneskeller.com
***Attorneys for Plaintiff***

CYMBIDIUM'S STATUS REPORT REGARDING TRIAL READINESS (NO. 2:24-cv-00025-KKE) - 7

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000