HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYMBIDIUM RESTORATION TRUST,

        Plaintiff,

        v.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING; ITS TRUSTEE, U.S. BANK
TRUST N.A.; AHP CAPITAL
MANAGEMENT, LLC; AMERICAN
HOMEOWNER PRESERVATION SERIES
2015A+; ITS TRUSTEE, U.S. BANK TRUST
NATIONAL ASSOCIATION; AHP
SERVICING, LLC; AND JORGE NEWBERY,

        Defendants.

AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES AHP
SERVICING.; AHP CAPITAL
MANAGEMENT, LLC; AMERICAN
HOMEOWNER PRESERVATION SERIES
2015A+; and; AHP SERVICING, LLC,

        Counter-Plaintiffs,

        v.

CYMBIDIUM RESTORATION TRUST,

        Counter-Defendant.

Case No. 2:24-cv-00025-KKE

AHP DEFENDANTS/ COUNTER-
PLAINTIFFS' STATUS REPORT RE:
TRIAL READINESS AND RESPONSE
TO THE COURT'S JUNE 30, 2026,
ORDER

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Pursuant to the Court's June 30, 2026 Order (Dkt. 311), and the parties' commitment to provide a further update on trial readiness (Dkt. 310), AHP submits the following statement concerning trial readiness and its relevance to Cymbidium's motion to compel delivery of mortgage loan documents.

**A. AHP's Position on the Trial Date and the Reasons for Continuance**

AHP would have preferred to proceed under the Court's current schedule. Unfortunately, for reasons not attributable to any failure by AHP to comply with the Court's directives, the events that have unfolded during the neutral expert's engagement have made clear that completing the Court-directed accounting before the present trial date is no longer realistic. The chronology that follows is drawn principally from contemporaneous communications with the Court-appointed neutral expert, David Solis, including Zoom meeting summaries circulated immediately following the parties' meetings and Mr. Solis's own emails.

***

May 19, 2026 was the Court-ordered deadline by which the parties needed to provide Mr. Solis with relevant financial and accounting records related to the Mortgage Loans. Dkt. 281. On that day, AHP gave Mr. Solis direct, accountant-level access to its accounting systems and provided native, unaltered general ledger exports for both AHP Servicing and AHP 2015A+, together with the other categories of records the Order required. *See* Dkt. 291 at 4–5. At that time, however, Cymbidium did not provide Mr. Solis with direct access to its accounting systems. Mr. Solis has since

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 2

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

advised, as recently as June 30, 2026, that—apart from a set of supplemental materials AHP produced on June 17, 2026 that he is still reviewing[1]—he does not require additional records from AHP.

Mr. Solis's work that is presently outstanding primarily concerns records that were within Cymbidium's—not AHP's—possession, custody, or control. Specifically, AHP had understood, based on Cymbidium's prior submissions, that Magerick LLC's general ledger would reflect all revenue related to the Mortgage Loans at issue. Following a June 4, 2026, status conference addressing document production and access concerns raised by AHP (*see* Dkt. 291), Cymbidium provided Mr. Solis with access to its Great Plains general ledger for Magerick. Mr. Solis has indicated that he did not gain independent access to that Magerick general ledger **until June 16, 2026**—the very date the report was originally due.

On June 22, 2026, the parties convened a Zoom call to discuss the status of Mr. Solis's progress. The Zoom meeting summary notes circulated by Cymbidium's counsel following that call reflected, in relevant part:

> "David [Solis] expressed that focusing on improvement costs has taken longer than anticipated, and **he identified potential gaps in revenue tracking, particularly regarding intermediary accounts and transfers between entities**. The group agreed that David would provide a timeline update via email regarding when he could complete a comprehensive report, as the current June 26th deadline may not be feasible."

[1] To be clear, the June 17 supplemental materials were not records AHP was required to produce by May 19, 2026 and failed to timely produce. Rather, they were additional materials AHP voluntarily provided to assist Mr. Solis's ongoing review as his analysis progressed. Based on Mr. Solis's communications, it does not appear that supplementation has any bearing on his ability to complete the assignment.

AHP DEFENDANTS / COUNTER-PLAINTIFFS' STATUS REPORT RE: TRIAL READINESS AND RESPONSE TO THE COURT'S JUNE 30, 2026, ORDER – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

On June 26, 2026, the parties held another call with Mr. Solis, during which the participants further discussed the gaps in revenue tracking. Cymbidium agents explained that certain Mortgage Loan proceeds were first received into a non-Magerick account—namely a "7191" account belonging to the Weinstein & Riley law firm—where those proceeds were reviewed and then allocated to Magerick or other affiliated entities. Until that discussion, it had been understood, based on Cymbidium's prior submissions, that Magerick's general ledger directly reflected all revenues received on the Mortgage Loans. The revelation that certain Mortgage Loan proceeds instead flowed through the separate 7191 clearing account before being manually allocated among affiliated entities materially changed the accounting landscape because it revealed that tracing Mortgage Loan revenue required examination of records outside the Magerick general ledger. Mr. Solis did not have access to the 7191 account or the related entities' accounting records and therefore had no means of independently determining whether Mortgage Loan proceeds had been allocated to Magerick, to other affiliated entities, or otherwise accounted for through that allocation process. Following that discussion, Mr. Solis advised the parties that he required the 7191 account records and related general ledgers to complete his analysis.

As circulated post-call, the meeting summary notes from the June 26 meeting reflected, in part:

"The team discussed access to general ledger (GL) data for account 7191, which contains mortgage loan revenues that may be transferred to other entities including Madrick [sic]. David [Solis] explained that his current report doesn't cover those funds due to limited access, and he would need

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 4

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

additional GL information from other affiliates to properly analyze the transaction flow."

On June 28, 2026, the parties filed a joint status report. Dkt. 310. Although both sides generally acknowledged that Mr. Solis needed additional information to complete his report, the parties took differing positions on whether the trial date should be released at that time. *Id*.

On June 30, 2026, Mr. Solis independently advised the parties, in writing, that he believed the 7191 account statements and related general ledgers would assist his analysis and that, in light of the additional work this would require, he did not believe he would be able to complete his report by the current trial date. He wrote, in relevant part:

> "Given the issues that were raised during our last call, I believe it would be helpful to have the 7191 account statements and the general ledgers for the related entities that are parties to transactions within that account. To the extent that there are records regarding the allocation processes that occur within that account, specifically as it relates to determining which funds are specific to subject loans, such records would also be helpful."

On July 1, 2026, Cymbidium produced the 7191 account statements and three affiliate general ledgers. Those records were maintained by Cymbidium, Magerick or its affiliated entities—not by AHP—and had not been made available to Mr. Solis in the six weeks following the Court's May 19 production deadline.[2]

---

[2] Separately, it bears mention that, on June 25, 2026, Cymbidium provided Mr. Solis with a spreadsheet identifying 123 Mortgage Loans and requested that he determine whether those loans had been sold or otherwise disposed of by AHP, the sale or disposition price, the proceeds received by AHP, and whether those proceeds were remitted to Cymbidium or Magerick. AHP reviewed the identified transactions and, on June 30, 2026, supplemented its production to Mr.

AHP DEFENDANTS / COUNTER-PLAINTIFFS' STATUS REPORT RE: TRIAL READINESS AND RESPONSE TO THE COURT'S JUNE 30, 2026, ORDER – Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

The chronology above is not offered to assign blame, but because the Court specifically requested the parties to explain why the present schedule is no longer workable. It demonstrates that the need for additional time did not arise because Mr. Solis lacked diligence or because AHP failed to provide the records the Court required. Rather, as Mr. Solis progressed through his independent review, he determined that additional categories of Cymbidium-controlled records would be necessary to complete the Court-directed accounting. Those records were not made available to him until after the extended report deadline had already passed. Under these circumstances, AHP respectfully submits that the present trial date is no longer feasible and should be continued to permit completion of the Court-directed accounting.

## B. AHP's Position on Cymbidium's Motion to Compel Does Not Depend on the Trial Date

The Court asked the parties to address whether their positions on trial scheduling affect their positions on Cymbidium's motion to compel delivery of the Mortgage Loan Documents. Dkt. 311 at 2–3. AHP recognizes the Court's understandable frustration with the parties' extended disagreement over the practical consequences of the May 4, 2026 Order, and with the uncertainty surrounding the trial date. AHP's answer to the Court's question, however, is that the trial date does not

---

Solis with responsive closing statements and other documents for transactions where such materials may not have been previously produced. Even though Mr. Solis had not expressly requested those materials from AHP, AHP provided those materials nonetheless in the spirit of ensuring that Mr. Solis had all information needed to complete the Court-directed accounting.

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 6

change the analysis set out in AHP's opposition (Dkt. 307); the relief Cymbidium seeks is unavailable now, whether trial occurs in July or some weeks later.

Specifically, Cymbidium asks the Court to require AHP to deliver the Mortgage Loan Documents now, before trial, as a remedy for a breach of a contractual delivery obligation. Cymbidium has confirmed that it seeks "specific performance of a contractual obligation—the precise claim Cymbidium pled in its Amended Complaint." Dkt. 309 at 6; *see also* Dkt. 264 ¶¶ 20–24. But specific performance is a final equitable remedy that must be proven on a complete record. An order compelling the same performance before trial would be a preliminary mandatory injunction, whatever label is attached to it. *See* Dkt. 37 (denying preliminary relief because, in part, "breach of contract claims resulting in economic injury are rarely considered irreparable") (citing cases).

Under any characterization, the requested order is premature. The Court cannot award final specific performance on an interlocutory motion. And Cymbidium has not sought—much less justified—a preliminary mandatory injunction under the four *Winter* factors, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), or the heightened standard for mandatory relief recognized in *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Rule 70 does not provide another route to the same relief; it applies only when a "judgment requires a party to . . . perform [a] specific act," Fed. R. Civ. P. 70(a), and no such judgment exists here. The Court construed the parties' contract but "did not order delivery of any specific document." Dkt. 307 at 16.

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 7

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

The Court's prior orders likewise confirm that the present record does not support the extraordinary equitable relief Cymbidium seeks, regardless of the trial date. That is particularly true where the Court-appointed expert has not yet completed the accounting necessary to address the "payment in full" and reversion issues the Court expressly reserved for trial. The Court likewise reserved for trial "[w]hether a failure to provide documents resulted in damages." Dkt. 274 at 11. Those issues are interrelated. The accounting bears directly on whether AHP's contractual obligations have terminated under the waterfall and whether any alleged failure to deliver documents caused compensable injury. That reservation reflects that damages may remedy any proven breach and, under Washington law, specific performance is available only when damages are inadequate. *Crafts v. Pitts*, 161 Wn.2d 16, 28 (2007) (the "question is always whether money damages would equally compensate the injured party"). Cymbidium's own operative complaint illustrates the point: it seeks more than $2 million in damages for the alleged breaches while also alleging that damages cannot make it whole. *Compare* Dkt. 264, Prayer ¶ 1, *with id.* ¶ 22. More to the point, Cymbidium has not yet proven that any non-delivery caused it injury—that question is reserved for trial—and without proof of injury, Cymbidium cannot establish irreparable harm or show that "the law and facts clearly favor" mandatory relief. *Garcia*, 786 F.3d at 740.

There is another substantive reason, independent of timing, why Cymbidium cannot obtain the relief it seeks on the present record. Cymbidium bears the burden of showing a likelihood of success on the merits of its specific-performance claim. *Winter*,

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

555 U.S. at 20. It has not attempted that showing. The Amended MLSARO provides that once the waterfall has been satisfied, the Mortgage Loans revert to AHP by the contract's own terms. Dkt. 274 at 13. Whether that has occurred is precisely the "payment in full" question the Court reserved for trial, *id.* at 13 n.6, and that the neutral's accounting has not yet resolved. Mr. Solis's ongoing work is directed in significant part toward reconstructing the financial record necessary to resolve that reserved question. Proceeding to compel delivery before completion of that Court-directed accounting would risk granting mandatory equitable relief before the factual predicates for that relief have been established. If the waterfall has in fact been satisfied, AHP would have no continuing obligation to deliver the Mortgage Loan Documents now—regardless of the timing of any earlier non-delivery—because the underlying loans, and the documents associated with them, would already belong to AHP. An order compelling delivery before that threshold question is resolved would risk compelling AHP to surrender documents for loans it may already own outright. AHP does not ask the Court to resolve that question on this record. Rather, the point is that Cymbidium cannot, on the present record, establish that it is entitled to mandatory equitable relief where the "payment in full" and reversion issues remain unresolved and are the subject of the Court-directed accounting.

AHP recognizes that its opposition brief, in discussing irreparable harm, observed that the Court would "shortly" address these issues at trial as originally scheduled. Dkt. 307 at 11. That observation was offered in the context of the adequate-

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 9

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

remedy-at-law analysis, not as the basis for AHP's opposition generally, and AHP does not believe it should carry more weight than that. The premise underlying the Order's reservation of the damages question for trial—that a legal remedy may adequately address any breach—does not depend on how soon that trial occurs.

For the same reason, AHP does not believe that a continuance converts an otherwise adequate legal remedy into an inadequate one requiring immediate equitable intervention. Because Mr. Solis has not yet completed the accounting relevant to the "payment in full" and reversion issues the Court reserved—for  reasons that are, as set forth above, unconnected to AHP's conduct—equity does not cut in Cymbidium's favor even if the Court were to bypass the *Winter* factors. Indeed, if the Court were to grant specific performance now, only to later determine, based on the neutral's completed accounting, that AHP's reversionary rights had triggered months earlier, that would itself impose an irreparable harm running in the other direction. Especially without any protective bond, once possession of the Mortgage Loan Documents is transferred pursuant to mandatory equitable relief, that relief cannot readily be undone if the completed accounting ultimately establishes that AHP's reversionary rights had already vested. The proper course remains to complete that record and adjudicate Cymbidium's specific-performance claim on the merits, rather than grant that remedy in advance of it.

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

In sum, AHP submits that the trial date has no bearing on the remaining relief Cymbidium seeks. The Court should deny that relief, or continue to defer ruling until the record is complete and the issue of "payment in full" and reversion is resolved.

Respectfully Submitted this 2nd day of July 2026.

**BAILEY DUQUETTE P.C.**

By: */s Hozaifa Y. Cassubhai*_____
Hozaifa Y. Cassubhai, WSBA #39512
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.225.2250
E: hozaifa@baileyduquette.com
   will@baileyduquette.com
*Attorneys for Defendants*

AHP DEFENDANTS / COUNTER-PLAINTIFFS'
STATUS REPORT RE: TRIAL READINESS AND
RESPONSE TO THE COURT'S JUNE 30, 2026,
ORDER – Page 11

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869