UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYMBIDIUM RESTORATION TRUST,<br><br>Plaintiff(s),<br>v.<br><br>AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING, et al.,<br><br>Defendant(s). | CASE NO. C24-0025-KKE<br><br>ORDER ON MOTION TO DISQUALIFY |

Plaintiff/Counter-Defendant Cymbidium Restoration Trust ("Cymbidium") moves to disqualify K&L Gates LLP from representing Defendants/Counter-Plaintiffs ("AHP") in this action. Dkt. No. 375. Cymbidium argues that because K&L Gates assisted its former client Oak Harbor, LLC, in drafting a predecessor version of the contract—the Mortgage Loan Sale Agreement ("MLSA")—that lies at the heart of this lawsuit, K&L Gates may not represent AHP in this contract dispute under Washington's Rules of Professional Conduct ("RPC"). *Id.* Specifically, RPC 1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Cymbidium contends that because K&L Gates itself represented Oak Harbor, the RPC 1.9(a) conflict is imputed to the entire firm under RPC 1.10(a) ("[W]hile lawyers are associated in a

firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by [RPC] 1.7 or 1.9.”).

In opposition, AHP argues that Cymbidium is not a former client of K&L Gates and thus lacks standing to object to K&L Gates’s representation of AHP, and that Cymbidium has not produced the historical version of the form contract that would permit the Court to determine whether there is a substantial relationship between the prior representation and the MLSA at issue in this lawsuit. Dkt. No. 379. AHP also contends that the motion is untimely and to grant it now would result in significant prejudice to AHP.

The Court ordered Cymbidium to produce a copy of the historical version of the form contract *in camera*, and Cymbidium has complied. Dkt. No. 394. Based on the Court’s *in camera* review, the Court finds that Cymbidium has standing to challenge K&L Gates’s representation of AHP, and that its prior representation of Oak Harbor is substantially related to its current representation of AHP. The Court finds that the motion was timely filed and that any prejudice to AHP is self-inflicted. Accordingly, the Court will disqualify K&L Gates from representing AHP in this matter.

## I. BACKGROUND

Oak Harbor is an investment manager that manages funds, including Cymbidium, that buy and sell residential mortgage loans. Dkt. No. 376 ¶ 3. K&L Gates served as Oak Harbor’s outside counsel from 2010 until 2017. *Id.* ¶ 4. During that representation, K&L Gates drafted the form mortgage loan sale agreement that Oak Harbor uses for the trusts and funds it manages. *Id.* ¶ 6. During this time, Peter Fitzpatrick, now Oak Harbor’s general counsel, was then a partner in K&L Gates’s New York office and worked on a version of that agreement as Oak Harbor’s outside counsel. *Id.* ¶ 7. Other K&L Gates attorneys, some of whom remain at the firm, also worked on the agreement and other Oak Harbor matters. *Id.* Since then, Oak Harbor has used that agreement

("the historical contract"), or iterations of it with modest changes, in the loan transactions of the funds it manages. *Id.* ¶ 9.

On October 7, 2022, Cymbidium, acting through Oak Harbor as its manager, and AHP entered into the MLSA. Dkt. No. 376 ¶ 10. Oak Harbor negotiated the MLSA for Cymbidium using a version of the historical contract drafted by K&L Gates. *Id.* The parties amended the MLSA in March 2023. *Id.* In the months following that amendment, Cymbidium and AHP each accused the other of breaching the amended MLSA in multiple ways and asserted divergent interpretations of that contract. *See, e.g.*, Dkt. No. 234 ¶¶ 9–18, Dkt. No. 237 ¶¶ 12–21, Dkt. No. 255 ¶¶ 4–26. In November 2023, Cymbidium filed this lawsuit in King County Superior Court, bringing claims for breach of contract and conversion. Dkt. No. 1-2. AHP removed the suit to this Court in January 2024 and filed counterclaims for declaratory relief, breach of contract, conversion, and an accounting against Cymbidium. Dkt. Nos. 1, 5.

AHP has been represented by many law firms in the course of this litigation, some simultaneously. *See* Dkt. Nos. 60, 70, 99, 192, 207, 208, 321. Counsel from Bailey Duquette PC entered notices of appearance in October 2025. *See* Dkt. Nos. 207, 208. At that time, trial was set for January 2026 and AHP's new legal team informed the Court that despite the fast-approaching trial date, no continuance was needed. Dkt. No. 210. At the pretrial conference in January 2026, however, the Court vacated the trial date to allow the parties to file dispositive motions. Dkt. No. 227. Those partial summary judgment motions were granted in part and denied in part, and trial was set for July 2026 and then continued to November 2026. Dkt. Nos. 274, 283, 305, 317, 325.

On May 22, 2026, John Hagan, assistant general counsel at K&L Gates, notified Oak Harbor's CEO William Weinstein and Oak Harbor that the firm had been "asked to represent AHP Capital Management LLC and AHP Servicing LLC in connection with a matter involving yourself and Oak Harbor[.]" Dkt. No. 376 at 9. Mr. Hagan further stated that K&L Gates had screened

Rathana Vannarath, a senior practice assistant in its Seattle office who worked at Oak Harbor from 2019 to 2022. *Id.* Mr. Hagan's letter did not identify the matter that precipitated the conflict and screening notice, nor did it reference K&L Gates's prior representation of Oak Harbor. *Id.*

Oak Harbor objected on May 29, 2026, via a letter from Mr. Fitzpatrick, its general counsel noting that Mr. Fitzpatrick had provided legal services to Oak Harbor while a partner at K&L Gates and that those Oak Harbor files remain in K&L Gates's possession. Dkt. No. 376 at 14. On June 1, 2026, Mr. Hagan responded that K&L Gates saw no conflict because it "last performed work for Oak Harbor in 2017, years before … the time when the facts at issue in our AHP matter arose" and that it had "implemented a screen applicable to any such files as a precautionary measure." *Id*. at 16. On June 16, 2026, Mr. Fitzpatrick responded and explained that Oak Harbor's concern "remains unresolved" because "we have not been told the nature of K&L Gates's representation of AHP. Without that, no meaningful conflict analysis is possible." *Id*. at 19. In his email, Mr. Fitzpatrick described K&L Gates's prior work, asked for "a full description of the nature of the AHP engagement," and stated that "our objection to K&L Gates's representation stands." *Id.* Mr. Hagan replied on June 19, 2026, that he did not

> have any additional information that I can share with you about the nature of our AHP engagement, given our duty of confidentiality.
>
> As I noted earlier, our understanding is that the facts at issue in our AHP matter arose years after we last performed work for Oak Harbor. We don't see any substantial relationship between the AHP matter and our prior work for Oak Harbor. And we have the screen in place as a precautionary measure.

*Id*. at 23.

On August 3, 2026, John Bender of K&L Gates's Seattle office appeared for AHP as "additional counsel." Dkt. No. 321 at 2. The notice stated that his appearance "is in addition to, and does not replace, the appearances of existing counsel of record." *Id.* On September 14, 2026, Mr. Weinstein wrote to K&L Gates's global managing partner, renewing the objection now that

the nature of the current representation was clear and asking the firm to withdraw in this action "and in any related proceedings." Dkt. No. 376 at 28–29. On September 18, 2026, K&L Gates declined to withdraw, asking Oak Harbor to identify the related prior work. *Id*. at 31–32. On September 22, 2026, Weinstein identified the MLSA as reflecting "the same document, the same transaction structure, the same 'true sale' question, that your firm worked on during its prior representation of Oak Harbor," and asserted that K&L Gates "is arguing against us that the very agreement K&L Gates helped put in place did not accomplish what it was intended to do." *Id.* at 34–35. Oak Harbor declined to waive the conflict and again asked K&L Gates to withdraw. *Id.* K&L Gates has not withdrawn.

Cymbidium filed a motion to disqualify K&L Gates on October 7, 2026, and the parties expedited the briefing on this motion at the Court's request. Dkt. Nos. 375, 378. It is now ripe for resolution.

## II. ANALYSIS

### A. Legal Standards

"Motions to disqualify counsel are generally decided under state law and are ultimately subject to the trial court's discretion." *Bolding v. Banner Bank*, No. C17-601, 2021 WL 1171988, at *1 (W.D. Wash. Mar. 29, 2021) (citation modified). "Disqualification of counsel is a drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore, it should be imposed only when absolutely necessary." *Matter of Firestorm 1991*, 916 P.2d 411, 416 (Wash. 1996). "Washington courts are reluctant to disqualify an attorney absent compelling circumstances." *Thompson v. Seattle Pub. Sch.*, No. 2:25-CV-00468-TL, 2025 WL 2654650, at *2 (W.D. Wash. Aug. 8, 2025) (quoting *Aecon Bldgs., Inc. v. Zurich N. Am.*, No. C07-832, 2008 WL 2940599, at *2 (W.D. Wash. July 24, 2008)). The former client who seeks to disqualify an

adverse party's lawyer bears the burden of demonstrating that disqualification is appropriate. *Plein v. USAA Cas. Ins. Co.*, 463 P.3d 728, 732 (Wash. 2020).

**B. AHP's Interests are Adverse to Oak Harbor's, and Oak Harbor and Cymbidium Have Standing to Object to K&L Gates's Representation of AHP.**

It is undisputed that Oak Harbor is not a named party to this lawsuit. Nonetheless, Cymbidium contends that Oak Harbor may object here because Oak Harbor manages Cymbidium and negotiated the MLSA on Cymbidium's behalf. Dkt. No. 392 at 5. Moreover, AHP previously filed a third-party complaint against entities including Oak Harbor (Dkt. No. 12), and although that complaint was dismissed (Dkt. No. 59), litigation related to this case and the MLSA continues between AHP and Oak Harbor in this Court. *See AHP v. Oak Harbor, LLC*, No. C25-0007-KKE (W.D. Wash. 2025); *AHP v. Oak Harbor, LLC*, No. C25-0171-KKE (W.D. Wash. 2025); *AHP v. Oak Harbor, LLC*, No. C25-2445-KKE (W.D. Wash. 2025). The Court has declined to consolidate these cases with this case for practical reasons of judicial economy, but not because they do not share common questions of law or fact. *See* Dkt. No. 371.

Although AHP rightly notes (Dkt. No. 379 at 10) that Cymbidium and Oak Harbor have, at other points in this litigation, sought to emphasize that they are separate legal entities rather than affiliates, it is nonetheless clear that AHP's interests in this lawsuit are adverse to Oak Harbor's. The parties have said as much: AHP's founder confirmed that he negotiated the original MLSA and its amendment "with representatives of Oak Harbor Capital, LLC[.]" Dkt. No. 382 ¶ 2. AHP's founder also details how each side proposed changes to the contract originally circulated by Oak Harbor and drafted by Mr. Fitzpatrick, the former K&L Gates partner. *Id.* ¶¶ 5–17. Oak Harbor's CEO, Mr. Weinstein, also confirms that the MLSA was negotiated "using the form agreement that K&L Gates had prepared for Oak Harbor" during its 2010–2017 representation. Dkt. No. 376 ¶¶

4, 8, 9–11. The similarities between the historical contract, evident from the Court's review of the *in camera* submission and the MLSA, further support this perspective.

AHP suggests that Cymbidium lacks standing to object on Oak Harbor's behalf, but overlooks that Cymbidium's motion was brought with the explicit support of Oak Harbor and that, at K&L Gates's instigation, Oak Harbor has been communicating directly with K&L Gates in an attempt to resolve this issue without Court intervention. *See* Dkt. No. 376 ¶¶ 12–23. And it is undisputed that the MLSA was negotiated by AHP and Oak Harbor (on behalf of Cymbidium), which indicates that, at least for purposes of this motion, Cymbidium's interests with respect to the MLSA are coextensive with Oak Harbor's. To the extent that AHP's interests are adverse to Cymbidium's interests (as litigation opponents), they are also adverse to Oak Harbor's. Accordingly, the Court finds that Cymbidium has sufficient stake in the motion to disqualify to assure the Court that Article III has been satisfied. *See, e.g.*, *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1156 (W.D. Wash. 2006) (finding that where an ethical conflict sufficiently impacts the "just and lawful determination" of the nonclient litigant's claims and the conflict "is so intertwined with the current litigation," a nonclient litigant has standing to seek disqualification).

**C. There Is an RPC 1.9(a) Conflict Between K&L Gates's Prior Representation of Oak Harbor and its Current Representation of AHP in This Litigation.**

Attorneys practicing in the Western District of Washington must abide by Washington's RPC. Local Rules W.D. Wash. LCR 83.3(a). Again, RPC 1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

When considering whether a Rule 1.9(a) conflict exists, a court must "decide whether the former and current representation are factually related. If not, then they are not 'substantially related' within the meaning of [RPC 1.9(a)]." *Plein*, 463 P.3d at 736.

Matters are substantially related "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." RPC 1.9 cmt. 3.

Here, the Court finds the substantial relationship test is satisfied because many of the provisions of the original (unamended) MLSA appear in substantially the same form in the historical contract drafted with K&L Gates's assistance. Mr. Weinstein states that Oak Harbor worked with K&L Gates attorneys, including Mr. Fitzpatrick, to create the historical contract that Oak Harbor has used for nearly two decades since its drafting and that the MLSA in this litigation is a version of this contract with only minor alteration. Dkt. No. 393 ¶¶ 4–7.

K&L Gates does not directly dispute that its attorneys drafted the historical contract. Its general counsel submitted a declaration stating that a search of the firm's time records for the Oak Harbor matter did not reveal any references to "Mortgage Loan Sale Agreement" or "MLSA" or "Mortgage Loan Sale Agreement with Repayment Obligation" or "MLSARO." Dkt. No. 381 ¶ 3. That certain search terms could not be found in time records is not a denial that the work was in fact performed. Particularly because K&L Gates admits that it retains the Oak Harbor files and some of its attorneys who worked on Oak Harbor matters remain employed at the firm (*id.* ¶ 4), a search of the firm's time records was not the only method available to K&L Gates to determine whether the firm worked on the historical contract. The factual connection between the historical contract that K&L Gates attorneys drafted for Oak Harbor and the MLSA at the heart of this litigation is thus essentially undisputed. *See Docklight Brands v. Tilray Inc.*, No. 2:21-cv-01692-

TL, 2023 WL 5279309 (W.D. Wash. Aug. 16, 2023) (finding a substantial relationship where an attorney previously drafted an original contract for one client and later represented that client's litigation opponent in a dispute regarding an amended version of the contract, where many of the disputed contract provisions were identical or substantially identical to the original).

Furthermore, K&L Gates's drafting of the historical contract is the type of representation that is likely to involve the knowledge of facts that would be relevant to this litigation. The interpretation of the MLSA is the central issue in this case, as both Cymbidium and AHP contend that it is entitled to damages under the contract and that the other has breached the contract, based on provisions carried over from the historical contract to the MLSA. K&L Gates attorneys advised Oak Harbor "on structuring a transaction to achieve a particular legal result" in the historical form contract (Dkt. No. 376 at 34), and the information gained in that representation would undoubtedly be useful to AHP here in arguing against the result Cymbidium seeks to achieve at trial. *See Docklight*, 2023 WL 5279309 at *5 (finding it "unreasonable" to argue that in "years of providing legal advice" to an opposing party, an attorney "would not have received … confidential information regarding issues relevant to this litigation").

AHP attempts to downplay the knowledge gained as mere "familiarity with Oak Harbor's contractual practices" (Dkt. No. 379 at 12), but this characterization cannot be squared with the undisputed evidence that the firm worked on the historical contract itself. That K&L Gates's former representation and the issues presented in the current representation are so directly linked distinguishes this case from *Plein* and only heightens the potential for the disclosure of relevant confidential information. *See, e.g.*, *Reading Intern., Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1052 (9th Cir. 2016) (finding that because lawyer participated in settlement talks on behalf of one client, he had a conflict of interest that would be imputed to his firm to preclude it from representing his former client's litigation opponent in a suit arising from an alleged breach of the

settlement); *see also Docklight*, 2023 WL 5279309, at *6 (collecting cases that hold "attorneys may not attack their own work product" ).

Moreover, Mr. Bender emphasizes that he and his trial team are currently screened from K&L Gates's historic Oak Harbor files (Dkt. No. 380 ¶ 3), but this screen was erected at least a week after AHP retained K&L Gates and was initiated regarding an apparently different (and still undisclosed) matter.[1] *See* Dkt. No. 381 ¶¶ 2, 6–7. AHP has submitted evidence suggesting that current K&L Gates attorneys are likely to have confidential information and that such information is likely located in K&L Gates's files. *See id.* ¶¶ 4, 7.

Because the Court is satisfied that K&L Gates's prior representation of Oak Harbor is factually connected to its current representation of AHP, such that it is likely that its attorneys gained information in its former representation that would be useful in this litigation—regardless of whether such information was in fact shared with the firm's attorneys currently litigating this matter—RPCs 1.9 and 1.10 operate to impute a conflict to the entire firm.

**D. Cymbidium Did Not Delay in Moving to Disqualify.**

The "failure to act promptly in filing a motion for disqualification *may* warrant denial of [the] motion." *First Small Bus. Inv. Co. of Calif. v. Intercapital Corp. of Or.*, 738 P.2d 263, 270 (Wash. 1987) ("This court will not allow a litigant to delay filing a motion to disqualify to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation

[1] Cymbidium notes that it was not notified of any screen other than the one placed on the former Oak Harbor employee who now works as a legal assistant at K&L Gates. Dkt. No. 392 at 6. Mr. Hagan clarified in his declaration that that screen was established regarding a separate matter that "did not include representing AHP in [] this litigation." Dkt. No. 381 ¶ 2. To the extent that K&L Gates suggests that its screening measures have nullified any conflict under RPC 1.10(e), it has failed to comply with the requirements of that rule. It did not notify Oak Harbor of the full extent of its screening procedures, nor has it attempted to demonstrate that none of the confidential information relating to the firm's prior representation of Oak Harbor was transmitted to anyone on the current AHP litigation team. Finally, AHP does not respond to Cymbidium's argument that a conflict of this nature cannot be cured by any screening measure. Dkt. No. 375 at 11.

of a case has been completed." (quoting *Cent. Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978))).

AHP contends that the disqualification motion should be denied as untimely because it was not filed until "months after" the conflict was revealed, and the conflict should be therefore considered waived. Dkt. No. 379 at 13–14. Although K&L Gates disclosed the existence of a different conflict in May 2026 (Dkt. No. 381 ¶ 2), neither Cymbidium nor Oak Harbor was aware of the conflict with respect to *this* case until Mr. Bender filed his notice of appearance on August 3, 2026. Mr. Weinstein contacted K&L Gates twice in September 2026, attempting to resolve this issue without court intervention. *See* Dkt. No. 376 ¶¶ 18–20. When those efforts proved unsuccessful, the disqualification motion was filed on October 7, 2026. Dkt. No. 375.

Although the disqualification motion was filed less than a month before trial, it was filed only two months after Oak Harbor became aware of the conflict and the intervening time was spent attempting to resolve the conflict without motions practice. This timeline reflects diligence, not delay. *See, e.g., U.S. for Use and Benefit of Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1567 (W.D. Wash. 1986) (finding two-month gap between discovery of a conflict and the filing of a disqualification motion to reflect "sufficient diligence to avoid a waiver"); *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, 2007 WL 3203056, at *2 (N.D. Cal. Oct. 29, 2007) (two-month delay in filing motion while parties attempted to resolve dispute informally did not support waiver). AHP cites cases involving longer delays of six or eight months. *See* Dkt. No. 379 at 13–14 (citing *Bolding*, 2021 WL 1171988, at *1–2; *Goldmanis v. Insinger*, No. C13-2035-JCC, 2014 WL 3739430, at *6 (W.D. Wash. July 29, 2014)). Because the Court finds that Cymbidium moved with sufficient diligence, the Court will not deny the motion on timeliness grounds.

**E. Disqualifying K&L Gates Would Not Result in Extreme Prejudice to AHP.**

Finally, AHP argues that to disqualify K&L Gates on the eve of trial would "require AHP to find and hire new attorneys and allow them time to master extensive accounting records, expert evidence, and trial issues on an impossibly compressed schedule." Dkt. No. 379 at 14. AHP contends that the Court should therefore deny the motion to avoid imposing this "substantial" tactical prejudice.

This argument overlooks that AHP has been and remains represented by another law firm in addition to K&L Gates, and that this firm prepared for a January 2026 trial up until a last-minute continuance, filed and argued dispositive motions, and managed the first half of the expert evidence phase before K&L Gates appeared approximately three months before trial. Before K&L Gates appeared, AHP's counsel had never informed the Court—despite multiple opportunities to do so—that it was unable to litigate this case without the assistance of another firm. And K&L Gates had been notified that Oak Harbor refused to consent to its representation of AHP in another matter months before Mr. Bender entered his notice of appearance in this case.

Under these circumstances, because Mr. Bender entered a notice of appearance less than three months ago and AHP will not be left without counsel on the eve of trial, the Court does not find prejudice to be a barrier to disqualification. *Reading*, 814 F.3d at 1053 (noting that although disqualification is a drastic remedy, the disqualified firm accepted that risk because it knew of the conflict, which was not "attenuated," beforehand); *Avocent Redmond Corp. v. Rose Elecs.*, 491 F. Supp. 2d 1000, 1011 (W.D. Wash. 2007) (finding that disqualification would result in "minimal" prejudice because defendants were represented by another firm as well as the disqualified firm, and the disqualified firm had "entered an appearance in this matter only three months ago"); *FMC Techs.*, 420 F. Supp. 2d at 1162 ("Any prejudice Defendants face is due to their attorneys' decision to ignore a conflict of interest, not this Court's decision to grant Plaintiffs' motion.").

## III. CONCLUSION

For these reasons, the Court GRANTS the motion to disqualify. Dkt. No. 375. K&L Gates and its attorneys are disqualified from representing AHP in this matter. K&L Gates shall not disclose to AHP or its other counsel any information related to its prior representation of Oak Harbor and shall certify its compliance with this requirement no later than October 30, 2026.

Dated this 26th day of October, 2026.

Kymberly K. Evanson
United States District Judge