HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYMBIDIUM RESTORATION TRUST,

Plaintiff,

v.

AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING; ITS TRUSTEE, U.S. BANK TRUST N.A.; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+; ITS TRUSTEE, U.S. BANK TRUST NATIONAL ASSOCIATION; AHP SERVICING, LLC; AND JORGE NEWBERY,

Defendants.

AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING.; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+; and; AHP SERVICING, LLC,

Counter-Plaintiffs / Third-Party Plaintiffs

v.

CYMBIDIUM RESTORATION TRUST; MAGERICK, LLC

Counter-Defendant / Third-Party Defendant

Case No. 2:24-cv-00025-KKE

AHP DEFENDANT / COUNTER-PLAINTIFFS EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S ORDER ON MOTION TO DISQUALIFY

NOTED FOR CONSIDERATION: OCTOBER 27, 2026



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

## I. INTRODUCTION

AHP moves under LCR 7(h) for reconsideration of the October 26, 2026 Order disqualifying K&L Gates LLP (Dkt. 396) and for immediate interim relief. Respectfully, the Order raises serious concerns of both substantive and procedural fairness. It rests on material factual assumptions that the cited record does not establish, while relying on evidence that AHP never had an opportunity to examine or address. The consequences are substantial. AHP has lost a significant part of its trial team just seven days before trial.

Most importantly, the Court characterized the factual connection between K&L's historical work and the MLSA at issue as "essentially undisputed." Dkt. 396 at 8. But AHP never conceded that connection. The record did not resolve the nature or extent of K&L's involvement in drafting the historical agreement submitted to the Court. In short, it is disputed.

Nor could AHP independently assess that claim. The Court received the historical agreement *in camera*, after expressly stating that AHP possessed it. Dkt. 394 at 1. That premise was incorrect. Neither AHP nor its trial counsel had (or has) access to the document, yet the Court relied on its private comparison to resolve the central substantial-relationship question.

The factual problems do not end there. The Order attributes to K&L's general counsel statements he did not make, treats the continued employment of unidentified historical attorneys for Oak Harbor as established, and imputes the resulting conflict to the entire firm without addressing the rule governing imputation after a lawyer's departure.

These are not minor discrepancies or simply disagreements over the weight of evidence. They concern the factual and legal predicates for disqualification—predicates that warranted careful examination before imposing so consequential a remedy on the eve of trial.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

The prejudice is immediate and substantial. K&L's disqualification removes counsel who deposed the Court-appointed expert and whose team has been principally responsible for preparing thousands of exhibits and other trial work product. Since the entry of the Order yesterday, the ruling has forced AHP's remaining counsel to divert critical time from the upcoming pre-trial hearing and final trial preparation to address the disqualification and its consequences. Bailey Duquette will continue preparing for November 2, but that is not a concession that AHP can fairly proceed on that date if K&L remains disqualified. AHP respectfully requests immediate reconsideration and appropriate interim relief.

## II. ARGUMENT

### A. Legal Standard

Under LCR 7(h)(1)–(2), reconsideration is appropriate upon a showing of manifest error or new facts or authority that could not previously have been brought to the Court's attention through reasonable diligence. The movant must identify the matters overlooked or misapprehended and the relief sought. Reconsideration does not itself stay proceedings; and no response is permitted or reconsideration granted unless the Court requests one. LCR 7(h)(2)–(3).

### B. The Court Treated K&L's Alleged Drafting of the Historical Document as Undisputed, Without Establishing the Document's Origins or Permitting AHP to Examine It.

The Order states that the connection between the historical contract "that K&L Gates attorneys drafted" and the MLSA in this case is "essentially undisputed." Dkt. 396 at 8. But K&L's involvement in drafting that historical agreement was not established as an undisputed fact.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Specifically, William Weinstein asserted that K&L drafted an Oak Harbor form agreement and that former K&L partner Peter Fitzpatrick worked on a version of it. Dkts. 376 ¶¶ 6–8; 393 ¶¶ 4–6. But Fitzpatrick, the attorney identified as having performed the historical work, submitted no declaration. Nor is AHP aware of any contemporaneous drafting record that would establish the document's authorship. Meanwhile, K&L's Assistant General Counsel, John Hagan, declared that a search of the firm's historical time records "revealed no references to 'Mortgage Loan Sale Agreement,' 'MLSA,' 'Mortgage Loan Sale Agreement with Repurchase Obligation,' or 'MLSARO.'" Dkt. 381 ¶ 3. This record does not establish the factual connection as "essentially undisputed."

Compounding this problem, the Court stated on October 22 that both sides "have a copy of the historical contract." Dkt. 394 at 1. That was (and is) incorrect. Neither AHP nor Bailey Duquette possesses the historical agreement submitted *in camera*, and K&L's AHP trial team was screened from historical Oak Harbor files. Dkts. 380 ¶ 3; 381 ¶ 7; *see also* Cassubhai Decl. AHP's opposition expressly noted Cymbidium's failure to produce the historical agreement. Dkt. 379 at 4, 11–12.

The Court then relied on its private comparison to find substantial similarities between that document and the original, unamended MLSA. Dkt. 396 at 8–9. AHP never had an opportunity to examine the document's date, provenance, drafting history, intervening revisions, or the particular provisions compared. That raises serious procedural fairness concerns.

AHP does not categorically object to *in camera* review. But where the undisclosed document supplies material evidence supporting disqualification, the affected party should have a meaningful opportunity to address it through appropriate safeguards. *See United States v. Kenney*, 911 F.2d 315, 320–21 (9th Cir. 1990). AHP requests protected access to the relevant



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

nonprivileged contractual provisions, or another procedure allowing it to test the historical document on which the Court relied.

### C. The Order Attributes to Hagan's Declaration Statements He Did Not Make and Facts It Did Not Establish

The Order also states that K&L "admits" some attorneys who worked on Oak Harbor matters remain employed at the firm, citing ¶ 4 of John Hagan's declaration. Dkt. 396 at 8. But Hagan made no such admission. He stated only that "[n]o attorney who represented Oak Harbor in the historical matters was assigned to the AHP litigation team." Dkt. 381 ¶ 4. It does not identify any attorney who remains at K&L.

The Order then again relies on ¶¶ 4 and 7 of Hagan's declaration to conclude that current K&L attorneys likely possess confidential Oak Harbor information. Dkt. 396 at 10. But ¶ 7 describes the screen preventing AHP's litigation team from accessing historical Oak Harbor records. Neither paragraph establishes the proposition attributed to it.

Nor do Weinstein's declarations fill that gap. He claims that Fitzpatrick identified at least *fifteen* K&L attorneys who worked on historical Oak Harbor matters, including the Master MLSA form. But he names no one, does not distinguish those who worked on the form from those who handled other matters, and does not state whether any remain at K&L. The assertion is attributed to Fitzpatrick, who again submitted no declaration.

The point is not that Cymbidium must disclose privileged communications. It need not. But Cymbidium still bears the burden of establishing the facts from which the Court may reasonably infer a disqualifying conflict. *Plein v. USAA Casualty Insurance Co.*, 195 Wn.2d



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

677, 686–96 (2020). The cited record does not establish the findings concerning attorneys remaining at K&L.[1]

**D. The Order Does Not Address the Imputation Rule Applicable After a Lawyer's Departure.**

Because Fitzpatrick is the only specifically identified attorney alleged to have performed historical drafting, and because he left K&L in 2013 (*i.e.*, 13 years ago), the Order needs to, at a minimum, address RPC 1.10(b). Under that rule, when a lawyer has terminated an association with a firm, the firm (K&L) may represent an adverse party unless both (a) the current matter is the same as or substantially related to the matter in which the departed lawyer represented the client; **and** (b) a lawyer remaining at the firm has information protected by RPCs 1.6 and 1.9 that is material to the matter.

The Order applies RPCs 1.9 and 1.10(a), but does not address subsection (b), distinguish the departed Fitzpatrick's knowledge from that of attorneys currently at K&L, or explain whether any remaining lawyer independently possesses material protected information sufficient to support imputation under subsection (a). No lawyer allegedly involved in the historical drafting who remains at K&L has been identified in the submitted evidence. That is not a minor omission given the rule's requirements.

AHP requests that the Court reconsider the imputation analysis under the applicable rule. If additional evidence is necessary, Rule 43(c) permits testimony or sworn submissions on a motion. AHP requests a limited opportunity to establish the historical agreement's authorship, identify the attorneys who actually worked on it, and determine whether any remain at K&L.

[1] To be clear, K&L has not indicated that it is aware of what attorneys, if any, are at the firm who worked on any prior Oak Harbor matter, let alone the form in question. But, out of an abundance of caution, it put an ethical wall in place. The existence of the ethical wall itself is not an admission of a conflict.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Fitzpatrick is the firsthand witness to the alleged historical drafting. These questions can be addressed without requiring disclosure of privileged advice.

**E. The Disqualification Creates Immediate and Substantial Trial Prejudice Requiring Interim Relief and/or a Scheduling Conference.**

The Court's prejudice analysis relies heavily on Bailey Duquette's continued appearance and preparation for the January 2026 trial. Dkt. 396 at 12. But that does not account for how substantially the case—and AHP's trial preparations—have changed since then. There have been more than 150 docket entries since January, including substantive dispositive and non-dispositive motions practice. Since then, the Court appointed a neutral accounting expert, the financial record expanded by tens of thousands of documents, and the expert issued successive reports addressing accounting issues that were not part of the earlier trial preparations.

AHP structured its trial team around John Bender of K&L and Hozaifa Cassubhai of Bailey Duquette trying the case together. Bender was retained specifically for his experience litigating complex accounting disputes. He conducted Solis's deposition on October 20, and his K&L team has been principally responsible for preparing more than 3,500 trial exhibits and substantial related work product. Dkt. 380 ¶¶ 2–7; *see also* Cassubhai Decl. In short, K&L was expected to play a significant role at trial, including for developing and presenting accounting evidence.

Moreover, William Burnside, the only other Bailey Duquette attorney of record, is departing the firm end of this month to join another firm and has already started filing notices of withdrawals from Bailey Duquette matters. That departure was arranged independently of this dispute, and he was preparing to file this week a withdrawal notice in this case. Burnside was not contemplated to be on the trial team, and he will not be available to assume K&L's role.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

The prejudice is not hypothetical. It is happening now. K&L ceased work when the Order issued. Bailey Duquette is now diverting substantial time from final trial preparation to determine how to assume or transfer substantial responsibilities just days before trial. In the hours since the Order, undersigned counsel has been required to devote significant time, including overnight hours, to emergency motion practice and evaluating the available options rather than preparing for today's hearing and completing other critical trial preparations. *See* Cassubhai Decl. Even if reconsideration is granted later this week, that lost preparation time cannot simply be recovered. If disqualification stands, the disruption will be substantially greater.

The Court found that K&L assumed a conflict risk. But whatever risk K&L may have assumed does not resolve the separate question whether AHP can fairly try this complex case after losing a part of its trial team just seven days before trial. The continued presence of Bailey Duquette does not eliminate the prejudice caused by removing K&L at this juncture.

AHP therefore requests an immediate stay of disqualification pending expedited reconsideration, subject to continued protection of Oak Harbor's confidential information. AHP continues preparing for November 2, but does not concede that it can fairly proceed on that date. If the Court declines to stay or reconsider disqualification, AHP requests an immediate scheduling conference to permit an orderly transition. AHP seeks neither to reopen discovery nor to expand the issues for trial.

**III. CONCLUSION**

AHP respectfully requests that the Court: (1) immediately stay K&L's disqualification pending expedited reconsideration, while preserving confidentiality protections; (2) request an expedited response and oral argument; (3) permit a protected procedure for AHP to address the



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

historical agreement; (4) permit limited supplemental evidence or testimony concerning the historical drafting work and the attorneys allegedly remaining at K&L, if necessary; (5) reconsider and vacate or modify the Court's October 26 Order on the corrected record; and (6) promptly address scheduling if disqualification remains effective.

Respectfully Submitted this 27th day of October 2026.

**BAILEY DUQUETTE P.C.**

By: */s Hozaifa Y. Cassubhai*
Hozaifa Y. Cassubhai, WSBA #39512
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.225.2250
E: hozaifa@baileyduquette.com
*Attorneys for Defendants/Counter-Plaintiffs*