The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CYMBIDIUM RESTORATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING; its Trustee, U.S. BANK TRUST N.A.; AHP CAPITAL MANAGEMENT, LLC; AMERICAN HOMEOWNER PRESERVATION SERIES 2015A+; its Trustee, U.S. BANK TRUST NATIONAL ASSOCIATION; AHP SERVICING, LLC; and JORGE NEWBERY,<br><br>Defendants. | NO. 2:24-cv-00025-KKE<br><br>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER ON MOTION TO DISQUALIFY<br><br>NOTED FOR CONSIDERATION: NOVEMBER 2, 2026 |

## I. INTRODUCTION

AHP's motion does not identify any manifest error or fact that could not have been presented before the Court ruled. Instead, it asks the Court to rethink and decide differently a question the Court decided on a full record, and it asks Cymbidium to pay for the new answer by sacrificing and jeopardizing the many confidential client communications K&L Gates had with Oak Harbor regarding many of the same contract issues being litigated in this case. The Court should deny the motion and keep this case on track for trial in November.

Every problem AHP now describes traces to a choice AHP or K&L Gates made, or that they made together. K&L Gates ran a conflict check before it accepted the engagement on behalf



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

of AHP; that check necessarily disclosed Oak Harbor as a former client. The firm then told Oak Harbor only that it had been asked to represent AHP in "a matter involving" Oak Harbor, refused for months to say what the matter was, dismissively brushed aside its former client's objection[1], and appeared in this case anyway. Dkt. 376, Exs. A–E; Dkt. 396 at 3–5. When Cymbidium moved to disqualify, K&L Gates answered with a keyword search of its time records rather than a review of its files, and it never addressed RPC 1.10(e) or the "attack your own work" comment to RPC 1.9. Dkt. 381 ¶ 3; Dkt. 392 at 1–2, 6. The Court noted at the hearing earlier this week that the record K&L Gates supplied "was not particularly illuminating." Tr. 23:18–24 (Oct. 27, 2026). AHP now seeks a do-over because of the gaps its prior opposition left unopposed and unanswered.

The new facts AHP offers are not new and do not help it. AHP says it did not have the historical contract. But its chosen counsel drafted that contract, holds the voluminous Oak Harbor files for over seven different engagement matters, and employs lawyers who worked on it. AHP now says the K&L Gates attorneys that have appeared in this case were unaware of the conflict issues. Even if true, that is irrelevant. Senior leadership at K&L Gates was made aware of it early on by Oak Harbor, and whomever the unidentified K&L Gates attorney is who originated the AHP engagement and reviewed the initial internal conflict results certainly knew about the prior Oak Harbor representation and the need to inquire further regarding the substantial relationship issue before taking on the engagement. In any event, that reflects a failure of communication within K&L Gates, between the originating attorney and the attorneys and personnel who ran the conflict check, senior leadership in the firm that fielded Oak Harbor's objections, and the lawyers who subsequently formally appeared. The issue is not whether the

[1] K&L Gates was obligated to inform AHP of Oak Harbor's initial objection and presumably, it did so. The decision to proceed and brush aside Oak Harbor's objections therefore is not a decision made by K&L Gates alone. It is a decision AHP and K&L Gates made together knowing, prior to K&L Gates' formal appearance, that K&L Gates' former client was objecting to.



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

lawyers who appeared knew or had a conflict. The issue is: was K&L informed up front that its former client was objecting and did the firm have a conflict.

AHP's counsel also faulted Cymbidium for not objecting sooner or while K&L Gates attorneys were interacting with Cymbidium's counsel. But Oak Harbor had already communicated its objection directly to K&L Gates before the firm appeared, then again after the firm appeared, and the firm's conduct after the motion to disqualify was filed shows that an earlier objection would have changed nothing: K&L Gates kept assembling AHP's exhibits, and AHP chose to have Mr. Bender, rather than Mr. Cassubhai, depose the Court-appointed expert on October 20 (after the disqualification motion was filed), even though Mr. Cassubhai had handled the accounting exercise and Mr. Solis's work from the beginning, was corresponding with him as recently as last week, and in any event, Mr. Cassubhai was present at the entire Solis deposition and presumably was substantively participating in it in a supporting role. Dkt. 397 at 3, 7; Tr. 22:14–16; Molina Decl. ¶ 2. AHP says no one has shown that the lawyers who did the Oak Harbor work remain at K&L Gates. Cymbidium now shows exactly that. K&L Gates invoices to Ophrys, LLC (Oak Harbor's prior name) for work performed in 2014, 2016, and 2017[2], after Mr. Fitzpatrick had left, names five timekeepers who reviewed loan agreements and drafted legal opinions for Oak Harbor's loan transactions. Oak Harbor could locate only a handful of the firm's invoices in the forty-eight hours available; the complete set is in K&L Gates's files. But the entries Oak Harbor did find include the very extensive deep dive K&L Gates did analyzing and providing an opinion concerning whether transactions such as these would be treated as a "true sale" or a loan, work that included the review of the form agreement for Oak Harbor in 2014 and on Oak Harbor's 2017 non-performing-loan securitization, and Oak Harbor's email records show the same work in 2016. Fitzpatrick Decl. ¶ 4, Exs. A-C; Weinstein Decl. ¶¶ 5-7, Exs. A-B. Oak Harbor also located K&L Gates's April 14, 2017 draft true sale and non-

[2] These are redacted and only show the timekeepers because Oak Harbor should not be required to disclose confidential information when K & L Gates has access to the invoices as well.



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

consolidation opinion, copied to two of the 2014 invoice's timekeepers, which Cymbidium submits under seal for the Court's in camera review only. Weinstein Decl. ¶ 6, Ex. B (filed under seal).

And AHP says it has lost half its trial team because Mr. Burnside is leaving Bailey Duquette. AHP's own motion concedes that Mr. Burnside "was not contemplated to be on the trial team." Dkt. 397 at 7. Despite that he signed AHP's opposition to the disqualification motion, attended the September 25 hearing, and remains a Washington lawyer and until yesterday was still counsel of record. Dkt. 379 at 15. Nothing prevents him from either (i) delaying his departure a week or two to fulfill professional obligations to his client, AHP, or (ii) continuing to assist AHP for another week or two from his new firm.  Any issues arising from Mr. Burnside's change of firms does not take precedence over conflicts issues under the RPCs, and they are not issues that Cymbidium or the Court has any obligation to fix.

What AHP really asks is that Cymbidium bear the consequences of the choices it and its counsel made. The Court has said it will not require Mr. Cassubhai to try this case alone. Tr. 17:2–10. That leaves Cymbidium, which did nothing but assert its manager's rights as a significant, multi-year former K&L Gates client, facing two outcomes it did not create: K&L Gates returns to litigate against its former client the meaning and intent of the contract it drafted, over Oak Harbor's objection; or the November 2 trial date Cymbidium has held since July is pushed again so that Bailey Duquette can replace a departing lawyer who, two days ago we learn for the first time that, according to AHP, was not going to try the case anyway. Neither is a result the RPCs permit the Court to impose on the former client. The conflict is K&L Gates's. The staffing is Bailey Duquette's. The decision to build a trial team around a firm that had already been told its former client would not consent was AHP's. *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1053 (9th Cir. 2016) (firm that proceeded despite a known, non-attenuated conflict accepted the risk of disqualification); *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1153, 1162 (W.D. Wash. 2006) (prejudice flowing from counsel's decision to ignore a conflict is not a basis to deny disqualification).

Bailey Duquette has represented AHP for more than a year and filed all principal briefing. Dkt. 207; Dkt. 392 at 7. It has lawyers beyond Mr. Cassubhai who know this dispute, including Derrick F. Moore, who in August 2026 filed a detailed affirmation in a New York foreclosure action describing this case, the MLSA, the Court's May 4, 2026 order, and the court-ordered accounting.[3] Molina Decl. ¶ 4, Ex. 2. The Court should deny reconsideration, deny the requested stay, and set trial for the earliest available date in November.

## II. RELEVANT FACTS

### A. The Prejudice AHP Describes Is Self-Inflicted, and Mr. Burnside's Departure Is Neither New Nor Material.

<u>The timeline of choices</u>.

The Court correctly concluded that any prejudice to AHP "is self-inflicted." Dkt. 396 at 2, 12. The motion for reconsideration does not engage with that finding; it restates the burden. The record is worth laying out plainly, because every link in it is a decision by AHP or K&L Gates or both.

1. Before accepting AHP's engagement in May 2026, K&L Gates ran a conflict check.[4] K&L Gates' prior representation of Oak Harbor, a client the firm billed more than $1 million regarding more than seven matters over seven years, necessarily surfaced.
2. On May 22, 2026, the firm notified Oak Harbor of a screen for a former Oak Harbor assistant and said only that it had been asked to represent AHP in "a

---

[3] Cymbidium does not adopt Mr. Moore's characterization of this case, and it disputes AHP's position in that action that AHP may retain the proceeds of the sale notwithstanding that the deed was held in Magerick's name and possession—an issue being actively litigated there. That dispute only underscores the point: every month of delay here is another month in which Cymbidium's assets are sold off and the proceeds contested in other forums.

[4] This assumes K&L Gates complied with RCP 1.7, comment [3] and RPC 5.1(a).



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

matter involving" Mr. Weinstein and Oak Harbor. It did not mention its own prior representation. Dkt. 376, Ex. A.

3. Oak Harbor objected within a week and inquired about the nature of the matter. The firm refused to say, on June 1 and again on June 19, claiming confidentiality prevented it from doing so[5]. Dkt. 376, Exs. B–E. Oak Harbor could not further evaluate a conflict whose subject its former counsel would not disclose.

4. On May 29, the same day Oak Harbor objected, the firm now says it screened its AHP timekeepers from the Oak Harbor files. Dkt. 381 ¶ 7. It did not tell Oak Harbor that screen existed. Dkt. 392 at 6.

5. On August 3, over Oak Harbor's standing objection, the firm appeared in this case as "additional counsel." Dkt. 321.

6. Oak Harbor asked the firm to withdraw on September 14 and again on September 22. The firm refused. Dkt. 376, Exs. F–H.

7. At the hearing on September 25, AHP was represented by Mr. Cassubhai, Mr. Burnside, and Mr. Bender. Mr. Cassubhai argued all of the many motions that day except for one.

8. Cymbidium moved on October 7. In opposition, K&L Gates offered a keyword search and an ethics consultant and did not address RPC 1.9 cmt. [1], RPC 1.10(e), or whether anyone who worked for Oak Harbor remained at the firm. Dkt. 379; Dkt. 381; Dkt. 392 at 1–2.

9. On October 20, AHP chose to have Mr. Bender, rather than Mr. Cassubhai, depose the Court-appointed expert. Mr. Cassubhai was present throughout that deposition, and he had handled the accounting exercise and the expert's work from the outset and remained in contact with him as recently as last week. Tr.

[5] If it was confidential, AHP could have, but apparently did not, give consent to K&L Gates to disclose that the potential engagement was this case.



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

22:14–16; Molina Decl. ¶ 3. K&L Gates continued to assemble AHP's exhibits throughout. Dkt. 397 at 3, 7.

10. Throughout, including since October 7 when the disqualification motion was filed, AHP says it "structured its trial team" around a firm it knew had been told the former client took the position there was a conflict and would not consent. Dkt. 397 at 7; Dkt. 376, Exs. B, D, H.

A party that supposedly builds its trial team on a conflicted firm after the former client has objected assumes the risk that the objection will be sustained. *Reading*, 814 F.3d at 1053; *FMC Techs.*, 420 F. Supp. 2d at 1162 ("Any prejudice Defendants face is due to their attorneys' decision to ignore a conflict of interest, not this Court's decision to grant Plaintiffs' motion."). AHP's motion offers no reason to revisit that sound principle. When the objection was first raised in May, AHP had the option of choosing any one of the hundreds of other capable unconflicted law firms if it wanted to augment its team. It chose not to. Any prejudice it claims is the consequence of the risk AHP took presumably after being advised of that risk by K&L Gates.

<u>Mr. Burnside's departure is not a new fact that could not have been raised earlier</u>.

AHP presents Mr. Burnside's departure as a development that it argues changes the prejudice calculus. Dkt. 397 at 7. His departure does not qualify under LCR 7(h)(1). By AHP's own account, the departure "was arranged independently of this dispute," he had already begun filing withdrawal notices in other matters, and a draft withdrawal notice for this case was circulating before the Order issued. Dkt. 397 at 7; Tr. 19:23–20:8. AHP's counsel told the Court he held the notice back after the Order "because I wanted to not look cute about the timing." Tr. 20:4–8. A fact AHP knew and chose not to disclose while the motion was pending is not a fact that "could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h)(1).



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

<u>A personnel transition at AHP's law firm is not a burden that can be foisted on Cymbidium, and it cannot outweigh a conflict the Rules say cannot be cured</u>.

Stripped of its framing, AHP's argument is that Bailey Duquette's staffing should decide whether Oak Harbor's former lawyers can try this case and litigate against Oak Harbor regarding the same contract it originally drafted—including (as shown below) central issues like the "true sale" issue about which K&L Gates previously provided extensive legal advice. The Rules do not work that way. RPC 1.9 and 1.10 protect the former client; they contain no exception for the adversary's convenience. The prejudice a court weighs in exercising its discretion is prejudice caused by disqualification, not prejudice the opposing party has caused itself. If a resignation at the adversary's firm were enough to overcome a conflict that no screen can cure, no disqualification order would survive the week it was entered.

The facts make the point sharper. Mr. Burnside is a Washington lawyer who has been counsel of record for AHP since October 2025, signed AHP's opposition to the disqualification motion, and attended the September 25 hearing. Dkt. 207; Dkt. 379 at 15. He is changing firms, not leaving the bar. A lawyer who changes firms takes his obligations to his clients with him; RPC 1.16 does not permit a withdrawal that materially harms the client, and nothing prevents Mr. Burnside from either delaying his departure a few weeks or continuing on this case from his new firm, as lawyers do routinely. Bailey Duquette's obligations to AHP likewise do not end because one lawyer is moving. The firm's explanation that it lacks litigators who can "fly in" and appear in Seattle, Tr. 22:9–13, describes a business model AHP chose when it retained the firm, and chose again when it added a conflicted second firm rather than an unconflicted one.

Bailey Duquette also has lawyers who have familiarity with this dispute sufficient for them to be involved in other litigation touching on some of the same issues. On August 11, 2026, Derrick F. Moore, Of Counsel to Bailey Duquette, filed a supplemental reply affirmation on AHP's behalf in Nassau County Supreme Court that recounts this case in detail: the MLSA and



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

its amendment, the Court's May 4, 2026 order and the June 11, 2026 denial of reconsideration, the court-appointed accounting expert, and Dkt. Nos. 281 and 323, which he attached as exhibits. Molina Decl. ¶ 4, Ex. 2 (NYSCEF Doc. No. 63, U.S. Bank Tr. N.A. v. Messina, Index No. 001300/2016). Mr. Moore affirmed that he had "reviewed AHP's relevant files" and was "fully familiar with the facts and proceedings." *Id.* ¶ 1. He can be admitted pro hac vice. AHP's assertion that it has no one but Mr. Cassubhai is contradicted by its own filings in a sister action about these same parties and this same contract.

AHP has also been represented by at least seven sets of counsel in this case. Dkt. 396 at 3 (*citing* Dkt. Nos. 60, 70, 99, 192, 207, 208, 321). This case was continued once already because AHP changed lawyers. Dkt. 227. A former client's rights under RPC 1.9 and 1.10 do not depend on the staffing decisions of the adversary's law firm, and a plaintiff that has done nothing but assert those rights should not lose its trial date because of them. Mr. Keller put the question fairly at the hearing: why should the client's "rights and privileges and confidences hinge on some apparent personnel development by a number two on the other side?" Tr. 16:22–25. The motion offers no answer.

<u>The "3,500 exhibits" and K&L Gates's back-office work are transferable</u>.

AHP emphasizes that K&L Gates's team prepared exhibits and trial work product. Dkt. 397 at 3, 7. Exhibits are the parties' own documents, already exchanged and the subject of hundreds of emails between the firms. Tr. 22:1–8. The Order bars K&L Gates from disclosing information relating to its prior representation of Oak Harbor. Dkt. 396 at 13. It does not bar the firm from delivering to Bailey Duquette the exhibit sets, deposition designations, and other trial materials it prepared in this case.

## III. LEGAL STANDARD

"Motions for reconsideration are disfavored." LCR 7(h)(1). The Court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

reasonable diligence." *Id*. That standard is a "high hurdle." *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1118 (W.D. Wash. 2010). Reconsideration is not a vehicle to ask the Court to "rethink what it had already thought through—rightly or wrongly," *Wilcox v. Hamilton Constr.*, LLC, 426 F. Supp. 3d 788, 791 (W.D. Wash. 2019), or to raise arguments and evidence that could have been presented in the original briefing. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (reconsideration appropriate only in "highly unusual circumstances").

The motion to disqualify was briefed on an expedited schedule at the Court's request, with a response from K&L Gates and declarations from the firm's assistant general counsel, Mr. Bender, Mr. Newbery, and a retained ethics consultant. Dkt. Nos. 378–382. AHP had every opportunity to put in the record it now says is missing. K& L Gates chose a keyword search. The absence of evidence AHP could have gathered from its own counsel's files is not "new facts" under LCR 7(h)(1); it is the record AHP elected to make.

## IV. ARGUMENT

### A. The Court's *In Camera* Review of the Historical Contract Was Proper, and AHP Did Not Need to See the Historical Contract When the Motion Was Directed at K&L Gates' Conflict and K&L Gates Could Review Its Own File.

AHP's lead argument is that the Court relied on a document AHP "never had an opportunity to examine." Dkt. 397 at 2, 4. Following the October 27 hearing, Cymbidium provided the historical contract on an attorneys'-eyes-only basis, without waiver of privilege, consistent with the Order. AHP's counsel can now make the same comparison the Court made, and the "protected procedure" AHP requested (Dkt. 397 at 4–5, 8–9) has been supplied voluntarily. Nothing about that production should delay trial, and nothing in the document will change the result. The argument was also not well taken, for three reasons.

**First, the document is K&L Gates's own work product, and K&L Gates has it.** The historical contract was drafted at K&L Gates, for Oak Harbor, by K&L Gates lawyers. Dkt. 376



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

¶¶ 6–8; Dkt. 393 ¶¶ 4–7. The firm admits it "retains" the Oak Harbor files. Dkt. 381 ¶ 7; Dkt. 376, Ex. C. AHP's position reduces to this: its counsel wrote the document, keeps the document, and employs lawyers who worked on it, but AHP should be excused from the comparison because it did not ask its counsel to look. That is not a deprivation of process. It was a choice made to tried to skirt the issue in its opposition to the motion for disqualification.

AHP says its trial team "was screened from historical Oak Harbor files." Dkt. 397 at 4. However, the "trial team" is not the firm, and Mr. Hagan, who is the general counsel for K&L Gates, could have looked through their files, however K&L Gates chose to use that screening as a reason to wall itself from its own files, decline to compare them, and then claim the former client's *in camera* submission was unfair because the firm could not see it. The screen also confirms what AHP disputes: K&L Gates understood that its Oak Harbor files contain information its AHP team should not have.

**Second, *in camera* review is how courts protect a former client's confidences in exactly this posture.** The former client "need not reveal its confidences to prove the point"; the Court "may infer what was learned from the nature of the services the lawyer provided." RPC 1.9 cmt. [3]; Dkt. 392 at 3. The historical contract is Oak Harbor's privileged work product, prepared by its then-counsel. Cymbidium did not have to produce it at all. The Court, exercising caution, asked to see it, and Cymbidium complied. Dkt. 394. Cymbidium has now gone further than the Rules require by sharing the document with AHP's counsel under attorneys'-eyes-only protection.

**Third, the "origins" AHP wants to test are not in genuine dispute.** AHP's own declarant confirms that the MLSA was papered on Oak Harbor's form from the first exchange, that Mr. Newbery awaited "the 25M loan documents which Peter is drafting," and that Oak Harbor's counsel transmitted the "Master MLSA" for execution. Dkt. 382 ¶ 17 & at 8, 28; Dkt. 392 at 3. Mr. Fitzpatrick used Oak Harbor's form contract to draft the MLSA between Cymbidium and AHP. Fitzpatrick Decl. ¶¶ 6-7. The Hagan declaration does not deny that the



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

firm drafted the form; it reports only that four acronyms do not appear in time entries. Dkt. 381 ¶ 3. The Court correctly read that silence for what it is. Dkt. 396 at 8. AHP's new suggestion that it is "not aware of any contemporaneous drafting record" (Dkt. 397 at 4) is not evidence that no record exists; it is a statement that AHP's counsel did not look in files AHP's counsel holds.

Cymbidium also submits the declaration of Peter Fitzpatrick, who was the Oak Harbor contact to whom K&L Gates addressed its invoices after he left the firm. His declaration authenticates what little billing records and correspondence Oak Harbor found, identifies the K&L Gates lawyers who billed Oak Harbor, and describes the firm's continuing work on Oak Harbor's loan transactions after his departure. Fitzpatrick Decl. ¶¶ 2-4, Exs. A-C. AHP calls Mr. Fitzpatrick "the firsthand witness to the alleged historical drafting." Dkt. 397 at 7. He is neither the only witness nor the best one. The firsthand record of what K&L Gates did for Oak Harbor sits in K&L Gates's files, which the firm admits it retains and which it chose not to review. Dkt. 381 ¶ 7. The Rules direct the Court to the nature of the services the firm provided, not to the recollection of a single former partner about work performed more than a decade ago. RPC 1.9 cmt. [3]. On that question the record is Mr. Weinstein's sworn testimony that K&L Gates drafted the form, Mr. Newbery's exhibits showing the MLSA was papered on that form, and K&L Gates's non-denial. Dkt. 376 ¶¶ 6–8; Dkt. 393 ¶¶ 4–7; Dkt. 382 ¶ 17 & at 8, 28; Dkt. 381 ¶ 3.

**B. Lawyers Who Performed the Oak Harbor Work Remain at K&L Gates Today.**

AHP argues that the Court "treat[ed] the continued employment of unidentified historical attorneys for Oak Harbor as established," and that Mr. Hagan never admitted any remain. Dkt. 397 at 2, 5. The Court's inference was logical: a firm does not screen its AHP team from lawyers who no longer work there. Tr. 3:15–22. But the Court need not rest on inference. The lawyers can be named.

At the hearing, AHP's counsel told the Court he did not know "who are these 15 attorneys" or whether "any of these individuals [are] even at K&L Gates." Tr. 6:3–10. K&L



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Gates, which has the personnel records and the files, has never said. So in the forty-eight hours since the Order, Oak Harbor searched and was able to locate a few billing records and correspondence to prove a point that was never its burden to prove. Weinstein Decl. ¶ 5; Fitzpatrick Decl. ¶ 4.

The November 5, 2014 invoice shows the initials of K&L Gates attorneys that worked on Oak Harbor matters, it is addressed to Peter Fitzpatrick, and bills $51,584.90 for services from September 23 through October 14, 2014. Fitzpatrick Decl. ¶ 3, Ex. A. The date matters: Mr. Fitzpatrick left K&L Gates at the end of 2013. Dkt. 379 at 3. This work was performed for Oak Harbor after his departure by lawyers who stayed. The entries describe the firm reviewing loan agreements and term sheets for Oak Harbor's loan transactions, drafting and revising legal opinions on those transactions, preparing resolutions and fact certificates, consulting the firm's Washington office on Washington opinion language, and addressing UCC and assignment-for-benefit-of-creditors issues. *Id*.

And at least eight attorneys that represented Oak Harbor are at K&L Gates today. Molina Decl. Ex. 3 (K&L Gates biography pages, printed Oct. 29, 2026).

On April 14, 2017, Robert T. Honeywell, Of Counsel in K&L Gates's New York office, sent Mr. Weinstein, Mr. Fitzpatrick, and Oak Harbor's other transaction personnel a 65-page K&L Gates draft "true sale and non-consolidation opinion." Weinstein Decl. ¶ 6, Ex. B (filed under seal)[6]. The draft is the firm's legal analysis, prepared for Oak Harbor, of the very extensive deep dive K&L Gates did analyzing and providing an opinion concerning whether transactions such as these would be treated as a "true sale" or a loan, work that included the review of the form agreement for Oak Harbor. Mr. Feldman is a K&L Gates partner today. Molina Decl. ¶ 5, Ex. 3. The firm thus did not merely draft the form; after Mr. Fitzpatrick left, it advised Oak

[6] Exhibit B to the Third Weinstein Declaration is being lodged with the Court under seal pursuant to LCR 5(g), for *in camera* review only, and is not being served on defendants' counsel. If the Court would prefer a different procedure for the *in camera* submission, Cymbidium will comply with it. However, K&L Gates should have this opinion in its files.



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Harbor, at length and in writing, on the true-sale characterization of transfers made under Oak Harbor's sale documents.

The Hagan declaration cannot be squared with these records. Mr. Hagan reported that a search of "historical time records" for four phrases returned no hits. Dkt. 381 ¶ 3. He did not say the firm reviewed its files. He did not say the firm asked Ms. Feldman, Mr. Harlan, Ms. Paone, or anyone else what they did for Oak Harbor. He did not say what the representation was about. The invoices show lawyers billing dozens of hours reviewing Oak Harbor's loan documents and opining on its loan transactions, which is the business the mortgage loan sale agreement exists to paper. Dkt. 376 ¶¶ 3, 5–6. A declaration that four acronyms are absent from time entries, offered in place of a review the firm could have done in an afternoon, does not create a dispute of fact; it avoids one. The Court was right to say so. Dkt. 396 at 8.

The fuller record, moreover, was in K&L Gates's hands when it filed its opposition on October 16. Evidence a party could have presented with reasonable diligence is not grounds for reconsideration, LCR 7(h)(1), and the firm's failure to review its own files is not an error by the Court.

The billing entries and related correspondence Oak Harbor has located are produced in redacted form to protect the substance of the legal advice. Weinstein Decl. ¶ 7. That is the former client's prerogative, RPC 1.9 cmt. [3], and K&L Gates, which holds the unredacted originals, is in no position to complain.

**C. RPC 1.10(b) Does Not Help AHP; If Anything, It Confirms the Conflict.**

AHP argues the Order should have applied RPC 1.10(b), the rule governing a firm's obligations after a lawyer departs, because Mr. Fitzpatrick is "the only specifically identified attorney alleged to have performed historical drafting." Dkt. 397 at 6. The argument was available to AHP when it opposed the motion; it was not made. Cymbidium raised RPC 1.10(b) in its opening brief and explained why it does not apply. Dkt. 375 at 11. K&L Gates did not respond. A rule the firm declined to address is not a rule the Court "overlooked."

On the merits, RPC 1.10(b) is the wrong lense. That rule addresses whether a firm may oppose the former client of a lawyer who has left. Here, Oak Harbor was the firm's client, not Mr. Fitzpatrick's alone, and the firm continued to represent Oak Harbor for three and a half years after he departed including extensively analyzing and providing legal opinions and advice regarding things such as the "true sale" issue AHP is now attacking. Dkt. 375 at 11; Dkt. 379 at 3; Dkt. 381 ¶ 3. The conflict arises from K&L Gates's own representation, which is why RPC 1.10(a) imputes it firm-wide and why the lateral-screening exception in RPC 1.10(e) is unavailable. Dkt. 392 at 6; Dkt. 396 at 10 n.1.

Even on AHP's framing, both of RPC 1.10(b)'s conditions are met. The Court has already found the matters substantially related. Dkt. 396 at 8–10. And lawyers remaining at the firm hold protected information material to this matter: Ms. Feldman, Mr. Harlan, Ms. Paone, and Ms. Grillet billed Oak Harbor for work on its loan agreements and transaction opinions in 2014, after Mr. Fitzpatrick left, and the firm retains all of the Oak Harbor files. Fitzpatrick Decl. ¶ 3; Dkt. 381 ¶ 7. The premise of AHP's argument, that Mr. Fitzpatrick's knowledge "walked out the door" in 2013, is contradicted by K&L Gates's own invoices. Whatever Mr. Fitzpatrick took with him, the firm kept the files, the client, and the lawyers who did the later work.

AHP argues the Order should have applied RPC 1.10(b), the rule governing a firm's obligations after a lawyer departs, because Mr. Fitzpatrick is "the only specifically identified attorney alleged to have performed historical drafting." Dkt. 397 at 6. The argument was available to AHP when it opposed the motion; it was not made. Cymbidium raised RPC 1.10(b) in its opening brief and explained why it does not apply. Dkt. 375 at 11. K&L Gates did not respond. A rule the firm declined to address is not a rule the Court "overlooked."

AHP's footnote that "[t]he existence of the ethical wall itself is not an admission of a conflict" (Dkt. 397 at 6 n.1) proves too much. K&L Gates erected the wall the day Oak Harbor objected. Dkt. 381 ¶ 7. A firm that believed no one there had anything to screen would not have



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

needed to screen anyone. And a screen, even a timely one, cannot cure a conflict that arises from the firm's own prior representation. RPC 1.10(e); Dkt. 396 at 10 n.1.

Nor could the screen satisfy RPC 1.10(e) even if that rule reached this conflict. Washington's screening provision is nonconsensual, RPC 1.10 cmt. [9], but it is conditional: the firm must show that (1) the personally disqualified lawyer is screened by effective means and apportioned no part of the fee; (2) the former client "receives notice of the conflict and the screening mechanism"; and (3) the firm can "demonstrate by convincing evidence that no material information relating to the former representation was transmitted by the personally disqualified lawyer before implementation of the screening mechanism and notice to the former client." RPC 1.10(e)(1)–(3). The burden on each element is the firm's. K&L Gates met none of them. Its May 22 notice described a screen around a former Oak Harbor assistant and said nothing about screening the firm's own lawyers from the Oak Harbor files; Oak Harbor learned of that second screen from the Hagan declaration five months later. Dkt. 376, Ex. A; Dkt. 381 ¶ 7; Dkt. 392 at 6. And the firm has never attempted the "convincing evidence" showing. The Court identified both failures. Dkt. 396 at 10 n.1. A screen that was the wrong tool, erected late, noticed incompletely, and never shown to have prevented anything does not remove imputation under any reading of RPC 1.10.

**D. No Evidentiary Hearing or Discovery of the Former Client Is Warranted.**

AHP asks for "a limited opportunity" under Rule 43(c) to establish the historical agreement's authorship, identify the attorneys who worked on it, and determine whether any remain at K&L Gates. Dkt. 397 at 6–7. Every one of those questions is answered by records in K&L Gates's possession, and the firm had the chance to answer them in its opposition. To the extent AHP wants the answers now, this response supplies them: the 2014 invoice, the firm's own website, and the Weinstein and Fitzpatrick declarations identify the lawyers who did the Oak Harbor work and their current employment, and Mr. Weinstein's uncontradicted testimony establishes the drafting. Fitzpatrick Decl. ¶¶ 2-7; Third Weinstein Decl. ¶¶ 2-8.



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

What AHP cannot have is discovery of the former client. The burden on a disqualification motion is to establish the facts from which a conflict may reasonably be inferred, *Plein v. USAA Cas. Ins. Co.*, 195 Wn.2d 677, 686–87 (2020), not to open the former client's files and personnel to cross-examination while the conflicted firm's own files sit unreviewed. Mr. Keller asked the question at the hearing: "where does it stop?" Tr. 14:15–18. A process in which AHP gets to further invade Oak Harbor's privileges and confidences by deposing Mr. Fitzpatrick, but K&L Gates doesn't review or provide to plaintiff its files showing what the firm did for Oak Harbor inverts the inquiry and rewards the firm's decision not to look, do their due diligence, and properly investigate and evaluate the conflict issues when their former client first raised them.

Nor would a hearing change the result. The Court's finding rests on three propositions, none of which AHP has identified evidence to rebut: (1) K&L Gates drafted the form for Oak Harbor; (2) the MLSA was built on that form and carries forward the sale, transfer, and put-back type provisions AHP (and K&L Gates) attacks; and (3) the firm retains the files and lawyers who did the work. Dkt. 396 at 8–10. The only "dispute" AHP identifies is that its counsel has not confirmed these facts from its own records. That is not a dispute; it is an omission. Reconsideration is not the mechanism for curing it, and trial should not wait on it.

**E. Cymbidium Should Not Lose Its November Trial Date.**

The Court has indicated that it will not require Mr. Cassubhai to try this case alone and that it has availability through November 30, 2026. Tr. 17:2–10, 24:19–23. Cymbidium asks that the resulting path not run through Cymbidium.

The position AHP's motion creates is this. If the Court reconsiders, Oak Harbor's former lawyers try a case against the contract they were intimately involved in drafting and about which they provided extensive analysis and opinions regarding things like the "true sale" issue, over Oak Harbor's objection, a result the Rules forbid. If the Court does not reconsider but continues trial indefinitely so AHP can rebuild a team it chose to build around a conflicted firm,



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Cymbidium loses the date it has held since the July setting was moved. Dkt. 325. Either way, the party that did nothing wrong pays the price and is forced to absorb the related costs. The Rules do not put Cymbidium to that choice, and neither should the schedule.

## V. CONCLUSION

AHP's motion presents no manifest error and no fact that reasonable diligence could not have placed before the Court on October 16. The disruption AHP describes was foreseeable in May, avoidable in August, and curable in September, and at each point AHP and K&L Gates chose to proceed. Cymbidium therefore asks the Court to:

1. Deny reconsideration. The Order should stand.

2. Set trial for the earliest date within the Court's November availability. AHP told the Court on October 27 that it "was ready to go to trial on Monday" and that Bailey Duquette "will continue preparing for November 2." Tr. 20:18–20; Dkt. 397 at 3. Mr. Burnside is at Bailey Duquette through October 30 and as of yesterday remained counsel of record. Mr. Moore is available for pro hac vice admission. If the Court concludes that some additional time is warranted, Cymbidium asks that it be measured in days, not weeks, that trial begin no later than November 4, 2026, and that the date be firm.

3. Clarify that K&L Gates may and shall transfer its trial work product in this case to Bailey Duquette, subject to the Order's prohibition on disclosure of Oak Harbor information, and that its certification of compliance remains due October 30, 2026. Dkt. 396 at 13.

4. Deny as moot AHP's request for a "protected procedure" to access the historical contract. Cymbidium has provided the document as attorneys'-eyes-only basis. No further procedure is warranted, and no review of the document should delay trial.

///

///

///



BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

DATED this 29th day of October, 2026.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
Bradley S. Keller, WSBA #10665

By /s/ M. Victoria Molina
M. Victoria Molina, WSBA #62109
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
Email: bkeller@byrneskeller.com
mvmolina@byrneskeller.com
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on the 29th day of October, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ M. Victoria Molina
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
mvmolina@byrneskeller.com