UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYMBIDIUM RESTORATION TRUST,<br><br>Plaintiff/Counter-Defendant,<br>v.<br><br>AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING, et al.,<br><br>Defendants/Counter-Plaintiffs. | CASE NO. C24-0025-KKE<br><br>ORDER DENYING MOTION FOR RECONSIDERATION |

This breach-of-contract case was removed to this Court in January 2024 and has been set for trial, and then continued, multiple times since then. In August 2026—about three months before the most recent trial date—John Bender of the K&L Gates LLP law firm ("K&L") appeared for Defendants/Counter-Plaintiffs ("AHP"), alongside counsel from another firm that has been representing AHP since October 2025. Dkt. No. 321. In October 2026, Plaintiff/Counter-Defendant Cymbidium Restoration Trust ("Cymbidium") filed a motion to disqualify K&L for a conflict of interest, arguing that the firm had previously represented its manager, Oak Harbor Capital LLC, on multiple issues over many years, and in the course of that work K&L had advised Oak Harbor on contracts and legal issues substantially related to the contract and legal issues in this case. Dkt. No. 375.

The Court granted that motion, and AHP moved for reconsideration. Dkt. Nos. 396, 397. The Court vacated the trial date to permit briefing on the reconsideration motion, and the Court also considered additional evidence presented with the motion for reconsideration, including the testimony of three witnesses at a November 13, 2026 evidentiary hearing. Dkt. Nos. 398, 401–11, 414–15, 417–22.

After reviewing the briefing and evidence presented by both parties, the Court finds that AHP has not shown that the Court's disqualification order is erroneous or that any of the newly presented evidence warrants altering the Court's original ruling. Accordingly, the Court will deny the motion for reconsideration and re-set this case for trial.

## I. BACKGROUND

Oak Harbor is an investment manager that manages funds, including Cymbidium, that buy and sell residential mortgage loans.[1] Dkt. No. 376 ¶ 3. K&L served as Oak Harbor's outside counsel from 2010 until 2017. *Id.* ¶ 4. During that representation, K&L attorneys revised the form mortgage loan sale agreement that Oak Harbor used and continues to use for the trusts and funds it manages and advised Oak Harbor on many such negotiations. *Id.* ¶ 6. During much of this time, Peter J. Fitzpatrick, now Oak Harbor's general counsel, was then a partner in K&L's New York office and worked on a version of Oak Harbor's template contract as Oak Harbor's outside counsel. *Id.* ¶ 7. Mr. Fitzpatrick left K&L in 2013 to become Oak Harbor's general counsel. Dkt. No. 405 ¶ 2. Other K&L attorneys, some of whom remain at the firm, continued to advise Oak Harbor on versions of the template contract and other Oak Harbor matters until 2017. Dkt. No. 376 ¶ 7. One such matter involved advising Oak Harbor as to whether a bankruptcy court would construe a

[1] Oak Harbor was previously known as Ophrys, LLC. Dkt. No. 406 ¶ 2. For the sake of clarity, this order refers to this entity only as Oak Harbor.

contract for the transfer of mortgage loans as effectuating a "true sale" or secured financing. Dkt. No. 407.

In October 2022, Cymbidium, acting through Oak Harbor as its manager, and AHP entered into a Mortgage Loan Sale Agreement ("MLSA"). Dkt. No. 376 ¶ 10. Oak Harbor negotiated the MLSA for Cymbidium using a version of the template contract revised for this transaction by Mr. Fitzpatrick. *Id.* The parties amended the MLSA in March 2023. *Id.* In the months following that amendment, Cymbidium and AHP each accused the other of breaching the amended MLSA in multiple ways and asserted divergent interpretations of that contract. *See, e.g.*, Dkt. No. 234 ¶¶ 9–18, Dkt. No. 237 ¶¶ 12–21, Dkt. No. 255 ¶¶ 4–26. In November 2023, Cymbidium filed this lawsuit in King County Superior Court, bringing claims for breach of contract and conversion. Dkt. No. 1-2. AHP removed the suit to this Court in January 2024 and filed counterclaims for declaratory relief, breach of contract, conversion, and an accounting against Cymbidium. Dkt. Nos. 1, 5.

AHP has been represented by many law firms in the course of this litigation, some simultaneously. *See* Dkt. Nos. 60, 70, 99, 192, 207, 208, 321. Counsel from Bailey Duquette PC entered notices of appearance in October 2025. *See* Dkt. Nos. 207, 208. Trial was set for January 2026, but at the pretrial conference in January 2026, the Court vacated the trial date to allow the parties to file dispositive motions. Dkt. No. 227. Those partial summary judgment motions were granted in part and denied in part, and the Court addressed the parties' arguments regarding whether the transfers contemplated by the MLSA were intended by the parties to function as a "true sale" or secured financing. Dkt. No. 274. Trial was set for July 2026 and then continued to November 2026. Dkt. Nos. 274, 283, 305, 317, 325.

On May 22, 2026, John Hagan, assistant general counsel at K&L, notified Oak Harbor's CEO William Weinstein and Oak Harbor that the firm had been "asked to represent AHP Capital

Management LLC and AHP Servicing LLC in connection with a matter involving yourself and Oak Harbor[.]" Dkt. No. 376 at 9. Mr. Hagan further stated that K&L had screened from the new AHP matter (the "First AHP Matter"[2]) Rathana Vannarath, a senior practice assistant[3] in its Seattle office who worked at Oak Harbor from 2019 to 2022. *Id.* Mr. Hagan's letter did not identify with specificity the First AHP Matter that precipitated the conflict and screening notice, nor did it reference K&L's prior representation of Oak Harbor. *Id.*

Oak Harbor objected on May 29, 2026, via a letter from Mr. Fitzpatrick, noting that Mr. Fitzpatrick had provided legal services to Oak Harbor while a partner at K&L and that those Oak Harbor files remain in K&L's possession. Dkt. No. 376 at 14. On June 1, 2026, Mr. Hagan responded that K&L saw no conflict because it "last performed work for Oak Harbor in 2017, years before … the time when the facts at issue in our AHP matter arose" and that it had "implemented a screen applicable to any such files as a precautionary measure." *Id.* at 16. On June 16, 2026, Mr. Fitzpatrick responded and explained that Oak Harbor's concern "remains unresolved" because "we have not been told the nature of K&L Gates's representation of AHP. Without that, no meaningful conflict analysis is possible." *Id.* at 19. In his email, Mr. Fitzpatrick summarized K&L's prior work for Oak Harbor, asked for "a full description of the nature of the AHP engagement," and stated that "our objection to K&L Gates's representation stands." *Id.* Mr. Hagan replied on June 19, 2026, that he did not

---

[2] The nature of this matter has yet to be disclosed to Oak Harbor. AHP produced a copy of its engagement letter with K&L to the Court *in camera*. Dkt. No. 421 (exhibit 4).

[3] At the evidentiary hearing, the Court learned that Ms. Vannarath worked for Mr. Bender, the K&L attorney who appeared in this litigation. The relationship between Ms. Vannarath and Mr. Bender was not disclosed to the Court or to Cymbidium until Mr. Hagan testified about it. Prior to Mr. Hagan's testimony, K&L had stated only that Ms. Vannarath was a senior practice assistant at the firm who had previously worked for Weinstein & Riley and Oak Harbor, and that her screen was implemented "as a precaution" and was not "an acknowledgment that the historical [Oak Harbor] representation was related to the proposed AHP engagement." Dkt. No. 409 ¶ 2. When cross-examined on this issue, Mr. Hagan testified that he did not believe Ms. Vannarath's position as Mr. Bender's legal assistant was material to the conflict analysis.

> have any additional information that I can share with you about the nature of our AHP engagement, given our duty of confidentiality.
>
> As I noted earlier, our understanding is that the facts at issue in our AHP matter arose years after we last performed work for Oak Harbor. We don't see any substantial relationship between the AHP matter and our prior work for Oak Harbor. And we have the screen in place as a precautionary measure.

*Id*. at 23.

On August 3, 2026, Mr. Bender of K&L's Seattle office appeared for AHP in this case as "additional counsel." Dkt. No. 321 at 2. The notice stated that his appearance "is in addition to, and does not replace, the appearances of existing counsel of record." *Id*. Shortly after Mr. Bender appeared, AHP moved for leave to disclose a new expert, and this expert offered opinions regarding whether the transfers of mortgage loans under the MLSA constituted "true sales" or financing. *See* Dkt. Nos. 327, 346.

On September 14, 2026, Mr. Weinstein wrote to K&L's global managing partner, renewing the objection now that the nature of the current representation was clear and asking the firm to withdraw in this action "and in any related proceedings." Dkt. No. 376 at 28–29. On September 18, 2026, Mr. Hagan responded to that letter, declining to withdraw and asking Oak Harbor to identify the related prior work. *Id*. at 31–32. On September 22, 2026, Mr. Weinstein identified the MLSA as reflecting "the same document, the same transaction structure, the same 'true sale' question, that your firm worked on during its prior representation of Oak Harbor," and asserted that K&L "is arguing against us that the very agreement K&L Gates helped put in place did not accomplish what it was intended to do." *Id.* at 34–35. Oak Harbor declined to waive the conflict and again asked K&L to withdraw. *Id.* K&L did not respond to that letter and did not withdraw.

On October 7, 2026, Cymbidium moved to disqualify K&L, and the Court expedited the briefing on that motion given the fast-approaching trial date. Dkt. Nos. 375, 378. The Court also asked Cymbidium to produce *in camera* the template contract referenced in the brief that K&L

attorneys worked on during the firm's prior representation of Oak Harbor.[4] Dkt. No. 394. After reviewing the template contract and the balance of the briefing and record, the Court granted the disqualification motion, finding a conflict of interest under Washington's Rule of Professional Conduct ("RPC") 1.9(a), based on the substantial relationship between K&L's prior representation of Oak Harbor and its current representation of a party adverse to Oak Harbor. Dkt. No. 396. Because Oak Harbor had been a client of the firm, and current K&L attorneys worked on Oak Harbor matters substantially related to this case, the Court found that the conflict was imputed to the entire firm under RPC 1.10 and could not be effectively screened. *Id.*

In granting the motion, the Court also found that Cymbidium did not delay in seeking disqualification and that disqualifying K&L would not create extreme prejudice to AHP because AHP continued to be represented by two attorneys from the Bailey Duquette law firm. Dkt. No. 396. The Court thus ruled that this case could proceed to trial as scheduled. *Id.*

AHP filed an emergency motion for reconsideration of the disqualification motion, noting its disagreement with the Court's reasoning but also informing the Court of facts previously unknown to the Court, namely: (1) that one of the Bailey Duquette attorneys who had been representing AHP for the past year was in the process of leaving the firm and would not be available to participate in trial, and (2) that neither AHP nor K&L had a copy of the template contract that the Court reviewed *in camera* and thus lacked access to the information relied upon by the Court in ruling on the disqualification motion. Dkt. No. 397. The Court temporarily stayed the execution of the disqualification order in order to resolve the reconsideration motion, ordered Cymbidium to provide a copy of the *in camera* production to AHP/K&L on an "attorneys' eyes only" basis, and set a briefing schedule with limited additional discovery and an evidentiary

---

[4] In doing so, the Court presumed that K&L already possessed that template contract in its files and intended to avoid requiring Cymbidium to produce privileged information to AHP in this proceeding.

hearing on AHP's reconsideration motion. Dkt. Nos. 401, 414, 415, 417. Mr. Weinstein, Mr. Fitzpatrick, and Mr. Hagan testified at the hearing. Dkt. No. 423.

As a result of the evidentiary hearing, the Court has now had the opportunity to review additional information regarding the extent of K&L's prior representation of Oak Harbor, and finds that the expanded record confirms the Court's original ruling. For the following reasons, the Court will deny AHP's motion for reconsideration and lift the stay on the execution of the disqualification order.

## II. ANALYSIS

### A. Legal Standards on Reconsideration

"Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Local Rules W.D. Wash. LCR 7(h)(1). A motion for reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citations omitted). Reconsideration is appropriate in only a narrow set of circumstances where "the district court is presented with newly discovered evidence, committed clear error or the initial decision was manifestly unjust, or if there is an intervening change in controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "Newly discovered evidence" must not only be new but also material, such that it is capable of altering the Court's original judgment. *See Kinchen v. DeJoy*, No. 20-55683, 2021 WL 3204020, at *2 (9th Cir. July 28, 2021) (affirming denial of reconsideration where newly discovered evidence "was immaterial to the court's analysis").

**B. The Court Finds No Error in its Prior Ruling as to the Existence and Imputation of a Disqualifying Conflict of Interest.**

In the disqualification order, the Court found a conflict of interest under RPC 1.9(a), which states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

When considering whether a Rule 1.9(a) conflict exists, a court must "decide whether the former and current representation are factually related. If not, then they are not 'substantially related' within the meaning of [RPC 1.9(a)]." *Plein v. USAA Cas. Ins. Co.*, 463 P.3d 728, 736 (Wash. 2020). Matters are substantially related "if they involve the same transaction or legal dispute <u>or</u> if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." RPC 1.9 cmt. 3 (emphasis added).

The Court disqualified K&L due to a Rule 1.9(a) conflict that was imputed to the entire firm under Rule 1.10. Dkt. No. 396. In so ruling, the Court found that the Rule 1.9(a) substantial relationship test was satisfied because K&L worked on and advised Oak Harbor on contracts related to the MLSA at issue in this litigation, and that the prior work is the type of representation that would have normally led its attorneys to obtain confidential factual information about Oak Harbor that would materially advance AHP's position in the current litigation. *Id.* at 8–10.

In requesting reconsideration of the disqualification order, AHP claimed that neither it nor K&L had a copy of the template contract reviewed *in camera* and, once it had received a copy, argued that it was not sufficiently connected to the MLSA to support the Court's finding of a "substantial relationship" for purposes of Rule 1.9(a). Dkt. No. 408. AHP requested targeted supplemental discovery and an evidentiary hearing bearing on the "substantial relationship"

question (*id.* at 18–19), and the Court granted both of those requests. The expanded record, however, bolsters rather than undermines the Court's prior ruling on the existence of a disqualifying Rule 1.9(a) conflict. The parties presented evidence showing that this conflict was apparent before and after K&L appeared in this matter.

Before it appeared in this case, in evaluating the potential conflict, K&L focused narrowly on whether K&L drafted the MLSA or negotiated the transactions at issue in this case. *See, e.g.*, Dkt. No. 409 ¶ 5. Mr. Hagan admitted that when evaluating the extent of the conflict of interest in this case (the "Second AHP Matter") he searched K&L's files to determine whether they contained the MLSA, but did not review the substance of those files, nor did he inquire of the K&L attorneys who previously worked on Oak Harbor matters about the scope of their representation. Rather, Mr. Hagan relied on the previous conflict check conducted for the First AHP Matter, which also did not involve reviewing the firm's prior substantive work for Oak Harbor to determine whether the new matter was substantially related to the prior work. Although Mr. Hagan testified that Mr. Bender's team is currently prevented from accessing K&L's Oak Harbor files, Mr. Hagan conceded that he did not contact any K&L lawyer who previously worked on Oak Harbor matters to screen them from the First or Second AHP Matters, nor did he advise Mr. Bender's team not to discuss the First or Second AHP Matters with any of Oak Harbor's prior counsel who remain at the firm. By relying on the fact that particular terms did not yield hits on a search of K&L's Oak Harbor billing records or retained documents, K&L avoided readily accessible information that could have exposed the factual overlap between its prior representation of Oak Harbor and this litigation, before Mr. Bender appeared in this case.

And then again after Mr. Bender appeared, Mr. Weinstein objected to K&L's representation of AHP in this case because Mr. Fitzpatrick had (while at K&L) worked "on a version of the [MLSA] now at issue in this litigation" and the MLSA reflects "the same transaction

structure, the same 'true sale' question, that your firm worked on during its prior representation of Oak Harbor." Dkt. No. 376 at 29, 34–35. K&L apparently did not investigate what Mr. Weinstein was referring to, even though, by this time, it also had—in addition to its own files—access to the lengthy docket in this case when evaluating whether the facts of this case are sufficiently similar to K&L's prior representation of Oak Harbor so as to be substantially related.

In this way, K&L avoided discovering a factual connection between its prior representation of Oak Harbor and its current representation of AHP, even in the face of repeated objections from its former client. RPC 1.9's definition of "substantially related" matters does not permit such a circumscribed inquiry: without knowing enough about the factual context of the prior representation, how could K&L evaluate whether either the First or Second AHP Matter was sufficiently similar to the subsequent representation? In addressing the "substantially related" inquiry, the *Plein* court recited with approval a "factual context" test that courts applied before the 2006 amendments to Washington's RPCs. That test, used to determine if two matters were substantially related for purposes of RPC 1.9, required a court to

> (1) reconstruct the scope of the facts of the former representation, (2) assume the lawyer obtained confidential information from the client about all these facts, and (3) determine whether any former factual matter is sufficiently similar to a current one that the lawyer could use the confidential information to the client's detriment.

*Plein*, 463 F.3d at 733 (quoting *Sanders v. Woods*, 89 P.3d 312 (Wash. Ct. App. 2004)). At least one Washington appellate decision has continued to apply the "factual context" test post-*Plein*. *See, e.g.*, *Day v. Tacoma RV Ctr., Inc.*, No. 59095-6-II, 2025 WL 2910726, at *20 (Wash. Ct. App. Oct. 14, 2025).

Here, the parties have now presented evidence that permits the Court to apply the "factual context" test. As to the first step—reconstructing the scope of the facts of K&L's former representation of Oak Harbor—the testimony of Mr. Weinstein and Mr. Fitzpatrick confirmed that

while Mr. Fitzpatrick was employed at K&L, he advised and assisted Oak Harbor and its predecessor entities in developing and managing investment funds that buy, sell, finance, and resolve residential mortgage loans. Mr. Fitzpatrick drafted contracts similar to the MLSA—some that are identical to the MLSA as to multiple provisions—for Oak Harbor and advised Oak Harbor on those contracts while he was employed at K&L.[5] K&L produced evidence that other attorneys—some of whom remain employed at K&L—continued to advise Oak Harbor on similar agreements and issues after Mr. Fitzpatrick left the firm through 2017. *See, e.g.*, Dkt. No. 421 at 3, Dkt. No. 421-4, Dkt. No. 421-5. K&L attorneys, some of whom remain employed at the firm, parsed contractual language also present in the MLSA to advise Oak Harbor on whether transfers of mortgage loans pursuant to a mortgage loan sale agreement would be treated by a court as "true sales" or secured financing. *See, e.g.*, Dkt. No. 407.

At the second step of the "factual context" test, the Court assumes that K&L obtained confidential information from Oak Harbor about its transaction structure and contracting goals, including with respect to several contractual provisions similar or identical to those at issue in this litigation. The parties have presented evidence of such confidential information. *See, e.g.*, Dkt. No. 418 (exhibits 37, 38, 39, 41, 42, 49, 54).

And then at the third step of the "factual context" test, the Court must determine whether K&L's representation of AHP is sufficiently factually connected to its prior representation of Oak Harbor such that the confidential information obtained about Oak Harbor could be used to its

---

[5] The Court has reviewed many of Oak Harbor's mortgage loan sale agreements, which Cymbidium argues are all based upon the historic template contract that was developed by Mr. Fitzpatrick while he was a partner at K&L. *See, e.g.*, Dkt. No. 418 (exhibits 1–34). At the hearing, AHP argued that the metadata for the historic contract produced *in camera* with respect to the disqualification motion does not establish that the document originated with K&L. But whether the metadata for any particular contract directly traces its origin to K&L or a K&L attorney is not dispositive to the Court's inquiry, as the parties have submitted evidence confirming that Mr. Fitzpatrick and other K&L attorneys drafted, revised, and/or advised Oak Harbor on multiple mortgage loan sale agreements and Mr. Fitzpatrick testified that these contracts were prepared from existing templates rather than drafted from scratch. *See, e.g.*, Dkt. No. 418 (exhibit 15).

detriment in this litigation. The Court finds a sufficient factual connection because K&L's prior representation of Oak Harbor did not merely expose attorneys to facts regarding Oak Harbor's general business practices, as in *Plein*, but involved drafting contracts to achieve the same goal as the MLSA (namely effectuating a "true sale" of the subject mortgage loans) and advising Oak Harbor on similar transactions with respect to some of the identical arguments raised in this lawsuit, namely whether the mortgage loans transferred under the MLSA were "true sales." As noted earlier in this order, the question of "true sale" versus secured financing has arisen in this lawsuit, in the dispositive motions, and again more recently, just after Mr. Bender appeared in this action and AHP sought to disclose a new expert.

Thus, although the parties have provided new evidence to the Court—much of which has always been accessible to K&L—that evidence only further corroborates the existence of an RPC 1.9(a) conflict via the "factual context" test and the propriety of imputing that conflict to K&L as a whole under RPC 1.10. RPC 1.10(a) instructs that a Rule 1.9(a) conflict is imputed across a firm if any lawyer in a firm would be prohibited from representing a client, and AHP has not shown that any of the exceptions to firmwide imputation apply here. Thus, AHP has not established clear error or a manifest injustice in the Court's prior ruling on the disqualifying conflict.

**C. Disqualification Remains the Appropriate Sanction for the Conflict.**

In the prior order, the Court found that disqualifying K&L was the appropriate remedy for the conflict despite the fast-approaching trial date "because Mr. Bender entered a notice of appearance less than three months [before trial] and AHP will not be left without counsel on the eve of trial[.]" Dkt. No. 396 at 12. The Court also noted that K&L undertook representation of AHP despite repeated objections from Oak Harbor dating back to May of this year. *Id*.

As discussed earlier in this order, the Court now has more information that calls into question the adequacy of K&L's investigation of the conflict here. That evidence bolsters the

Court's prior conclusion that any prejudice to AHP from the firm's disqualification was self-inflicted.

With respect to the Court's prior finding that AHP was adequately represented by Bailey Duquette: at the time that the Court entered the disqualification order, it was not aware that one of the two Bailey Duquette attorneys, William Burnside, who had represented AHP since October 2025 was imminently withdrawing from this case and would not be available for trial. This departure had been planned for some time and is unrelated to the disqualification of K&L.[6] Dkt. No. 398 ¶¶ 15–16.

That new information does not impact the Court's assessment of the prejudice caused by disqualification, given that the trial date has been vacated in order to permit resolution of the reconsideration motion. As the trial date has not yet been re-set and AHP remains represented by Bailey Duquette, and has been aware of the Court's initial assessment of K&L's disqualification for weeks and therefore has had an opportunity to evaluate the need for and availability of additional representation, the Court will not reconsider its analysis of the prejudice resulting from disqualification.

## III. CONCLUSION

For these reasons, the Court DENIES AHP's motion for reconsideration. Dkt. No. 397. The Court thus reinstates its ruling that K&L and its attorneys are disqualified from representing AHP in this matter. K&L shall not disclose to AHP or its other counsel any confidential

[6] AHP acknowledges, however, that it never intended that Mr. Burnside would be on the trial team. Dkt. No. 398 ¶ 16. This admission undercuts AHP's argument that Mr. Burnside's withdrawal impacts the prejudice analysis, particularly because this case has approached trial multiple times this year and AHP has never, until after the disqualification order was granted, argued that the Bailey Duquette trial team was inadequate to staff the case. The Court remains sympathetic to the challenges of trying this case without co-counsel, but this order does not require such an outcome.

information related to its prior representation of Oak Harbor and shall certify its compliance with this requirement no later than November 20, 2026.

The parties shall file reports on trial readiness and availability no later than November 20, 2026, addressing their availability for trial during December 2026, January 2027, and February 2027. The Court will contact the parties if a scheduling conference is necessary before re-setting this matter for trial.

Dated this 18th day of November, 2026.

Kymberly K. Evanson
United States District Judge